STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
================================================X

THE CITY OF NEWBURGH,

                   Plaintiff,

    -against-

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

                  Defendants,

================================================X

**SUMMONS**

Index Number:
Assigned Judge:

TO THE ABOVE-NAMED DEFENDANTS:

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorneys, TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC, within 20 days after the service of this summons, exclusive of the day of service or within 30 days after the service is complete if this summons is not personally served upon you within the State of New York; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated:   Newburgh, New York
         June 21, 2007

                           Yours, etc.,
                           TARSHIS, CATANIA, LIBERTH,
                           MAHON & MILIGRAM, PLLC

             By: _____
                   Steven I. Milligram, Esq.
                   Attorneys for Plaintiff
                   One Corwin Court
                   P.O. Box 1479
                   Newburgh, New York 12550
                   Tel. No. (845) 565-1100

TO:

Douglas R. Dollinger, Esq.
96 Broadway, LLC
96 Broadway
Newburgh, New York 12550

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
═══════════════════════════════════════════X

THE CITY OF NEWBURGH,

                              Plaintiff,

        -against-                                    VERIFIED COMPLAINT

                                                     Index Number:
                                                     Assigned Judge:
96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

                              Defendants,
═══════════════════════════════════════X

        Plaintiff, THE CITY OF NEWBURGH, by its attorneys, TARSHIS, CATANIA,

LIBERTH, MAHON & MILLIGRAM, PLLC, complaining of the above captioned defendant

respectfully alleges upon information and belief as follows:

### Identity of the Parties

        1.  Plaintiff, THE CITY OF NEWBURGH (CITY) is a municipal corporation

organized and existing under the laws of the State of New York located at 83 Broadway, City of

Newburgh, County of Orange, State of New York.

        2.  Defendant 96 BROADWAY, LLC is a domestic limited liability company

organized and existing under the laws of the State of New York with a principle place of

business at 96 Broadway, City of Newburgh, County of Orange, State of New York and an

address registered with the New York State Secretary of State for service of process at:

Presidential Services, Inc. 23404 W Lyons Ave., #223, Santa Clarita, CA, 91321-2668.

        3.      Defendant DOUGLAS R. DOLLINGER ("DOLLINGER") is a natural person

and, upon information and belief, an attorney admitted to practice law by the State of New York.

DOLLINGER'S record address with the New York State Office of Court Administration in 96

Broadway, City of Newburgh, County of Orange, State of New York. DOLLINGER'S attorney

registration number is 2354926 and the registration appears to be current, the next biennial

registration period being due in May of 2008.

### Venue

4.      Plaintiff designates Orange County as the place of trial. The basis of the venue is

based on the location of the real property in Orange County.

### Relief Requested

5.      The relief requested in this action is emergent in nature and therefore has

been commenced by filing this action and has come before this Court by Order to Show Cause.

6.      The CITY seeks by way of this proceeding, it be ordered and adjudged that:

1)      Defendants immediately protect and secure the subject premises

located at 96 Broadway, City of Newburgh, State of New York by weather

sealing the premises and securing all windows, doors and other openings in the

premises against the elements and weather in a good and workman like manner;

and

2)      Defendants, in accord with Article V, §300-28(C)(2) of the City of

Newburgh Code, restore the condition and appearance of the subject premises and

its site to *status quo ante*; and

3)      Defendants strictly comply with Article V of the City of Newburgh

Code; and

4)      Pending the issuance of final relief herein, defendants be restrained

from performing any further work of any kind on the subject premises aside from

protecting and securing the premises in conformity with the stop work order issued by plaintiff; and

    5)    Plaintiff have such other and further relief as to this Court may seem just, proper, and equitable including reasonable attorney fees, disbursements and court costs incurred in this action.

### General Averments Common to All Counts

7.  Upon information and belief, defendant DOLLINGER claims an ownership interest in the premises located at 96 Broadway, City of Newburgh, County of Orange, State of New York (Section 30, Block 5, Lot 22)(the "Premises").

8. Upon information and belief, defendant 96 BROADWAY, LLC claims an ownership interest in the Premises.

9.  Upon information and belief, DOLLINGER is a member of or claims to have an ownership interest in 96 BROADWAY, LLC, and/or claims to be the attorney for same.

10.    On or about January 17th, 2006, DOLLINGER completed, signed and filed with the Building Inspector's Office for the City of Newburgh an application for a Building Permit regarding the Premises (the "Application"). A copy of the application is annexed as Exhibit "B".

11.    At page 2 of the Application, the work to be performed is generally described as 'the alteration of an existing use hybrid commercial and residential structure by adding an additional 1,000 square feet of space.' Exhibit "B".

12.     In response to item 7 of the application, the applicant denies that the proposed work violates any zoning law or ordinance. Upon information and belief this was an incorrect statement since Article V of the Code of the City of Newburgh requires Architectural Review

Commission oversight and approval, including the issuance of a Certificate of Appropriateness for the proposed exterior renovations. *See*, Exhibit "A"; Exhibit "B".

13.    At page 6 of the application there is a request that the applicant state whether certain pre-conditions to the issuance of the permit are required and if so whether that applicant has complied with those pre-conditions. Exhibit "B" at page 6.

14.    There is, among other things, an entry in the list of pre-conditions for "Historic Review". That, and all other entries, has been left blank by the applicant. By omission, the applicant has represented there are no pre-conditions, including Historical Review, for the issuance of the Building Permit.

15.    This is an incorrect statement of fact and law by the applicant since Article V of the Code of the City of Newburgh requires Architectural Review Commission oversight, including the issuance of a Certificate of Appropriateness for the proposed exterior renovations.

16.    At page 7 of the Application, there is space provided for signature of the Applicant under the following statement in relevant part:

> Application is hereby made to the Building Inspector of the City of Newburgh for the issuance of a Building Permit pursuant to the New York State Uniform Fire Prevention and Building Construction Code for the construction of buildings, additions or alterations . . . the applicant agrees to comply with all applicable laws, ordinances and regulations. Applicant further agrees that the City of Newburgh Building Inspector or his designate will be permitted to perform periodic inspections of this property to insure that work is being performed according to these codes, ordinances and regulations. It is understood by the applicant that if work is not performed according to codes, ordinances, or regulations, any permit that has been issued by the Building Inspector may be withdrawn and an order to stop work issued.

*See*, Exhibit "B" at page 7.

17.    Upon information and belief DOLLINGER signed the application where provided under the above statement as the applicant and owner and on behalf of 96 BROADWAY, LLC.

18.    There is a section to be filled in if the applicant is other than the Owner. This section was left blank by the applicant. Exhibit "B" at page 7.

19.    On or about January 25th, 2006 then City of Newburgh Building Inspector William Cummings wrote to the defendants acknowledging that the Application and certain plans had been received and reviewed by Architect Wheldon A. Abt. A copy of that letter is annexed to the Complaint as Exhibit "C". Ostensibly, Mr. Abt was acting as an independent contractor designated by the Building Inspector to, *inter alia*, review certain building permit applications. The letter specifically requested a preliminary meeting to discuss the Application.

20.    Mr. Abt's comments were enclosed with the said letter to the defendants. Among other things, Mr. Abt specifically identified that the Premises may be a Historic Building subject to Historical review. *See*, Exhibit "C". Mr. Abt further noted that the project documents did not "sufficiently address compliance with the code". Id. A preliminary meeting was scheduled for February 14th, 2006.

21.    On or about February 3rd, 2006 the defendants' architect, Eric Knute Osborn, wrote to the Building Inspector seeking permission to being roof repair due to a leaking roof. Accordingly, the Building Inspector issued a Building Permit for roof repair only on February 6th, 2006. A copy of the Knute-Osborn letters and the roof only Building Permit ("Roof Permit") are annexed as Exhibit "D".

22.    The aforementioned preliminary meeting was in fact held on or about February 14th, 2006. Minutes from that meeting are annexed hereto as Exhibit "E".

23.    Significantly, the minutes reflect that concerns were expressed that the City of Newburgh Historic requirements would prevent the proposed exterior renovations and re-construction. *See*, Exhibit "E". It was specifically noted that there was a "need to go to the Historic Review Board". *See*, Exhibit "E".

24.    Therefore the defendants were on actual notice as early as February 14th, 2006 that the proposed exterior renovations and re-construction to the Premises required oversight by the Historic Review Board.

25.    However the defendants did not take the proposed exterior renovations on the Premises to the ARC and apparently took no steps to ensure compliance with Article V of the City of Newburgh Code as they agreed to do in the building permit application.

26.    Rather, the defendants submitted "revised plans" to the Building Inspector dated February 27th, 2006. In response, Architect Abt issued a review dated March 22nd, 2006 and a Building Permit dated March 24th, 2006 was issued for the "revised work shown on the plans and subject to addressing comments on the March 22nd review by Abt. A copy of the said permit with Abt's comments attached is annexed as Exhibit "F".

27.    It should be noted that there is a handwritten notation on the March 24th, 2006 Permit which states: "No exterior changes until ARC approval as per Bill Cummings 5-8-06."

28.    On or about May 2nd, 2006 a stop work order was issued by the City of Newburgh Building Inspector on that grounds that, *inter alia*, the work being done to the exterior was being performed in violation of section 300-26A of the City Code since ARC approval for the exterior changes had not been obtained and for violation of section 122.12 of the City Code since the work being performed ostensibly exceeded the scope of the March 24th, 2006 building permit. Copies of the said stop work orders are annexed hereto as Exhibit "G".

29.     On or about May 8th, 2006 an order lifting the May 2nd order to vacate was issued by the Building Inspector on the basis that "an agreement had been reached with Cummings, Crab, Dollinger and Terwilliger." This document is annexed hereto as Exhibit "H".

30.     Upon information and belief the gravamen of the agreement was that the building would be secured and protected, that interior work could continue, but that no further exterior work would take place on the premises until a Certificate of Appropriateness was issued by the City of Newburgh ARC approving the proposed alterations or some modification of same. *See*, Exhibit "F". Indeed, a building permit dated May 13th, 2006 was issued for the purpose of "re-construction and scaffolding" only. *See*, Exhibit "I".

31.     Nevertheless, the defendants continued with exterior work on the premises in contravention of the Building Inspector's directions. Therefore, a stop work order was issued by the Building Inspector on or about June 2nd, 2006. A copy of that order is annexed as Exhibit "J".

32.     It is noted that on or about June 6th, 2006 a meeting was held between Bill Cummings, City Engineer Mike Lamoreaux, Code Officer Terwilliger, and DOLLINGER to discuss what had to be done in order to have the stop work order lifted. *See*, June 6th, 2006 Inspection Record annexed as Exhibit "K".

33.     Upon information and belief, DOLLINGER was again instructed of the requirement that the proposed exterior renovations of the Premises be reviewed by the ARC and that a Certificate of Appropriateness be obtained before the exterior work could continue.

34.     Indeed, on or about June 2nd, 2006 an application was submitted to the ARC by DOLLINGER vis-à-vis the Premises. A copy of the Application is annexed as Exhibit "L".

35.    The application indicates that the work to be done generally includes "addition, alterations, repair, doors, roof, windows, steps, clock, finials, columns, decorative cornices, beige and white paint." *See*, Exhibit "L".

36.    DOLLINGER signed the application as the owner thereby acknowledging his understanding and agreement that no work would commence on the Premises until written approval has been given by the ARC and the Building Inspector. *See*, Exhibit "L".

37.    On June 13th, 2006 a meeting of the City of Newburgh Architectural Review Commission was conducted. The application for the Premises was put on the ARC agenda for a public hearing. *See*, Exhibit "M" (June 13th, 2006 ARC Meeting Minutes).

38.    DOLLINGER appeared on behalf of 96 BROADWAY, LLC as the applicant.

39.    By review of the Minutes it is apparent that DOLLINGER approached this process with a hostile, oppositional and a generally obstreperous attitude.

40.    Indeed, the ARC application was ultimately tabled at this meeting because of DOLLINGER'S behavior and inclination to argue with the ARC members.

41.    At that same meeting, Inspector Bill Cummings gave a brief overview of the 96 Broadway project and noted specifically that the owner's representative was advised that the project had to come before the ARC during the Building Permit application process. *See*, Exhibit "M" at page 12. However, Mr. Cummings admitted that the permit was issued without ARC approval because he "missed that notice". Mr. Cummings noted that when it was determined that no ARC permit had issued a stop work order was issued and DOLLINGER agreed to cease exterior work and come to the ARC for approvals. *See*, Id.

42.    DOLLINGER denied knowing that ARC approval was a pre-condition to the commencement of exterior renovations stating in sum and substance "If I knew I had to come before the ARC do you think I would have taken a half-million dollars out of my own pocket and let it sit there?" *See*, Exhibit "M" at page 15.

43.    DOLLINGER thereafter submitted a letter dated June 26th, 2006 (Exhibit "N") noting that his representative Brian Maximo Blake would appear at the next ARC meeting on July 11th, 2006.

44.    Indeed, Mr. Blake appeared at the July 11th, 2006 ARC meeting. A copy of the minutes from that meeting are annexed as Exhibit "O".

45.    As the owner's representative, Mr. Blake continued the oppositional tone by disputing the building was "historic" stating that the Premises was a "ruined building". *See*, Exhibit "O".

46.    Michelle Kelson, Assistance Corporation Counsel for the City of Newburgh, informed Mr. Blake that the Premises was listed on the National Register of Historic Places and had been so listed since 1985. *See*, Exhibit "O".

47.    The ARC held the meeting open in order to solicit further information from the Owner and from the City Building Inspector. Id.

48.    The project Architect, Mr. Knute-Osborn, appeared before the ARC at its October 11th, 2006 meeting.[7] *See*, Exhibit "P" (October 11th, ARC meeting minutes). Id.

49.    The ARC expressed clearly to Mr. Knute-Osborn that the proposed exterior renovations were completely at odds with the historical character of the original building and the neighborhood. The proposal was, simply put, not appropriate. *See*, Exhibit "P".

---

[7] It should be noted that the subject Premises appeared on each monthly agenda of the ARC but only those meetings where the owner or one of its representatives appeared are discussed here.

50.     Mr. Knute-Osborn offered to take away "a lot of the gaudy details". Exhibit "P".

51.     The ARC voted to table the application while the applicant consulted with professional and historic resources to submit a design proposal which did not jeopardize the Premises as a contributor to the Historic District in the National Register of Historic Places. Id.

52.     Following the October 11th, 2006 ARC meeting, ARC Chairperson Mary Crabb wrote to DOLLINGER by letter dated October 27th, 2006. See, Exhibit "Q".

53.     In that letter, Ms. Crabb advised DOLLINGER of the outcome of the October ARC meeting and generally described what had to be done in order to move the application ahead together with an admonition that any work on the Premises would require a building permit. Exhibit "Q".

54.     However, neither DOLLINGER nor 96 BROADWAY, LLC has taken any of the steps required to move their application ahead, nor have either re-applied for any building permits of any kind.

55.     In fact, upon information and belief, nothing has been done with respect to the Premises in over a year. The Premises are unsecured, unprotected and remain exposed to the elements and to trespassers.

56.     Annexed hereto as Exhibit "R" is a February 23rd, 2007 letter by Nancy Billman, President of the Newburgh Preservation Association. In that letter, Ms. Billman described the condition of the Premises as "embarrassing, if not dangerous." See, Exhibit "R".

57.     The owner, through its representative Maximo Blake, held an informal work session with the City to address the ongoing problem of the half-demolished, weather exposed and unsecured Premises on April 9th, 2007.

58.    Mr. Blake sent a memorializing letter following this informal meeting. *See*, Exhibit "S". Among other things, Mr. Blake acknowledged on behalf of the owner the need to immediately secure, protect and weather seal the Premises.

59.    Assistant Corporation Counsel Kelson replied to Blake by letter dated April 19th, 2007 clarifying that while the City would allow some flexibility in design, the final designs would be subject to ARC approval in accord with the City Ordinances governing exterior renovation to Historic Premises. *See*, Exhibit "T".

60.    By that same letter, Ms. Kelson directed an appearance by a representative of the owner for the next ARC meeting scheduled for May 8th, 2007. Id.

61.    However, neither DOLLINGER, nor Maximo Blake nor Knute-Osborn nor anyone else purporting to be affiliated with the project appeared at the May 8th, 2007 ARC meeting. A copy of the minutes is annexed hereto as Exhibit "U". On the failure to appear, the ARC denied the application and voted to take action to secure and protect the Premises. *See*, Exhibit "U".

62.    Photographs showing the Premises in 2005 prior to the demolition, and in 2006 and 2007 are annexed hereto as Exhibit "V". The photographs show the illegal exterior renovations as well as the present unsecured, unprotected and weather exposed condition of the Premises.

63.    In conformity with the above documented adversarial and oppositional course of conduct, rather than move to protect the Premises and comply with the ARC process, DOLLINGER sent to the City a letter which has been annexed hereto as Exhibit "W".

64.    In his June 8th, 2007 letter, DOLLINGER sent to the CITY a bill for

$784,000.000 based upon certain claimed-published mistakes the Building Inspector as well as

certain unspecified violations of Constitutional and Statutory Rights. *See*, Exhibit "W".

65.    In that letter, DOLLINGER states that he has "elected to restore the building to its

former appearance". Id. While the CITY has no objection to this plan of action in principle, and

indeed affirmatively seeks such relief herein, DOLLINGER'S unilateral declaration that "work

will begin on June 21, 2007" without obtaining a building permit or ARC approvals for the work

is both unlawful and unacceptable. DOLLINGER'S brash plan has forced the CITY to seek

immediate relief by way of this application.

66.    It is respectfully submitted that there is a substantial danger of an immediate and

irreparable injury to the Premises, to the CITY and its interest in the preservation of the assets of

its Historic District. Specifically, if DOLLINGER makes good on his threat to press ahead with

work on June 21, 2007, the Premises may be damaged beyond repair and are in danger being lost

to History and to the City forever.

## AS AND FOR A FIRST CAUSE OF ACTION
## Defendants Must be Restrained from Working on the Premises and Must be Ordered to Strictly Comply with the City of Newburgh's Codes and Ordinances

67.    Plaintiff repeats, reiterates and re-alleges allegations 1-66 as though fully set forth

at length herein.

68.    Section 300-26(A) of the City of Newburgh Code states:

> Certificate required. No person shall carry out any exterior
> alteration, restoration, reconstruction, demolition, new construction
> or moving of a landmark, nor shall any person make any material
> change in the appearance of such a property, its light fixtures,
> signs, sidewalks, fences, steps, paving or other exterior elements
> visible from a public street or alley which affect the appearance

and cohesiveness of a district and its designated properties, without first obtaining a certificate of appropriateness.

City of Newburgh Code §300-26(A)[General Code, 2007]. Exhibit "A".

69.     The Premises are designated "a historic landmark" and appears in the City of Newburgh, East End Historic District in the National Register of Historic Places.

70.     There is no dispute that the defendants have proceeded with the demolition of the exterior of the Premises without first having obtained the requisite certificate of appropriateness from the City of Newburgh ARC.

71.     Therefore the defendants are in violation of City of Newburgh Code §300-26(A).

72.     Section 300-26(E) and (F) state in relevant part:

E. Prior to the commencement of any work requiring a certificate of appropriateness the owner shall file an application for such a certificate with the Commission.

F. No building permit shall be issued for such proposed work until a certificate of appropriateness has first been issued by the Commission. *The certificate of appropriateness required by this section shall be in addition to and not in lieu of any building permit that may be required by any other ordinance of the City of Newburgh*.

City of Newburgh Code §300-26(E),(F)[General Code, 2007](emphasis supplied). Exhibit "A".

73.     It is equally clear that the defendants failed to file an application for a certificate of appropriateness prior to the commencement of work and that the certificate of appropriateness is in addition to, not in lieu of any building permit required under other ordinances of the City. Thus, the defendants may not argue that they were entitled to proceed based upon the March 2006 permit issued by Inspector Cummings.

74.     Section 300-28(A) of the City of Newburgh Code states:

Enforcement. All work performed pursuant to a certificate of appropriateness issued under this article shall conform to any

requirements included therein. It shall be the duty of the Building Inspector to inspect periodically any such work to assure compliance. In the event work is found that is not being performed in accordance with a certificate of appropriateness, the Building Inspector shall issue a stop-work order and all work shall immediately cease. *No further work shall be undertaken on the project as long as a stop-work order is in effect.*

City of Newburgh Code §300-28(A)[General Code, 2007](emphasis supplied).

75.    Section 300-28(A) clearly authorized the stop work orders issued by Inspector Cummings. Those stop work orders remain in effect. Moreover, the threat by DOLLINGER to begin work on the Premises on June 21st, 2007 is in direct contravention to the prohibition of section 300-28(A) that no work shall be undertaken unless and until a certificate of appropriateness is obtained from the ARC and until the stop work order is lifted by the Building Inspector.

76.    The defendants have not yet obtained such certificate of appropriateness, nor has the stop work order been lifted.  Therefore the threat to begin work on June 21st is illegal and this Court must restrain defendants from executing the threatened violation of law.

## AS AND FOR A SECOND CAUSE OF ACTION

### Defendants Must Be Compelled to Immediately Secure and Protect the Premises And to Restore the Exterior of the Premises to Status Quo Ante

77.    Plaintiff repeats, realleges and reiterates allegations 1-76 as though fully set forth at length herein.

78.    The defendants must, as a matter of law, be compelled to secure and protect the Premises without delay.

79.    Section 300-28(B) of the City of Newburgh Code states in part:

Maintenance required. Nothing in this article shall be construed to prevent the ordinary maintenance and repair of any exterior

architectural feature of a landmark or property within a historic district which does not involve a change in the design, material, color, or outward appearance. *No owner or person with an interest in a designated property shall permit the property to fall into a serious state of disrepair so as to result in the deterioration of any exterior architectural or historic feature which would, in the judgment of the Commission, produce a detrimental effect upon the character of a historic or architectural district as a whole or the life and character of a landmark.* Examples of such deterioration include:

(1)   Deterioration of exterior walls or other vertical supports;

(2)   Deterioration of roofs and other horizontal members;

(3)   Deterioration of exterior chimneys;

(4)   Deterioration or crumbling of exterior stucco or mortar;

(5)   Ineffective waterproofing of exterior walls, roofs, or foundations, including broken windows or doors; and

(6)   Deterioration of any features so as to create a hazardous condition which could lead to a claim that demolition is necessary for the public safety.

City of Newburgh Code §300-28(B)[General Code, 2007](emphasis supplied).

80.     The ARC determined at its May 2007 meeting that the Premises being unsecured, unprotected and open to the elements amounted to such a serious state of disrepair that immediate steps were required to protect the Premises voting that "the City take the necessary steps to secure and protect 96 Broadway and to hold the owner's of 96 Broadway accountable in full." *See*, Exhibit "U".

81.     Additionally, code compliance officers with the City of Newburgh have determined that the Premises are indeed in a state of disrepair as contemplated by the City Code.

82.    Section 300-28(C) of the City of Newburgh Code states in part:

Any person who demolishes, alters, constructs or permits a
designated property to fall into a serious state of disrepair in
violation of this article shall be required to restore the property and
its site to its appearance prior to the violation. An action to enforce
this subsection may be brought by the City in any court of
competent jurisdiction. This civil remedy shall be in addition to
and not in lieu of any criminal prosecution and penalty.

City of Newburgh Code §300-28(C)(2)[General Code, 2007](emphasis supplied). Exhibit "A".

83.    Thus, City of Newburgh Code §300-28(C)(2) provides for the authority to direct
the defendants to immediately secure and protect the Premises as well as to direct defendants to
restore the Premises to *status quo ante*. Based upon the undisputed violations of City Code by
the defendants, the Court has it well within its discretion to grant the requested relief.

**WHEREFORE**, plaintiff CITY OF NEWBURGH prays this Court order and adjudge
that:

1)    Defendants, in accord with Article V of the City of Newburgh
Code, immediately protect and secure the subject premises located at 96
Broadway, City of Newburgh, State of New York by weather sealing the premises
and securing all windows, doors and other openings in the premises against the
elements and weather in a good and workman like manner; and

2)    Defendants, in accord with Article V, §300-28(C)(2) of the City of
Newburgh Code, restore the condition and appearance of the subject premises and
its site to *status quo ante*; and

3)    Defendants strictly comply with Article V of the City of Newburgh
Code; and

4)      Pending the issuance of final relief herein, defendants be restrained from performing any further work of any kind on the subject premises aside from protecting and securing the premises in conformity with the stop work order issued by plaintiff; and

5)      Plaintiff have such other and further relief as to this Court may seem just, proper, and equitable including reasonable attorney fees, disbursements and court costs incurred in this action.

Dated:    Newburgh, New York
          June 21, 2007

          Yours, etc.,
          TARSHIS, CATANIA, LIBERTH,
          MAHON & MILIGRAM, PLLC

By: _____
          Steven I. Milligram, Esq.
          Attorneys for Plaintiff
          One Corwin Court
          P.O. Box 1479
          Newburgh, New York 12550
          Tel. No. (845) 565-1100



STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
========================================X

THE CITY OF NEWBURGH,

                              Plaintiff,

        -against-

96 BROADWAY, LLC, and                              Index Number:
DOUGLAS R. DOLLINGER

                         Defendants,
========================================X


### **VERIFICATION**

STATE OF NEW YORK       )
                        )ss.:
COUNTY OF ORANGE        )


Michelle Kelson, Esq., being duly sworn, deposes and says:


1.      I am assistant corporation counsel for the City of Newburgh, the plaintiff in the

within proceeding.

2.      I have read the annexed complaint, I am familiar with the contents thereof, the

same are true to my knowledge, except those matters therein which are stated to be alleged upon

information and belief, and as to those matters I believe them to be true.


                                              _____
                                              Michelle Kelson, Esq.

Sworn to before me on the _21_$^{ST}$

Day of __June__, 2007.

_Donna M. Rickey_
NOTARY PUBLIC

FIRST DRAFT

DONNA M. RICKEY
Notary Public, State of New York
No. 01RI4705930
Residing in Orange County
Commission Expires April 30, 20 _11_

### *DECLARATION OF SERVICE*

Edward FX McCarthy declares and states that: I am not a party to this action. I am over 18 years of age and maintain offices in Orange County, New York.

On this 16th day of July 2007, I placed a true copy of the Petition and Notice for Removal and supporting papers and Disclosure Statement which was mailed and directed to:

To:

TARIS, CATANIA,LIBERTH,MAHON & MILLIGRAM, PLLC
P.O. BOX 1479
Newburgh, New York 12551

Declaring on this 16th day of July 2007 the foregoing to be true, under the penalty of perjury.

Dated: Newburgh, New York

Edward FX McCarthy