EXHIBIT A PART 1

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT

JUN 2 2 2007

————————————————————X

THE CITY OF NEWBURGH,

Plaintiff,

-against-

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

Defendants,

————————————————————X

## 2007  5544

### ORDER TO SHOW CAUSE

Index Number:
Assigned Judge:
Oral Argument Requested

~~Assigned Judge:~~
~~Hon. Joseph G. Owen, J.S.C.~~

Upon the reading and filing of the annexed attorney's affirmation of STEVEN I.

MILLIGRAM, ESQ., ~~dated June____, 2007~~, the annexed affidavit of MICHELLE KELSON,
, *sworn to June 21, 2007* *,sworn to June 21, 2007* *, Sworn to June 21 2007*
ESQ., the annexed affidavit of STEVEN HUNTER, and the affidavit of ANGELO LALLIS, the

annexed exhibits, and upon all of the prior pleadings and proceedings had herein, and sufficient

cause therefore appearing, let defendants 96 BROADWAY, LLC and DOUGLAS R.

DOLLINGER, show cause before the assigned justice **HON. JOSEPH G. OWEN** **SUPREME COURT JUSTICE** , J.S.C. at the

Orange County Government Center, 255-75 Main Street, Goshen, New York, on the _2nd_ day

of _July_ 2007 at ~~9:00~~ *11:00* a.m. or as soon thereafter as counsel may be heard why an order and

judgment should not be made and entered:

1. Pursuant to Article V, §300-28(C)(2) of the City of Newburgh Code,

compelling defendants to immediately protect and secure the premises located at 96

Broadway, City of Newburgh, State of New York by weather sealing the premises and

securing all windows, doors and other openings in the premises against the elements and

weather in a good and workman like manner; and

2.    Pursuant to Article V, §300-28(C)(2) of the City of Newburgh Code compelling defendants to, restore the condition and appearance of the subject premises and its site to *status quo ante*; and

3.    Alternatively, compelling defendants to renovate the subject premises in strict conformity with Article V of the City of Newburgh Code; and

4.    Pending the issuance of final relief herein, restraining defendants from performing any work of any kind on the subject premises aside from protecting and securing the premises in conformity with Article V of the City of Newburgh Code; and

5.    granting plaintiff such other and further relief as to this Court may seem just, proper, and equitable including reasonable attorney fees, disbursements and court costs incurred in this action; and

IT APPEARING that provisional relief is needed both to avoid irreparable harm to the premises and to further maintain the *status quo*, it is

FURTHER ORDERED, that pending the ~~hearing and determination~~ *return date and time* hereof defendants must immediately protect and secure the subject premises located at 96 Broadway, City of Newburgh, State of New York by weather sealing the premises and securing all windows, doors and other openings in the premises against the elements and weather in a good and workman like manner; and it is *

FURTHER ORDERED, that pending the ~~hearing and determination~~ *return date and time* hereof defendants, their agents, successors and assigns are hereby restrained and enjoined from performing any further work of any kind on the subject premises aside from protecting and securing the premises in conformity with the stop work order issued by plaintiff;

* *issued upon compliance with 22 nycrr 202.7 (f)*

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
===============================X
THE CITY OF NEWBURGH,

                  Plaintiff,

     -against-

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER,

                Defendants,
===============================X

AFFIRMATION OF COUNSEL

Index Number:
Assigned Judge:
Oral Argument Requested

     STEVEN I. MILLIGRAM, ESQ., an attorney at law, duly admitted to practice in the State of New York, affirms the following under the penalties of perjury:

     1.     I am a member of TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC, attorneys for plaintiff THE CITY OF NEWBURGH ("CITY"). I am familiar with the facts of this matter by way of my review of the files maintained by this office, and I make this affirmation in support of the within motion.

## **PARTIES**

     2.     Plaintiff, THE CITY OF NEWBURGH (CITY) is a municipal corporation organized and existing under the laws of the State of New York with offices located at 83 Broadway, City of Newburgh, County of Orange, State of New York.

     3.     Defendant 96 BROADWAY, LLC is a domestic limited liability company organized and existing under the laws of the State of New York.

     4.     Its principle place of business is at 96 Broadway, City of Newburgh, County of Orange, State of New York and an address registered with the New York State Secretary of State

for service of process at:  Presidential Services, Inc. 23404 W Lyons Ave., #223, Santa Clarita, CA, 91321-2668.

5.    Defendant DOUGLAS R. DOLLINGER ("DOLLINGER") is a natural person and, upon information and belief, an attorney admitted to practice law by the State of New York.

6.    DOLLINGER'S record address with the New York State Office of Court Administration in 96 Broadway, City of Newburgh, County of Orange, State of New York.

7.    DOLLINGER'S attorney registration number is 2354926 and the registration appears to be  current, the next biennial registration period being due in May, 2008.

### RELIEF REQUESTED

8.    The relief requested in this application is emergent in nature and therefore has come before this Court by Order to Show Cause.

9.    The CITY seeks by way of this application, that this Court Order and adjudge that:

1)    Defendants immediately protect and secure the subject premises located at 96 Broadway, City of Newburgh, State of New York by weather sealing the premises and securing all windows, doors and other openings in the premises against the elements and weather in a good and workman like manner; and

2)    Defendants, in accord with Article V, §300-28(C)(2) of the City of Newburgh Code, restore the condition and appearance of the subject premises and its site to *status quo ante*; and

3)    Defendants strictly comply with Article V of the City of Newburgh Code; and

4)     Pending the issuance of final relief herein, defendants be restrained from performing any further work of any kind on the subject premises aside from protecting and securing the premises in conformity with the stop work order issued by plaintiff; and

5)     Plaintiff have such other and further relief as to this Court may seem just, proper, and equitable including reasonable attorney fees, disbursements and court costs incurred in this action.

10.     Pursuant to 22 NYCRR § 202.7(f) the undersigned hereby affirms that there will be significant prejudice to the plaintiff, CITY, who is seeking the temporary restraining order by the giving of notice of any kind to the defendants. In point, the defendants have become exceedingly hostile to the CITY and were they notice given, there is no question but that significant prejudice to the CITY, and more to the point, the interest of the CITY in the subject Premises would result. The very nature of *ex parte* relief seeks to avoid this outcome by permitting the award of temporary relief while the Court is considering the movant's entitlement to preliminary or permanent relief. The CITY respectfully requests that in view of the forgoing circumstances and those set forth more fully herein, the Court grant the temporary relief requested on an *ex parte* basis pursuant to 22 NYCRR § 202.7(f). It is respectfully submitted that there will be no prejudice to the defendants since the defendants are already on notice of and have agreed in principle to secure the premises and restore it to *status quo ante*. Moreover, the defendants are at this time complying with a "stop work order" issued by the CITY building inspector and thus are on notice of this request for relief.

11.    It is respectfully submitted that the temporary relief sought herein is necessary to prevent an imminent and irreparable injury to the CITY and to the CITY'S interest in the historical character of the subject Premises.

## EXHIBITS[1]

12.    The following exhibits are annexed hereto and made part hereof:

| | |
|---|---|
| Article V of the Code of the City of Newburgh, New York | "A" |
| Building Permit Application for 96 Broadway dated 1-17-06 | "B" |
| Letter of Building Inspector Bill Cummings to 96 Broadway, LLC with comments from Architect Wheldon Abt dated 1-25-06 | "C" |
| Roof-Repair Only Building Permit dated 2-6-06 with Architect Letters dated 2-3-06 | "D" |
| Minutes of 2-14-06 preliminary meeting between with Bill Cummings, Wheldon Abt and 96 Broadway, LLC | "E" |
| Building Permit Based on Revised Plans With Architect Comments Dated 3-24-2006 and Handwritten Note Indicating Requirement Of Architectural Review Commission dated 5-8-2006 | "F" |
| Stop Work Order Indicating ARC Approval and Building Permit Required For Exterior Alterations dated 5-2-2006 | "G" |
| Order Dated 5-2-2006 Noting That An Agreement Was Reached With Dollinger | "H" |
| Building Permit For Reconstruction only dated 5-13-2006 | "I" |
| Stop Work Order dated 6-2-2006 Indicating Existing Construction Does Not Reflect Approved Drawings | "J" |
| Inspection Record dated 6-6-2006 Noting Meeting with Dollinger To Discuss What Needs To Be Done to Lift Stop Work Order | "K" |
| 96 Broadway, LLC Application for Architectural Review Commission signed by Dollinger on 6-2-2006 | "L" |
| Architectural Review Commission Minutes for 6-13-2006 | "M" |

---

[1] Note that, unless otherwise expressed, reference to all exhibits are to those annexed to the Complaint herein.

| | |
|---|---|
| Dollinger Letter dated 6-26-2006 | "N" |
| Architectural Review Commission Minutes for 7-11-2006 | "O" |
| Architectural Review Commission Minutes for 10-10-2006 | "P" |
| Architectural Review Commission Letter to 96 Broadway and Dollinger dated 10-27-06 | "Q" |
| Newburgh Preservation Association Letter dated 2-23-2007 | "R" |
| Maximo Blake Letter dated 4-10-2007 | "S" |
| Michelle Kelson Letter dated 4-19-2007 | "T" |
| Architectural Review Commission Minutes for 5-08-2007 | "U" |
| Photographs of 96 Broadway from 2005, 2006 and 2007 | "V" |
| Dollinger Letter dated 6-8-2007 | "W" |

## **BACKGROUND**

13.     Upon information and belief, defendant DOLLINGER claims an ownership interest in the premises located at 96 Broadway, City of Newburgh, County of Orange, State of New York (Section 30, Block 5, Lot 22)(the "Premises"). (*See*, Affidavit of Kelson).

14.     Upon information and belief, defendant 96 BROADWAY, LLC claims an ownership interest in the Premises.(*See*, Affidavit of Kelson).

15.     Upon information and belief, DOLLINGER is a member of or claims to have an ownership interest in 96 BROADWAY, LLC, and/or claims to be the attorney for same.   Id.

16.     On or about January 17th, 2006, DOLLINGER completed, signed and filed with the Building Inspector's Office for the City of Newburgh an application for a Building Permit regarding the Premises (the "Application"). (A copy of the application is annexed as Exhibit "B").

17.    At page 2 of the Application, the work to be performed is generally described as 'the alteration of an existing use hybrid commercial and residential structure by adding an additional 1,000 square feet of space.' (Exhibit "B").

18.    In response to item 7 of the application, the applicant denies that the proposed work violates any zoning law or ordinance. Upon information and belief this was an incorrect statement since Article V of the Code of the City of Newburgh requires Architectural Review Commission oversight and approval, including the issuance of a Certificate of Appropriateness for the proposed exterior renovations. (*See*, Exhibit "A" and Exhibit "B").

19.    At page 6 of the application there is a request that the applicant state whether certain pre-conditions to the issuance of the permit are required and if so whether that applicant has complied with those pre-conditions. (Exhibit "B" at page 6).

20.    There is, among other things, an entry in the list of pre-conditions for "Historic Review". That, and all other entries, has been left blank by the applicant. By omission, the applicant has represented there are no pre-conditions, including Historical Review, for the issuance of the Building Permit.

21.    This is an incorrect statement of fact and law by the applicant since Article V of the Code of the City of Newburgh requires Architectural Review Commission oversight, including the issuance of a Certificate of Appropriateness for the proposed exterior renovations.

22.    The Applicant's signature is required on page 7 of the Application, immediately below the following statement, excerpted in relevant part:

> Application is hereby made to the Building Inspector of the City of Newburgh for the issuance of a Building Permit pursuant to the New York State Uniform Fire Prevention and Building Construction Code for the construction of buildings, additions or alterations . . . the applicant agrees to comply with all applicable laws, ordinances and regulations. Applicant further agrees that the

> City of Newburgh Building Inspector or his designate will be permitted to perform periodic inspections of this property to insure that work is being performed according to these codes, ordinances and regulations. It is understood by the applicant that if work is not performed according to codes, ordinances, or regulations, any permit that has been issued by the Building Inspector may be withdrawn and an order to stop work issued.

(*See*, Exhibit "B" at page 7).

23.    Upon information and belief DOLLINGER signed the application, where provided, under the above statement as the applicant and owner and on behalf of 96 BROADWAY, LLC.

24.    There is a section to be filled in if the applicant is other than the Owner. This section was left blank by the applicant. (Exhibit "B" at page 7. )

25.    On or about January 25th, 2006 then City of Newburgh Building Inspector William Cummings wrote to defendants acknowledging that the Application and certain plans had been received and reviewed by Architect Wheldon A. Abt. (A copy of that letter is annexed to the Complaint as Exhibit "C"). Ostensibly, Mr. Abt was acting as an independent contractor designated by the Building Inspector to, *inter alia*, review certain building permit applications. The letter specifically requested a preliminary meeting to discuss the Application.

26.    Mr. Abt's comments were enclosed with the said letter to defendants. Among other things, Mr. Abt specifically noted that the Premises may be a Historic Building subject to Historical review. *See*, Exhibit "C". Mr. Abt further observed that the project documents did not "sufficiently address compliance with the code". Id. A preliminary meeting was scheduled for February 14th, 2006.

27.    On or about February 3rd, 2006 defendants' architect, Eric Knute Osborn, wrote to the Building Inspector seeking permission to begin roof repair due to a leaking roof. Accordingly, the Building Inspector issued a Building Permit for <u>roof repair only</u> on February 6th, 2006. (A copy of the Knute-Osborn letters and the roof only Building Permit ("Roof Permit") are annexed as Exhibit "D").

28.    The aforementioned preliminary meeting was in fact held on or about February 14th, 2006. (Minutes from that meeting are annexed hereto as Exhibit "E").[2]

29.    Significantly, the minutes reflect that concerns were expressed that the City of Newburgh Historic requirements would prevent the proposed exterior renovations and re-construction. (*See*, Exhibit "E"). It was specifically noted that there was a "need to go to the Historic Review Board"[3]. (*See*, Exhibit "E").

30.    Therefore defendants were on actual notice as early as February 14th, 2006 that the proposed exterior renovations and re-construction of the Premises required oversight by the Historic Review Board.

31.    Despite this, defendants did not submit the proposed exterior renovations on the Premises to the ARC and apparently took no steps to ensure compliance with Article V of the City of Newburgh Code as they agreed to do in the building permit application. Instead, the defendants submitted "revised plans" to the Building Inspector dated February 27th, 2006. In response, Architect Abt issued a review dated March 22nd, 2006 and a Building Permit dated March 24th, 2006 was issued for the "revised work shown on the plans and subject to addressing

---

[2] Upon information and belief, these minutes were taken by Ed Steenrod who was, but is no longer, a code compliance officer employed by the City of Newburgh. *See*, Affidavit of Kelson.

[3] Upon information and belief reference to the "Historic Review Board" likely refers to the Architectural Review Commission ("ARC"). *See*, Affidavit of Kelson.

comments on the March 22nd review by Abt. (A copy of the said permit with Abt's comments attached is annexed as Exhibit "F").

32.    Significantly,  there is a handwritten notation on the March 24th, 2006 Permit which states: "No exterior changes until ARC approval as per Bill Cummings 5-8-06."

33.    On or about May 2nd, 2006 a stop work order was issued by the City of Newburgh Building Inspector on that grounds that, *inter alia*, the work being done to the exterior was being performed in violation of section 300-26A of the City Code since ARC approval for the exterior changes had not been obtained and for violation of section 122.12 of the City Code since the work being performed ostensibly exceeded the scope of the March 24th, 2006 building permit. (Copies of the said stop work orders are annexed hereto as Exhibit "G").

34.    On or about May 8th, 2006 an order lifting the May 2nd order was issued by the Building Inspector on the basis that "an agreement had been reached with Cummings, Crab, Dollinger and Terwilliger.[4]" (This document is annexed hereto as Exhibit "H").

35.    Upon information and belief the gravamen of the agreement was that the building would be secured and protected, that interior work could continue, but that no further exterior work would take place on the premises until a Certificate of Appropriateness was issued by the City of Newburgh ARC approving the proposed alterations or some modification of same. (*See*, Exhibit "F"). As such, a building permit dated May 13th, 2006 was issued for the purpose of "re-construction and scaffolding" only. (*See*, Exhibit "I").

---

[4] Dollinger is a defendant herein claiming an ownership interest in the Premises. Cummings and Terwilliger are City of Newburgh Building Inspectors. Crab refers to Mary Crabb chairperson of the ARC. *See*, Affidavit of Kelson.

36.    Nevertheless, defendants continued with exterior work on the premises in contravention of the Building Inspector's directions. Therefore, a stop work order was issued by the Building Inspector on or about June 2nd, 2006. (A copy of that order is annexed as Exhibit "J").

37.    On or about June 6th, 2006 a meeting was held between Bill Cummings, City Engineer Mike Lamoreaux, Code Officer Terwilliger, and DOLLINGER to discuss what had to be done in order to have the stop work order lifted. (*See*, June 6th, 2006 Inspection Record annexed as Exhibit "K").

38.    Upon information and belief, DOLLINGER was again told of the requirement that the proposed exterior renovations of the Premises be reviewed by the ARC and that a Certificate of Appropriateness be obtained before the exterior work could continue.

39.    Finally, on or about June 2nd, 2006 an application was submitted to the ARC by DOLLINGER vis-à-vis the Premises. (A copy of the Application is annexed as Exhibit "L"). That application indicates that the work to be done generally includes "addition, alterations, repair, doors, roof, windows, steps, clock, finials, columns, decorative cornices, beige and white paint." (*See*, Exhibit "L").

40.    DOLLINGER signed the application as the owner thereby acknowledging his understanding and agreement that no work would commence on the Premises until written approval has been given by the ARC and the Building Inspector. (*See*, Exhibit "L").

41.    On June 13th, 2006 a meeting of the City of Newburgh Architectural Review Commission was conducted. The application for the Premises was put on the ARC agenda for a public hearing. (*See*, Exhibit "M" June 13th, 2006 ARC Meeting Minutes). DOLLINGER appeared at that hearing on behalf of 96 BROADWAY, LLC as the applicant. From a review of

those Minutes it is apparent that DOLLINGER approached this process with a hostile, oppositional and a generally obstreperous attitude. (*See*, Affidavit of Kelson).

42.    The ARC application was ultimately tabled at this meeting because of DOLLINGER'S behavior and inclination to argue with the ARC members. (*See*, Affidavit of Kelson).

43.    At that same meeting, Inspector Bill Cummings gave a brief overview of the 96 Broadway project and noted specifically that the owner's representative was advised that the project had to come before the ARC during the Building Permit application process. (*See*, Exhibit "M" at page 12). However, Mr. Cummings admitted that the permit was issued without ARC approval because he "missed that notice". Mr. Cummings noted that when it was determined that no ARC permit had issued, a stop work order was issued and DOLLINGER agreed to cease exterior work and come to the ARC for approvals. (*See*, Id).

44.    DOLLINGER denied knowing that ARC approval was a pre-condition to the commencement of exterior renovations stating in sum and substance "If I knew I had to come before the ARC do you think I would have taken a half-million dollars out of my own pocket and let it sit there?" (*See*, Exhibit "M" at page 15).

45.    DOLLINGER thereafter submitted a letter dated June 26th, 2006 (Exhibit "N") noting that his representative Brian Maximo Blake would appear at the next ARC meeting on July 11th, 2006. Mr. Blake appeared at the July 11th, 2006 ARC meeting. (A copy of the minutes from that meeting are annexed as Exhibit "O").

46.    As the owner's representative, Mr. Blake continued the oppositional tone by disputing the building was "historic" stating that the Premises was a "ruined building". (*See*, Exhibit "O". *See*, Affidavit of Kelson).

47.    Michelle Kelson, Assistance Corporation Counsel for the City of Newburgh, informed Mr. Blake that the Premises was listed on the National Register of Historic Places and had been so listed since 1985. (*See*, Exhibit "O". *See*, Affidavit of Kelson).

48.    The ARC held the meeting open in order to solicit further information from the Owner and from the City Building Inspector. Id.

49.    The project Architect, Mr. Knute-Osborn, appeared before the ARC at its October 11th, 2006 meeting.[5]. The ARC expressed clearly to Mr. Knute-Osborn that the proposed exterior renovations were completely at odds with the historical character of the original building and the neighborhood. The proposal was, simply put, not appropriate. In response, Mr. Knute-Osborn offered to take away "a lot of the gaudy details". The ARC voted to table the application while the applicant consulted with professional and historic resources to submit a design proposal which did not jeopardize the Premises as a contributor to the Historic District in the National Register of Historic Places. (*See*, Exhibit "P" October 11th, ARC meeting minutes). Following the October 11th, 2006 ARC meeting, ARC Chairperson Mary Crabb wrote to DOLLINGER by letter dated October 27th, 2006. (*See*, Exhibit "Q"). In that letter, Ms. Crabb advised DOLLINGER of the outcome of the October ARC meeting and generally described what had to be done in order to move the application ahead together with an admonition that any work on the Premises would require a building permit. (Exhibit "Q").

50.    However, neither DOLLINGER nor 96 BROADWAY, LLC has taken any of the steps required to move their application ahead, nor have either re-applied for any building permits of any kind. (*See*, Affidavit of Kelson).

---

[5] It should be noted that the subject Premises appeared on each monthly agenda of the ARC but only those meetings where the owner or one of its representatives appeared are discussed here.

51.    In fact, upon information and belief, nothing has been done with respect to the Premises for over one year. The Premises, which are across the street from City Hall, are unsecured, unprotected and remain exposed to the elements and to trespassers. (*See*, Affidavit of Kelson; Affidavit of Hunter).

52.    By letter dated February 23rd, 2007 ("Exhibit "R"), Nancy Billman, President of the Newburgh Preservation Association described the condition of the Premises as "embarrassing, if not dangerous."

53.    The owner, through its representative Maximo Blake, held an informal work session with the City to address the ongoing problem of the half-demolished, weather exposed and unsecured Premises on April 9th, 2007. Mr. Blake sent a memorializing letter following this informal meeting. (*See*, Exhibit "S"). Among other things, Mr. Blake acknowledged on behalf of the owner the need to immediately secure, protect and weather seal the Premises.

54.    Assistant Corporation Counsel Kelson replied to Blake by letter dated April 19th, 2007 clarifying that while the City would allow some flexibility in design, the final designs would be subject to ARC approval in accord with the City Ordinances governing exterior renovation to Historic Premises. (*See*, Exhibit "T"; *See*, Affidavit of Kelson). By that same letter, Ms. Kelson requested that a representative of the owner appear for the next ARC meeting scheduled for May 8th, 2007. (Id. *See*, Affidavit of Kelson).

55.    However, neither DOLLINGER, nor Maximo Blake nor Knute-Osborn nor anyone else purporting to be affiliated with the project appeared at the May 8th, 2007 ARC meeting. (A copy of the minutes is annexed hereto as Exhibit "U"). On the failure to appear, the ARC denied the application and voted to take action to secure and protect the Premises.(*See*, Exhibit "U". *See*, Affidavit of Kelson).

56.     Photographs showing the Premises in 2005 prior to the demolition, and in 2006

and 2007 are annexed hereto as Exhibit "V". The photographs show the illegal exterior

renovations as well as the present unsecured, unprotected and weather exposed condition of the

Premises. (*See*, Affidavit of Hunter, and Affidavit of Angelo Lallis).

57.     In conformity with defendant's documented adversarial and oppositional course

of conduct, rather than move to protect the Premises and comply with the ARC process,

DOLLINGER sent a letter to the City dated June 8th, 2007 , enclosing a "bill" for $784,000.000

based upon  claimed mistakes made by the Building Inspector as well as certain unspecified

Constitutional and Statutory violations. (*See*, Exhibit "W").[6]

58.     In that letter, DOLLINGER states that he has "elected to restore the building to its

former appearance". Id. While the CITY has no objection to this plan of action in principle, and

indeed affirmatively seeks such relief herein, DOLLINGER'S unilateral declaration that "work

will begin on June 21, 2007" without obtaining a building permit or ARC approvals for the work

is both unlawful and unacceptable. DOLLINGER'S brash plan has forced the CITY to seek

immediate relief by way of this application. (*See*, Affidavit of Kelson).

59.     It is respectfully submitted that there is a substantial danger of an immediate and

irreparable injury to the Premises, to the CITY and its interest in the preservation of the assets of

its Historic District. Specifically, if DOLLINGER makes good on his threat to press ahead with

work on June 21, 2007, the Premises may be damaged beyond repair and are in danger being lost

to History and to the City forever. (*See*, Affidavit of Hunter).

---

[6] It should be noted that section 300-28(D) allows one aggrieved by a decision of the ARC to appeal via an Article 78 proceeding to the New York State Supreme Court within 30 days of the ARC decision. The ARC negative decision was made on May 8th, 2007. Defendants elected to send a bill and a letter on the 30th day rather than commence an Article 78 proceeding. Their time within which to do so has now expired.

60.    As set forth below, an immediate order directing the defendants to secure and protect the premises is warranted. (*See*, Affidavit of Hunter).

61.    Moreover, an order restraining the defendants from performing any further work, other than to secure and protect the premises, absent full compliance with all applicable codes, rules and regulations is warranted.

62.    Finally, as set forth below, an order is warranted compelling the defendants to restore the exterior of the Premises to *status quo ante* as pictured in the year 2005 photograph annexed as Exhibit "V".

## ARGUMENT

63.    There is no question but that the defendants violated, *inter alia*, Article V of the City of Newburgh Code by undertaking renovations and demolition to the exterior of a protected building within the City's Historical District without first obtaining the approval of the ARC and the concomitant Certificate of Appropriateness contemplated by the Ordinance.

64.    Moreover, it is equally indisputable that the present unprotected and unsecured state of the Premises amounts to a danger to the Premises itself, to the character of the Historical District within which it lies as well as a potential danger to the health, safety and welfare of the general public.

### Defendants Must be Restrained from Working on the Premises and Must be Ordered to Strictly Comply with the City of Newburgh's Codes and Ordinances

65.    Section 300-26(A) of the City of Newburgh Code states:

Certificate required. No person shall carry out any exterior alteration, restoration, reconstruction, demolition, new construction or moving of a landmark, nor shall any person make any material change in the appearance of such a property, its light fixtures, signs, sidewalks, fences, steps, paving or other exterior elements visible from a public street or alley which affect the appearance

and cohesiveness of a district and its designated properties, without
first obtaining a certificate of appropriateness.

City of Newburgh Code §300-26(A)[General Code, 2007]. (Exhibit "A").

66.    The Premises are designated "a historic landmark" and appears in the City of

Newburgh, East End Historic District in the National Register of Historic Places. (*See*, Affidavit

of Kelson).

67.    There is no dispute that the defendants have proceeded with the demolition of the

exterior of the Premises without first having obtained the requisite certificate of appropriateness

from the City of Newburgh ARC.

68.    Therefore the defendants are in violation of City of Newburgh Code §300-26(A).

69.    Section 300-26(E) and (F) state in relevant part:

> E. Prior to the commencement of any work requiring a certificate
> of appropriateness the owner shall file an application for such a
> certificate with the Commission.
>
> F. No building permit shall be issued for such proposed work until
> a certificate of appropriateness has first been issued by the
> Commission. *The certificate of appropriateness required by this
> section shall be in addition to and not in lieu of any building
> permit that may be required by any other ordinance of the City of
> Newburgh*.

City of Newburgh Code §300-26(E),(F)[General Code, 2007](emphasis supplied). (Exhibit "A").

70.    It is equally clear that the defendants failed to file an application for a certificate

of appropriateness prior to the commencement of work and that the certificate of appropriateness

is in addition to, not in lieu of any building permit required under other ordinances of the City.

Thus, the defendants may not argue that they were entitled to proceed based upon the March

2006 permit issued by Inspector Cummings.

71.    Section 300-28(A) of the City of Newburgh Code states:

> Enforcement. All work performed pursuant to a certificate of
> appropriateness issued under this article shall conform to any
> requirements included therein. It shall be the duty of the Building
> Inspector to inspect periodically any such work to assure
> compliance. In the event work is found that is not being performed
> in accordance with a certificate of appropriateness, the Building
> Inspector shall issue a stop-work order and all work shall
> immediately cease. *No further work shall be undertaken on the*
> *project as long as a stop-work order is in effect.*

City of Newburgh Code §300-28(A)[General Code, 2007](emphasis supplied).

72.    Section 300-28(A) clearly authorized the stop work orders issued by Inspector

Cummings. Those stop work orders remain in effect. (*See,* Affidavit of Kelson). Moreover, the

threat by DOLLINGER to begin work on the Premises on June 21st, 2007 is in direct

contravention to the prohibition of section 300-28(A) that no work shall be undertaken unless

and until a certificate of appropriateness is obtained from the ARC and until the stop work order

is lifted by the Building Inspector.

73.    The defendants have not yet obtained such certificate of appropriateness, nor has

the stop work order been lifted. Therefore the threat to begin work on June 21st is illegal and this

Court must restrain defendants from executing the threatened violation of law.

### Defendants Must Be Compelled to Immediately Secure and Protect the Premises And to Restore the Exterior of the Premises to Status Quo Ante

74.    The defendants must, as a matter of law, be compelled to secure and protect the

Premises without delay.

75.    Section 300-28(B) of the City of Newburgh Code states in part:

> Maintenance required. Nothing in this article shall be construed to
> prevent the ordinary maintenance and repair of any exterior
> architectural feature of a landmark or property within a historic
> district which does not involve a change in the design, material,
> color, or outward appearance. *No owner or person with an interest*

*in a designated property shall permit the property to fall into a serious state of disrepair so as to result in the deterioration of any exterior architectural or historic feature which would, in the judgment of the Commission, produce a detrimental effect upon the character of a historic or architectural district as a whole or the life and character of a landmark.* Examples of such deterioration include:

(1)   Deterioration of exterior walls or other vertical supports;

(2)   Deterioration of roofs and other horizontal members;

(3)   Deterioration of exterior chimneys;

(4)   Deterioration or crumbling of exterior stucco or mortar;

(5)   Ineffective waterproofing of exterior walls, roofs, or foundations, including broken windows or doors; and

(6)   Deterioration of any features so as to create a hazardous condition which could lead to a claim that demolition is necessary for the public safety.

City of Newburgh Code §300-28(B)[General Code, 2007](emphasis supplied).

76.    The ARC determined at its May 2007 meeting that the Premises being unsecured, unprotected and open to the elements amounted to such a serious state of disrepair that immediate steps were required to protect the Premises voting that "the City take the necessary steps to secure and protect 96 Broadway and to hold the owner's of 96 Broadway accountable in full." (*See,* Exhibit "U").

77.    Additionally, as set forth in the annexed affidavit of Steven Hunter, code compliance officer with the City of Newburgh, the Premises are indeed in a state of disrepair as contemplated by the City Code. (*See,* Affidavit of Hunter).

78.    Section 300-28(C) of the City of Newburgh Code states in part:

Any person who demolishes, alters, constructs or permits a designated property to fall into a serious state of disrepair in violation of this article shall be required to restore the property and its site to its appearance prior to the violation. An action

to enforce this subsection may be brought by the City in any court of competent jurisdiction. This civil remedy shall be in addition to and not in lieu of any criminal prosecution and penalty.

City of Newburgh Code §300-28(C)(2)[General Code, 2007](emphasis supplied). (Exhibit "A").

79.    Thus, City of Newburgh Code §300-28(C)(2) provides for the authority to direct the defendants to immediately secure and protect the Premises as well as to direct defendants to restore the Premises to *status quo ante*. Based upon the undisputed violations of City Code by the defendants, the Court has it well within its discretion to grant the requested relief.

### Defendants May Not Claim Detrimental Reliance on a Building Permit

80.    It appears that DOLLINGER has taken the position that the building permits issued by Inspector Cummings entitled him and/or 96 BROADWAY, LLC to disregard the City of Newburgh Ordinances regarding the preservation of the historic character of landmarks within a historic district. (*See*, Exhibit "V").

81.    However, this position is untenable as a matter of both law and fact. In the first instance, the City Code itself clearly makes the requirement of obtaining a certificate of appropriateness additional to, as opposed to in lieu of or in the stead of any other required building permit. (*See*, City Code sections 300-26(E) and (F) at Exhibit "A").

82.    Indeed, it is well settled that

> [E]stoppel may not be invoked against a municipal agency to prevent it from discharging its statutory duties nor for the purpose of ratifying an administrative error. A building permit could not confer rights in contravention of the zoning laws, and estoppel is not available to preclude a municipality from enforcing the provisions of its zoning laws and the mistaken or erroneous issuance of a permit does not estop a municipality from correcting errors, even where there are harsh results.

Town of Putnam Val. v. Sacramone, 16 A.D.3d 669, 670, 792 N.Y.S.2d 191 (2d Dept., 2005).

83.     Accordingly, the defense of Estoppel will not lie in this case.

## The City of Newburgh Has a Right to Enforce Its Code

84.     It is well settled that "A municipality may validly impose historic district regulations designed to maintain the esthetic or cultural character of an area". *See*, <u>Salvatore v. Schenectady</u>, 139 A.D.2d 87, 89 (3d Dept., 1988) (*citing*, <u>Penn Cent. Transp. Co. v City of New York</u>, 42 NY2d 324, 330, aff'd 438 U.S. 104).

85.     Moreover, the City of Newburgh Ordinance at issue here is Constitutional and will withstand any attacks for unconstitutional "vagueness". *See*, <u>Salvatore</u>, *supra*[held, a statute withstands an attack for vagueness if it contains sufficient standards to afford a reasonable degree of certainty so that a person of ordinary intelligence is not forced to guess at its meaning, and to safeguard against arbitrary enforcement."]

86.     Section 300-26(C);(D) provide the decision make criteria guiding ARC Determinations on applications. There are three general guiding principles:

> (1)Designated properties which contribute to the character of an historic district or architectural design district shall be retained, with their historic or architectural features altered as little as possible;
>
> (2)Any alteration of a designated property shall be compatible with its historic character, as well as with the surrounding district; and
>
> (3)New construction shall be compatible with the district in which it is located and with the design guidelines established for such district.

There are also six specific guiding criteria:

> (1) The general design, character, and appropriateness to the property of the proposed alteration or new construction.

(2) The scale of proposed alteration or new construction in relation to the property itself, surrounding properties, and the neighborhood.

(3) Texture, materials, and color and their relation to similar features of other properties in the neighborhood.

(4) Visual compatibility with surrounding properties, including proportion of the property's front facade, proportion and arrangement of windows and other openings within the facade, roof shape, and the rhythm of spacing of properties in streets, including setback.

(5) The importance of historic, architectural or other features to the significance of the property.

(6) The proposed action's consistency with design guidelines established for an historic or architectural design district.

87.    The City of Schenectady ordinance at issue in Salvatore had *prima facie* similar criteria and was thus found to be "sufficiently precise and objectively verifiable to give fair notice and provide minimal guidelines to safeguard against arbitrary or discriminatory enforcement, and are clearly consistent with the legitimate legislative purposes of historic district regulation." Salvatore, *supra*; *see also*, Zartman v. Reisem, 59 A.D.2d 237, 239 (4th Dept., 1977)(*held*, that New York General Municipal Law § 96-a provides that municipal corporations may impose special conditions and restrictions for the protection, enhancement and perpetuation and use of places having a special character or special historical or aesthetic interest or value. Such local regulation may include "appropriate and reasonable control of the use or appearance of neighboring private property within public view, or both." The regulation shall be "reasonable and appropriate to the purpose"); N.Y. C.L.S. Gen. Mun. § 96-a.

## CONCLUSION

Wherefore, based upon the foregoing, the plaintiff, CITY OF NEWBURGH, respectfully requests this Court grant the relief sought herein in its entirety together with such other and further relief as may be appropriate and necessary.

STEVEN I. MILLIGRAM, ESQ.

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
======================================X

THE CITY OF NEWBURGH,

                    Plaintiff,                              AFFIDAVIT OF KELSON

          -against-
                                                           Index Number:
                                                           Assigned Judge:

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

                    Defendants,
======================================X

State of New York)
                 )ss.
County of Orange )

          Michele Kelson, Esq., being duly sworn does hereby depose and state:

          1.    I am the Assistant Corporation Counsel for the CITY OF NEWBURGH, the

named plaintiff in the above matter. I make this affidavit in support of the CITY'S emergency

application for relief as set forth more fully in the affirmation of Steven I. Milligram, Esq.

          2.    I am familiar with the facts of this matter by reviewing the files

maintained by the CITY OF NEWBURGH Corporation Counsel.

          3.    Upon information and belief, defendant DOLLINGER claims an

ownership interest in the premises located at 96 Broadway, City of Newburgh, County of

Orange, State of New York (Section 30, Block 5, Lot 22)(the "Premises").

          4.    Upon information and belief, defendant 96 BROADWAY, LLC claims an

ownership interest in the Premises.

          5.    Upon information and belief, DOLLINGER is a member of or claims to

have an ownership interest in 96 BROADWAY, LLC, and/or claims to be the attorney for same.

6.          Upon information and belief, Ed Steenrod was, but is no longer, a code compliance officer employed by the City of Newburgh. I believe Mr. Steenrod took the handwritten minutes of a certain February 14th, 2006 meeting between the City Building Inspector and DOLLINGER.

7.          Upon information and belief reference to the "Historic Review Board" in Mr. Steenrod's minutes likely refers to the Architectural Review Commission ("ARC") since the ARC is alternatively referred to as a "Board".

8.     Bill Cummings was the Code Compliance Supervisor and one Bruce Terwilliger is a Code Enforcement Office in the City of Newburgh Code Compliance Office. Cummings is no longer employed by the City.

9.     Mary Crabb is the chairperson of the ARC.

10.     I was present at several meetings of the ARC where 96 Broadway appeared on the agenda. Based upon my personal observations I can safely state that DOLLINGER approached the ARC process with a hostile, oppositional and a generally obstreperous attitude.

11.          Indeed, the ARC application was ultimately tabled and the public hearing held open, at the ARC's June 13, 2006 meeting because of DOLLINGER'S behavior and inclination to irrationally argue with the ARC members.

12.     This oppositional tone was continued by DOLLINGER'S representative Mr. Maximo Blake by disputing the building was "historic" stating that the Premises was a "ruined building".

13.          I informed Mr. Blake that, his opinion notwithstanding, the Premises was

listed on the National Register of Historic Places and had been so listed since 1985 in the City of Newburgh East End Historic District.

14.    Indeed, although the CITY and the ARC have continued to show good faith efforts to work with the Defendants in getting through the process; the defendants have taken none of the steps required to move their application ahead, nor have either re-applied for any building permits of any kind. As a consequence the building is incomplete, unprotected, unsecured, exposed to the weather and deteriorating with each passing day.

15.    As of April 2007, nothing had been done to secure or protect the building by the defendants, although up to that point in time they had acknowledged that they were responsible for so doing. On April 9, 2007, Maximo Blake, the defendants' representative, attended a work session with three ARC members, Mr. Hunter and me. Mr. Blake wrote a letter which summarized his understanding of what needed to be done to move ahead and protect the Premises based on the discussion at the April 9th work session.

16.    Unfortunately, Mr. Blake took several liberties in his letter including the suggestion that the CITY would somehow liberalize the requirements of its zoning code to permit the project to move ahead.

17.    I was, therefore, compelled to write to Mr. Blake and explain to him that while the CITY did not find disagreement with the principle that the building should be protected and the project moved ahead, whatever occurred going forward would be subject to, inter alia, the CITY'S zoning code, including the ordinances dealing with historic preservation.

18.    In that same letter, I directed a representative to appear on behalf of the 96 Broadway application before the ARC at its May 2007 meeting, as we agreed in the April 9th work session. However, no one appeared at the May 2007 ARC meeting on behalf of the

defendants. A motion was made to close the hearing and deny the application, which was

unanimously passed. The ARC further moved to suggest the CITY take immediate action to

protect the Premises.

19.          DOLLINGER'S only affirmative act vis-à-vis the Premises since that time

has been to serve the CITY with a threatening lawyer's letter and to present the CITY with a

"bill" for approximately three quarters of a million dollars. In that letter, DOLLINGER also

purports to 'elect' to restore the Premises to *status quo ante.*

20.          While the CITY has no objection to this plan of action in principle, and

indeed affirmatively seeks such relief herein, DOLLINGER'S unilateral declaration that "work

will begin on June 21, 2007" without obtaining a building permit or ARC approvals for the work

is both unlawful and unacceptable. DOLLINGER'S brash plan has forced the CITY to seek

immediate relief by way of this application. Thus, the CITY respectfully submits that its motion

should be granted in its entirety.

Michelle Kelson, Esq.

Sworn to before me on this

the 21st day of

June , 2007

Notary Public

DONNA M. RICKEY
Notary Public, State of New York
No. 01RI4705930
Residing in Orange County
Commission Expires April 30, 20__

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
================================X

THE CITY OF NEWBURGH,

               Plaintiff,

        -against-

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

              Defendants,
================================X

AFFIDAVIT OF HUNTER

Index Number:
Assigned Judge:

State of New York)
          ) ss.
County of Orange )

      Steve Hunter, being duly sworn does hereby depose and state under oath:

1.     I am a code compliance officer for the City of Newburgh.

2.     I make this affidavit based upon my review of the files maintained by the City of Newburgh regarding this matter as well as upon my own personal observations.

3.     I have inspected the Premises at 96 Broadway, in Newburgh, New York.

4.     The building thereon is unsecured, unprotected and remain exposed to the elements and to trespassers. The owners have, in my opinion, allowed the Premises to deteriorate to the point where it is in a "serious state of disrepair" as contemplated by City of Newburgh Code 300-28(C).

5.     Under the City Code, the owners have the obligation to secure and protect such buildings and to restore them to their previous condition.

6.     Nevertheless, the code does not relieve persons obligated to so restore premises from the obligation of otherwise complying fully with the City Code.

7.    Indeed, before work can begin to restore the premises to status quo ante, the defendants must obtain a building permit and pass the ARC.

8.    I have been informed that the owner in this case intends to press ahead regardless of the possible zoning restrictions and without obtaining either a building permit or a certificate of appropriateness as of June 21, 2007.

9.    This would be nothing short of a disaster for both the Historic District as well as the surrounding properties located therein.

10.    Upon information and belief, if DOLLINGER makes good on his threat to press ahead with work on June 21, 2007, the Premises may be damaged beyond repair and are in danger being lost to History and to the City forever.

_____
Steve Hunter

Sworn to Before Me on This The

21st day of June , 2007

_____
Notary Public

MICHELLE KELSON
Notary Public, State Of New York
Sullivan County Clerk's #2564
Commission Expires: March 20, 20 10

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
================================X

THE CITY OF NEWBURGH,

              Plaintiff,

   -against-

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

            Defendants,

================================X

AFFIDAVIT OF LALLIS

Index Number:
Assigned Judge:

State of New York )
             ) ss.
County of Orange )

      Angelo Lallis, being duly sworn, deposes and states as

follows:

      1.     I am an assistant assessor with the City of Newburgh.

      2.     Attached hereto as Exhibit "A" are true and accurate copies of photographs taken

by me on the 15th day of June, 2007 of the real property and the building located thereon

identified as 96 Broadway, Newburgh, New York.

      3.     The property pictured is presently titled in 96 Broadway, LLC.

                         Angelo Lallis

Sworn to before me this
21st day of June, 2007

      Notary Public

        MICHELLE KELSON
     Notary Public, State Of New York
      Sullivan County Clerk's #2564
   Commission Expires: March 20, 20_10_

SUMMONS &
COMPLAINT

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
======================================X

THE CITY OF NEWBURGH,

                        Plaintiff,                           SUMMONS

        -against-                                    Index Number:
                                                     Assigned Judge:

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

                        Defendants,
======================================X

TO THE ABOVE-NAMED DEFENDANTS:

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer or, if the complaint is not served with this summons, to serve a notice of
appearance on the plaintiff's attorneys, TARSHIS, CATANIA, LIBERTH, MAHON &
MILLIGRAM, PLLC, within 20 days after the service of this summons, exclusive of the day of
service or within 30 days after the service is complete if this summons is not personally served
upon you within the State of New York; and in case of your failure to appear or answer,
judgment will be taken against you by default for the relief demanded herein.

Dated:    Newburgh, New York
          June 21, 2007

                                    Yours, etc.,
                                    TARSHIS, CATANIA, LIBERTH,
                                    MAHON & MILLIGRAM, PLLC

                        By: _____
                                    Steven I. Milligram, Esq.
                                    Attorneys for Plaintiff
                                    One Corwin Court
                                    P.O. Box 1479
                                    Newburgh, New York 12550
                                    Tel. No. (845) 565-1100

TO:

Douglas R. Dollinger, Esq.
96 Broadway, LLC
96 Broadway
Newburgh, New York 12550

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
==========================================X
THE CITY OF NEWBURGH,

                    Plaintiff,

    -against-

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

                  Defendants,
==========================================X

**VERIFIED COMPLAINT**

Index Number:
Assigned Judge:

    Plaintiff, THE CITY OF NEWBURGH, by its attorneys, TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC, complaining of the above captioned defendant respectfully alleges upon information and belief as follows:

### Identity of the Parties

    1.  Plaintiff, THE CITY OF NEWBURGH (CITY) is a municipal corporation organized and existing under the laws of the State of New York located at 83 Broadway, City of Newburgh, County of Orange, State of New York.

    2.  Defendant 96 BROADWAY, LLC is a domestic limited liability company organized and existing under the laws of the State of New York with a principle place of business at 96 Broadway, City of Newburgh, County of Orange, State of New York and an address registered with the New York State Secretary of State for service of process at: Presidential Services, Inc. 23404 W Lyons Ave., #223, Santa Clarita, CA, 91321-2668.

    3.    Defendant DOUGLAS R. DOLLINGER ("DOLLINGER") is a natural person and, upon information and belief, an attorney admitted to practice law by the State of New York.

DOLLINGER'S record address with the New York State Office of Court Administration in 96 Broadway, City of Newburgh, County of Orange, State of New York. DOLLINGER'S attorney registration number is 2354926 and the registration appears to be current, the next biennial registration period being due in May of 2008.

### Venue

4.    Plaintiff designates Orange County as the place of trial. The basis of the venue is based on the location of the real property in Orange County.

### Relief Requested

5.    The relief requested in this action is emergent in nature and therefore has been commenced by filing this action and has come before this Court by Order to Show Cause.

6.    The CITY seeks by way of this proceeding, it be ordered and adjudged that:

1)    Defendants immediately protect and secure the subject premises located at 96 Broadway, City of Newburgh, State of New York by weather sealing the premises and securing all windows, doors and other openings in the premises against the elements and weather in a good and workman like manner; and

2)    Defendants, in accord with Article V, §300-28(C)(2) of the City of Newburgh Code, restore the condition and appearance of the subject premises and its site to *status quo ante*; and

3)    Defendants strictly comply with Article V of the City of Newburgh Code; and

4)    Pending the issuance of final relief herein, defendants be restrained from performing any further work of any kind on the subject premises aside from

protecting and securing the premises in conformity with the stop work order issued by plaintiff; and

     5)    Plaintiff have such other and further relief as to this Court may seem just, proper, and equitable including reasonable attorney fees, disbursements and court costs incurred in this action.

### General Averments Common to All Counts

7.  Upon information and belief, defendant DOLLINGER claims an ownership interest in the premises located at 96 Broadway, City of Newburgh, County of Orange, State of New York (Section 30, Block 5, Lot 22)(the "Premises").

8. Upon information and belief, defendant 96 BROADWAY, LLC claims an ownership interest in the Premises.

9.  Upon information and belief, DOLLINGER is a member of or claims to have an ownership interest in 96 BROADWAY, LLC, and/or claims to be the attorney for same.

10.    On or about January 17th, 2006, DOLLINGER completed, signed and filed with the Building Inspector's Office for the City of Newburgh an application for a Building Permit regarding the Premises (the "Application"). A copy of the application is annexed as Exhibit "B".

11.    At page 2 of the Application, the work to be performed is generally described as 'the alteration of an existing use hybrid commercial and residential structure by adding an additional 1,000 square feet of space.' Exhibit "B".

12.    In response to item 7 of the application, the applicant denies that the proposed work violates any zoning law or ordinance. Upon information and belief this was an incorrect statement since Article V of the Code of the City of Newburgh requires Architectural Review

Commission oversight and approval, including the issuance of a Certificate of Appropriateness for the proposed exterior renovations. *See*, Exhibit "A"; Exhibit "B".

13.    At page 6 of the application there is a request that the applicant state whether certain pre-conditions to the issuance of the permit are required and if so whether that applicant has complied with those pre-conditions. Exhibit "B" at page 6.

14.    There is, among other things, an entry in the list of pre-conditions for "Historic Review". That, and all other entries, has been left blank by the applicant. By omission, the applicant has represented there are no pre-conditions, including Historical Review, for the issuance of the Building Permit.

15.    This is an incorrect statement of fact and law by the applicant since Article V of the Code of the City of Newburgh requires Architectural Review Commission oversight, including the issuance of a Certificate of Appropriateness for the proposed exterior renovations.

16.    At page 7 of the Application, there is space provided for signature of the Applicant under the following statement in relevant part:

> Application is hereby made to the Building Inspector of the City of Newburgh for the issuance of a Building Permit pursuant to the New York State Uniform Fire Prevention and Building Construction Code for the construction of buildings, additions or alterations . . . the applicant agrees to comply with all applicable laws, ordinances and regulations. Applicant further agrees that the City of Newburgh Building Inspector or his designate will be permitted to perform periodic inspections of this property to insure that work is being performed according to these codes, ordinances and regulations. It is understood by the applicant that if work is not performed according to codes, ordinances, or regulations, any permit that has been issued by the Building Inspector may be withdrawn and an order to stop work issued.

*See*, Exhibit "B" at page 7.

17.     Upon information and belief DOLLINGER signed the application where provided under the above statement as the applicant and owner and on behalf of 96 BROADWAY, LLC.

18.     There is a section to be filled in if the applicant is other than the Owner. This section was left blank by the applicant. Exhibit "B" at page 7.

19.     On or about January 25th, 2006 then City of Newburgh Building Inspector William Cummings wrote to the defendants acknowledging that the Application and certain plans had been received and reviewed by Architect Wheldon A. Abt. A copy of that letter is annexed to the Complaint as Exhibit "C". Ostensibly, Mr. Abt was acting as an independent contractor designated by the Building Inspector to, *inter alia*, review certain building permit applications. The letter specifically requested a preliminary meeting to discuss the Application.

20.     Mr. Abt's comments were enclosed with the said letter to the defendants. Among other things, Mr. Abt specifically identified that the Premises may be a Historic Building subject to Historical review. *See*, Exhibit "C". Mr. Abt further noted that the project documents did not "sufficiently address compliance with the code". Id. A preliminary meeting was scheduled for February 14th, 2006.

21.     On or about February 3rd, 2006 the defendants' architect, Eric Knute Osborn, wrote to the Building Inspector seeking permission to being roof repair due to a leaking roof. Accordingly, the Building Inspector issued a Building Permit for roof repair only on February 6th, 2006. A copy of the Knute-Osborn letters and the roof only Building Permit ("Roof Permit") are annexed as Exhibit "D".

22.     The aforementioned preliminary meeting was in fact held on or about February 14th, 2006. Minutes from that meeting are annexed hereto as Exhibit "E".

23.    Significantly, the minutes reflect that concerns were expressed that the City of Newburgh Historic requirements would prevent the proposed exterior renovations and re-construction. *See*, Exhibit "E". It was specifically noted that there was a "need to go to the Historic Review Board". *See*, Exhibit "E".

24.    Therefore the defendants were on actual notice as early as February 14th, 2006 that the proposed exterior renovations and re-construction to the Premises required oversight by the Historic Review Board.

25.    However the defendants did not take the proposed exterior renovations on the Premises to the ARC and apparently took no steps to ensure compliance with Article V of the City of Newburgh Code as they agreed to do in the building permit application.

26.    Rather, the defendants submitted "revised plans" to the Building Inspector dated February 27th, 2006. In response, Architect Abt issued a review dated March 22nd, 2006 and a Building Permit dated March 24th, 2006 was issued for the "revised work shown on the plans and subject to addressing comments on the March 22nd review by Abt. A copy of the said permit with Abt's comments attached is annexed as Exhibit "F".

27.    It should be noted that there is a handwritten notation on the March 24th, 2006 Permit which states: "No exterior changes until ARC approval as per Bill Cummings 5-8-06."

28.    On or about May 2nd, 2006 a stop work order was issued by the City of Newburgh Building Inspector on that grounds that, *inter alia*, the work being done to the exterior was being performed in violation of section 300-26A of the City Code since ARC approval for the exterior changes had not been obtained and for violation of section 122.12 of the City Code since the work being performed ostensibly exceeded the scope of the March 24th, 2006 building permit. Copies of the said stop work orders are annexed hereto as Exhibit "G".

29.    On or about May 8th, 2006 an order lifting the May 2nd order to vacate was issued by the Building Inspector on the basis that "an agreement had been reached with Cummings, Crab, Dollinger and Terwilliger." This document is annexed hereto as Exhibit "H".

30.    Upon information and belief the gravamen of the agreement was that the building would be secured and protected, that interior work could continue, but that no further exterior work would take place on the premises until a Certificate of Appropriateness was issued by the City of Newburgh ARC approving the proposed alterations or some modification of same. *See*, Exhibit "F". Indeed, a building permit dated May 13th, 2006 was issued for the purpose of "re-construction and scaffolding" only. *See*, Exhibit "I".

31.    Nevertheless, the defendants continued with exterior work on the premises in contravention of the Building Inspector's directions. Therefore, a stop work order was issued by the Building Inspector on or about June 2nd, 2006. A copy of that order is annexed as Exhibit "J".

32.    It is noted that on or about June 6th, 2006 a meeting was held between Bill Cummings, City Engineer Mike Lamoreaux, Code Officer Terwilliger, and DOLLINGER to discuss what had to be done in order to have the stop work order lifted. *See*, June 6th, 2006 Inspection Record annexed as Exhibit "K".

33.    Upon information and belief, DOLLINGER was again instructed of the requirement that the proposed exterior renovations of the Premises be reviewed by the ARC and that a Certificate of Appropriateness be obtained before the exterior work could continue.

34.    Indeed, on or about June 2nd, 2006 an application was submitted to the ARC by DOLLINGER vis-à-vis the Premises. A copy of the Application is annexed as Exhibit "L".

35.    The application indicates that the work to be done generally includes "addition, alterations, repair, doors, roof, windows, steps, clock, finials, columns, decorative cornices, beige and white paint." *See,* Exhibit "L".

36.    DOLLINGER signed the application as the owner thereby acknowledging his understanding and agreement that no work would commence on the Premises until written approval has been given by the ARC and the Building Inspector. *See,* Exhibit "L".

37.    On June 13th, 2006 a meeting of the City of Newburgh Architectural Review Commission was conducted. The application for the Premises was put on the ARC agenda for a public hearing. *See,* Exhibit "M" (June 13th, 2006 ARC Meeting Minutes).

38.    DOLLINGER appeared on behalf of 96 BROADWAY, LLC as the applicant.

39.    By review of the Minutes it is apparent that DOLLINGER approached this process with a hostile, oppositional and a generally obstreperous attitude.

40.    Indeed, the ARC application was ultimately tabled at this meeting because of DOLLINGER'S behavior and inclination to argue with the ARC members.

41.    At that same meeting, Inspector Bill Cummings gave a brief overview of the 96 Broadway project and noted specifically that the owner's representative was advised that the project had to come before the ARC during the Building Permit application process. *See,* Exhibit "M" at page 12. However, Mr. Cummings admitted that the permit was issued without ARC approval because he "missed that notice". Mr. Cummings noted that when it was determined that no ARC permit had issued a stop work order was issued and DOLLINGER agreed to cease exterior work and come to the ARC for approvals. *See,* Id.

42.    DOLLINGER denied knowing that ARC approval was a pre-condition to the commencement of exterior renovations stating in sum and substance "If I knew I had to come before the ARC do you think I would have taken a half-million dollars out of my own pocket and let it sit there?" *See*, Exhibit "M" at page 15.

43.    DOLLINGER thereafter submitted a letter dated June 26th, 2006 (Exhibit "N") noting that his representative Brian Maximo Blake would appear at the next ARC meeting on July 11th, 2006.

44.    Indeed, Mr. Blake appeared at the July 11th, 2006 ARC meeting. A copy of the minutes from that meeting are annexed as Exhibit "O".

45.    As the owner's representative, Mr. Blake continued the oppositional tone by disputing the building was "historic" stating that the Premises was a "ruined building". *See*, Exhibit "O".

46.    Michelle Kelson, Assistance Corporation Counsel for the City of Newburgh, informed Mr. Blake that the Premises was listed on the National Register of Historic Places and had been so listed since 1985. *See*, Exhibit "O".

47.    The ARC held the meeting open in order to solicit further information from the Owner and from the City Building Inspector. Id.

48.    The project Architect, Mr. Knute-Osborn, appeared before the ARC at its October 11th, 2006 meeting.[7] *See*, Exhibit "P" (October 11th, ARC meeting minutes). Id.

49.    The ARC expressed clearly to Mr. Knute-Osborn that the proposed exterior renovations were completely at odds with the historical character of the original building and the neighborhood. The proposal was, simply put, not appropriate. *See*, Exhibit "P".

---

[7] It should be noted that the subject Premises appeared on each monthly agenda of the ARC but only those meetings where the owner or one of its representatives appeared are discussed here.

50.    Mr. Knute-Osborn offered to take away "a lot of the gaudy details". Exhibit "P".

51.    The ARC voted to table the application while the applicant consulted with professional and historic resources to submit a design proposal which did not jeopardize the Premises as a contributor to the Historic District in the National Register of Historic Places. Id.

52.    Following the October 11th, 2006 ARC meeting, ARC Chairperson Mary Crabb wrote to DOLLINGER by letter dated October 27th, 2006. *See*, Exhibit "Q".

53.    In that letter, Ms. Crabb advised DOLLINGER of the outcome of the October ARC meeting and generally described what had to be done in order to move the application ahead together with an admonition that any work on the Premises would require a building permit. Exhibit "Q".

54.    However, neither DOLLINGER nor 96 BROADWAY, LLC has taken any of the steps required to move their application ahead, nor have either re-applied for any building permits of any kind.

55.    In fact, upon information and belief, nothing has been done with respect to the Premises in over a year. The Premises are unsecured, unprotected and remain exposed to the elements and to trespassers.

56.    Annexed hereto as Exhibit "R" is a February 23rd, 2007 letter by Nancy Billman, President of the Newburgh Preservation Association. In that letter, Ms. Billman described the condition of the Premises as "embarrassing, if not dangerous." *See*, Exhibit "R".

57.    The owner, through its representative Maximo Blake, held an informal work session with the City to address the ongoing problem of the half-demolished, weather exposed and unsecured Premises on April 9th, 2007.

58.    Mr. Blake sent a memorializing letter following this informal meeting. *See*, Exhibit "S". Among other things, Mr. Blake acknowledged on behalf of the owner the need to immediately secure, protect and weather seal the Premises.

59.    Assistant Corporation Counsel Kelson replied to Blake by letter dated April 19th, 2007 clarifying that while the City would allow some flexibility in design, the final designs would be subject to ARC approval in accord with the City Ordinances governing exterior renovation to Historic Premises. *See*, Exhibit "T".

60.    By that same letter, Ms. Kelson directed an appearance by a representative of the owner for the next ARC meeting scheduled for May 8th, 2007. Id.

61.    However, neither DOLLINGER, nor Maximo Blake nor Knute-Osborn nor anyone else purporting to be affiliated with the project appeared at the May 8th, 2007 ARC meeting. A copy of the minutes is annexed hereto as Exhibit "U". On the failure to appear, the ARC denied the application and voted to take action to secure and protect the Premises. *See*, Exhibit "U".

62.    Photographs showing the Premises in 2005 prior to the demolition, and in 2006 and 2007 are annexed hereto as Exhibit "V". The photographs show the illegal exterior renovations as well as the present unsecured, unprotected and weather exposed condition of the Premises.

63.    In conformity with the above documented adversarial and oppositional course of conduct, rather than move to protect the Premises and comply with the ARC process, DOLLINGER sent to the City a letter which has been annexed hereto as Exhibit "W".

64.    In his June 8th, 2007 letter, DOLLINGER sent to the CITY a bill for

$784,000.000 based upon certain claimed-published mistakes the Building Inspector as well as

certain unspecified violations of Constitutional and Statutory Rights. *See*, Exhibit "W".

65.    In that letter, DOLLINGER states that he has "elected to restore the building to its

former appearance". Id. While the CITY has no objection to this plan of action in principle, and

indeed affirmatively seeks such relief herein, DOLLINGER'S unilateral declaration that "work

will begin on June 21, 2007" without obtaining a building permit or ARC approvals for the work

is both unlawful and unacceptable. DOLLINGER'S brash plan has forced the CITY to seek

immediate relief by way of this application.

66.    It is respectfully submitted that there is a substantial danger of an immediate and

irreparable injury to the Premises, to the CITY and its interest in the preservation of the assets of

its Historic District. Specifically, if DOLLINGER makes good on his threat to press ahead with

work on June 21, 2007, the Premises may be damaged beyond repair and are in danger being lost

to History and to the City forever.

## AS AND FOR A FIRST CAUSE OF ACTION
### Defendants Must be Restrained from Working on the Premises and Must be Ordered to Strictly Comply with the City of Newburgh's Codes and Ordinances

67.    Plaintiff repeats, reiterates and re-alleges allegations 1-66 as though fully set forth

at length herein.

68.    Section 300-26(A) of the City of Newburgh Code states:

Certificate required. No person shall carry out any exterior
alteration, restoration, reconstruction, demolition, new construction
or moving of a landmark, nor shall any person make any material
change in the appearance of such a property, its light fixtures,
signs, sidewalks, fences, steps, paving or other exterior elements
visible from a public street or alley which affect the appearance

and cohesiveness of a district and its designated properties, without first obtaining a certificate of appropriateness.

City of Newburgh Code §300-26(A)[General Code, 2007]. Exhibit "A".

69.    The Premises are designated "a historic landmark" and appears in the City of Newburgh, East End Historic District in the National Register of Historic Places.

70.    There is no dispute that the defendants have proceeded with the demolition of the exterior of the Premises without first having obtained the requisite certificate of appropriateness from the City of Newburgh ARC.

71.    Therefore the defendants are in violation of City of Newburgh Code §300-26(A).

72.    Section 300-26(E) and (F) state in relevant part:

E. Prior to the commencement of any work requiring a certificate of appropriateness the owner shall file an application for such a certificate with the Commission.

F. No building permit shall be issued for such proposed work until a certificate of appropriateness has first been issued by the Commission. *The certificate of appropriateness required by this section shall be in addition to and not in lieu of any building permit that may be required by any other ordinance of the City of Newburgh.*

City of Newburgh Code §300-26(E),(F)[General Code, 2007](emphasis supplied). Exhibit "A".

73.    It is equally clear that the defendants failed to file an application for a certificate of appropriateness prior to the commencement of work and that the certificate of appropriateness is in addition to, not in lieu of any building permit required under other ordinances of the City. Thus, the defendants may not argue that they were entitled to proceed based upon the March 2006 permit issued by Inspector Cummings.

74.    Section 300-28(A) of the City of Newburgh Code states:

Enforcement. All work performed pursuant to a certificate of appropriateness issued under this article shall conform to any

requirements included therein. It shall be the duty of the Building Inspector to inspect periodically any such work to assure compliance. In the event work is found that is not being performed in accordance with a certificate of appropriateness, the Building Inspector shall issue a stop-work order and all work shall immediately cease. *No further work shall be undertaken on the project as long as a stop-work order is in effect*.

City of Newburgh Code §300-28(A)[General Code, 2007](emphasis supplied).

75.    Section 300-28(A) clearly authorized the stop work orders issued by Inspector Cummings. Those stop work orders remain in effect. Moreover, the threat by DOLLINGER to begin work on the Premises on June 21st, 2007 is in direct contravention to the prohibition of section 300-28(A) that no work shall be undertaken unless and until a certificate of appropriateness is obtained from the ARC and until the stop work order is lifted by the Building Inspector.

76.    The defendants have not yet obtained such certificate of appropriateness, nor has the stop work order been lifted. Therefore the threat to begin work on June 21st is illegal and this Court must restrain defendants from executing the threatened violation of law.

## AS AND FOR A SECOND CAUSE OF ACTION

### Defendants Must Be Compelled to Immediately Secure and Protect the Premises And to Restore the Exterior of the Premises to Status Quo Ante

77.    Plaintiff repeats, realleges and reiterates allegations 1-76 as though fully set forth at length herein.

78.    The defendants must, as a matter of law, be compelled to secure and protect the Premises without delay.

79.    Section 300-28(B) of the City of Newburgh Code states in part:

Maintenance required. Nothing in this article shall be construed to prevent the ordinary maintenance and repair of any exterior

architectural feature of a landmark or property within a historic
district which does not involve a change in the design, material,
color, or outward appearance. *No owner or person with an interest
in a designated property shall permit the property to fall into a
serious state of disrepair so as to result in the deterioration of any
exterior architectural or historic feature which would, in the
judgment of the Commission, produce a detrimental effect upon the
character of a historic or architectural district as a whole or the
life and character of a landmark.* Examples of such deterioration
include:

(1)   Deterioration of exterior walls or other vertical supports;

(2)   Deterioration of roofs and other horizontal members;

(3)   Deterioration of exterior chimneys;

(4)   Deterioration or crumbling of exterior stucco or mortar;

(5)   Ineffective waterproofing of exterior walls, roofs, or
foundations, including broken windows or doors; and

(6)   Deterioration of any features so as to create a hazardous
condition which could lead to a claim that demolition is necessary
for the public safety.

City of Newburgh Code §300-28(B)[General Code, 2007](emphasis supplied).

80.     The ARC determined at its May 2007 meeting that the Premises being unsecured,

unprotected and open to the elements amounted to such a serious state of disrepair that

immediate steps were required to protect the Premises voting that "the City take the necessary

steps to secure and protect 96 Broadway and to hold the owner's of 96 Broadway accountable in

full." *See*, Exhibit "U".

81.     Additionally, code compliance officers with the City of Newburgh have

determined

that the Premises are indeed in a state of disrepair as contemplated by the City Code.

82.    Section 300-28(C) of the City of Newburgh Code states in part:

> Any person who demolishes, alters, constructs or permits a designated property to fall into a serious state of disrepair in violation of this article shall be required to restore the property and its site to its appearance prior to the violation. An action to enforce this subsection may be brought by the City in any court of competent jurisdiction. This civil remedy shall be in addition to and not in lieu of any criminal prosecution and penalty.

City of Newburgh Code §300-28(C)(2)[General Code, 2007](emphasis supplied). Exhibit "A".

83.    Thus, City of Newburgh Code §300-28(C)(2) provides for the authority to direct the defendants to immediately secure and protect the Premises as well as to direct defendants to restore the Premises to *status quo ante*. Based upon the undisputed violations of City Code by the defendants, the Court has it well within its discretion to grant the requested relief.

**WHEREFORE**, plaintiff CITY OF NEWBURGH prays this Court order and adjudge that:

1)    Defendants, in accord with Article V of the City of Newburgh Code, <u>immediately</u> protect and secure the subject premises located at 96 Broadway, City of Newburgh, State of New York by weather sealing the premises and securing all windows, doors and other openings in the premises against the elements and weather in a good and workman like manner; and

2)    Defendants, in accord with Article V, §300-28(C)(2) of the City of Newburgh Code, restore the condition and appearance of the subject premises and its site to *status quo ante*; and

3)    Defendants strictly comply with Article V of the City of Newburgh Code; and