EXHIBIT A PART 4



FINIALS

CLOCK

FINIALS

SLATE TILE ROOF

ITE E OF

SLATE TILE ROOF

Columns

Columns

CREATIVE NICES

DECORATIVE CORNICES

FOUNDATION STONE

FOUNDATION STONE



**Check 1123:**

96 BROADWAY LLC
204 MAIN STREET
GOSHEN, NY 10924

1123

PAY TO THE
ORDER OF City of Newburgh          $ 25.00

Twenty - Five dollars          00/100   DOLLARS

Bank of America
Goshen, New York

FOR Application fee

DATE 6-2-06

29-1/213
9501761968

**Check 1124:**

96 BROADWAY LLC
204 MAIN STREET
GOSHEN, NY 10924

1124

PAY TO THE
ORDER OF City of Newburgh          $ 40.00

Forty dollars          00/100   DOLLARS

Bank of America
Goshen, New York

FOR Public Hearing Legal Fee

DATE 6-2-06

29-1/213
9501761968

**Exhibit M**

# CITY OF NEWBURGH
# ARCHITECTURAL REVIEW COMMISSION
**Mary Crabb, Chairperson**                    **Nancy Evans, Secretary**
**123 Grand Street, Newburgh, N.Y. 12550    (845) 569-7400 Fax 569-0096**

---

### ARCHITECTURAL REVIEW COMMISSION meeting of June 13, 2006.

The regular meeting of the City of Newburgh **Architectural Review Commission** was held on Tuesday, June 13, 2006 at 7:30 p.m. in the Activity Center at 401 Washington Street, Newburgh, New York.

**Members Present:**     **Mary Crabb, Chairperson**
**Keith Neito**
**Peter King**
**Barbara Lonczak**
**Vincent Trunzo**
**Don Herron**
**Charles Passarotti**

**Members Absent:**     **None**

**Also present:**     **Michelle Kelson, Asst. Corporation Counsel**

The meeting was called to order at 7:30 p.m. after a quorum was confirmed.

## OLD BUSINESS

**AR 2006-13**     **64-68 Clinton Street**
**For construction of a new home.**
**Applicant: Charles Brown and Carolyn Micheli**

The Chairperson of the Board then opened the Public Hearing by reading the text of the notice.

Mary Crabb recused herself from chairing this application. Keith Neito chaired in her place.

Carolyn Micheli appeared before the Board.

Ms. Micheli submitted new drawings with color choices, doors, shingles, dimensions of house and elevations.

Mr. Herron expressed his feeling that the windows from that time period should be one over one instead of eight over eight.

1

Ms. Micheli agreed to change windows to one over one.

Ms. Micheli understood that although the Board accepted the Queen Anne design it did not mean that they would approve it. She did research and she brought more things that are for a Victorian House. The lattice will be eliminated.

The following are comments made by the Board:

Mr. Neito: The new drawing does not have the same charm.

Mr. Herron: The proportions of the façade are a lot larger. The proportions on the original one were tighter and nicer and they really fit.

Mr. King: I think it is a large chunk on the street as opposed to what's there.

Ms. Lonczak: The bay windows seem prairie style. I believe an architect is needed to help with small details. Someone who understands proportions and is sensitive to both of the issues we are talking about.

Ms. Micheli's reply to this: When I did my research the Queen Anne has many features. It's an A symmetrical shape, it has a front gable, it has a porch on both sides, it has round or square towers, bay windows, different kinds of styles for spindles. These Queen Anne homes are every ostentatious. They are similar to the plans I have made. Not balanced. Many people do not like Queen Anne style.

Ms. Lonczak: You might want to consider a smaller home. Simply because going with a smaller home you may be able to invest in a higher quality design and materials.

Mr. Passarotti: I think what also throws it off is that the sides of the house do not have the same charm as the front. The sides are straight and simply have windows stuck where you need them. Needs three dimensional quality on all sides.

There were no people to speak for or against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Ms. Lonczak and seconded by Mr. Trunzo.

The motion was denied with a vote of 2-4 with one abstention.

The applicant asked if they needed to reapply?

Assistant Corporation Counsel told applicant they did not need to reapply but they would need a new public hearing when they were ready to return.

| AR 2006-25 | **229-231 Dubois Street** |
|---|---|

To install 2 Anderson French patio doors 60 x 80 steel doors; paint front door BM Alexandria Beige HC-77; replace basement doors with metal latch Gordon cellar doors and paint with BM Alexandria Beige HC-77; poured concrete 20' x 25' patio stamped; one 12" step from French doors to patio; replace front door entry with 3 step down 5 ½ x 6 10" depth; install rod iron railings, 18 vinyl shutters painted BM Alexandria Beige HC-77.
**Applicant: Toni Maria Colandrea**

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Mr. and Mrs. Colandrea appeared before the Board.

The applicants are returning before the Board this month because their application was tabled last month. It was requested that the applicant return this month with current photographs of the property and information on the materials to be used such as the type of vinyl shutters, basement doors, etc.

The French doors have already been installed without approval.

There were no people to speak for or against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Mr. King, and seconded by Mr. Trunzo.

When Mr. King made his motion to accept this project as completed he stated that it is always with regret that it wasn't caught before the work was completed.

The motion was passed with a vote of 7-0.

## NEW BUSINESS

| AR 2006-36 | **94 Johnston Street** |
|---|---|

To paint body of house white and paint trim using three colors (New London Burgundy, Lafayette Green and Stonington Gray)
**Applicant: Juan Eduardo Cardozo Samudio**

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

3

Juan Eduardo Cardozo Samudio appeared before the Board.

The work has already been completed.

Mr. Cummings explained to the Board. This gentleman was before the Board a while back and got ARC approval to do work. However, in the application he did not list that he was painting the building. So when he received all his approvals, I believe there was a language barrier at the time, he thought he had permission to do the painting and the trim but we could not find it in the search of the records that was authorized. In his application be said he was going to paint the building but you did not give approval. He got a violation obviously to come back. At Ms. Crabb's request, we researched the record and found that it was not in the approval. She took a ride out to take a look at the trim that was done. That's why he's back. He was here before and met all the requirements and got the approvals except it wasn't in the approval for the paint.

Mr. Samudio came before the Board approximately two years ago.

The colors chosen are Benjamin Moore brand.

There were no people to speak for or against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Ms. Lonczak and seconded by Mr. King.

The motion was passed with a vote of 7-0.


## PUBLIC HEARINGS

2005-09            **145 South William Street**
To install a new metal roof, new cultured stoning face on façade and piers, new Sto siding, new cornice, new doors and aluminum clad windows and new exterior columns. The existing brick is to remain.
**Applicant: Edward Wolfe Jr.**


The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Anthony Coppola appeared before the Board.

Mr. Coppola explained that this applicant appeared before ARC in 4/2005 for a recommendation to the Zoning Board. They received a Zoning Variance to convert an existing warehouse into a 6 family apartment building. Each apartment will be approximately 800 square feet. There will be 4 doorways to enter the building two of which have a common door

4

with a short hallway. There will 3 apartments with 2 bedrooms each and 3 apartments with 1 bedroom each. It's an L shape lot up on the hill. Tonight I am here for elevation and materials to be used.

There are 3 different kinds of material there. The flush block, the center section of the building is brick and the Monument wing portion is an older split face block. We are going to break building up into 3 sections but continue a common theme through the whole thing. The building is not listed in the Historical book. A non-contributing building. Refacing the entire façade. Rearranging all new windows because the windows that are there really don't work with what our plans are for the interior division of the six apartments so the windows that you see here are new. Some of them fall within the existing openings and some of them don't. Aluminum roof to continue over all 3 sections of the building. Apple cultured stone to the bottom to the brick piers that are running along the overhang. Very body of these 3 portions. The brick in the center – that stays and gets painted and then apply concrete siding board, instead of Sto siding, that will be painted it's not a vinyl product – Hardy Board – a manufactured product. In the center – raise the roof to do a little bit of detail with some bracketing and panels. The cultured stone will be the same color throughout. The aluminum roof is the same color, the trim is the same color and then very the colors of the body. The overhang is aluminum and sticks out 3 to 4 feet with columns only on the porch. An aluminum fence will be installed with ½" x ½" straight pickets with a sliding gate.

Mr. Herron suggested that the windows and doors would look better plain, one over one, and Mr. Coppola agreed to change that.

Mr. Neito asked Mr. Coppola if the cornice needed that much detail?

Mr. Coppola agreed that it was too busy and agreed to simplify the cornice.

When the Chairperson asked if there was anyone present that would like to speak in favor of this appeal the following individual spoke:

Michael Newell, 20 Liberty St W.H., Newburgh, New York
Michael Gabor, 297 Grand Street, Newburgh, New York

Mr. Newell likes the improvement this will bring. Mr. Gabor had questions about the aluminum roof, he did not understand what was being used.

There were no people to speak against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Ms. Lonczak and seconded by Mr. Neito.

The motion was passed with a vote of 7-0.

AR 2006-28          **177-179 Broadway**
To install a new sign, new Sto cornice, new privacy fence, new exterior door, new aluminum clad windows, new steps and railings and re-point masonry.
**Applicant: Alfa Property Management and Construction Real Estate Co. Inc.**

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Anthony Coppola appeared before the Board.

Mr. Coppola explained that the building is to be a take out restaurant approximately 1000 square feet. The existing monument sign will be renovated and will remain. Restore brick back to its original and repoint masonry. The windows will be aluminum clad and painted dark brown. The new doors will also be painted dark brown and highlighted with wall-mounted awnings. They will remove the 3rd door and fill with brick. An ornamental metal privacy fence will be installed.

The owner would like lighted letters so they will use paneled stucco without diamonds so letters can be installed with lighted letters. They will use a salmon color for the stucco. This portion was not voted on and the applicant will return at a later date to talk more about this signage and the colors to be used. The public hearing was not left open.

There were no people to speak for or against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Mr. King and seconded by Mr. Neito.

The motion was passed with a vote of 7-0.


AR 2006-32          **2 Bayview Terrace**
To renovate a non-occupied carriage house into a one car garage with storage. Renovations will include installation and replacement of windows, replace doors and update façade. Shingles to be GAF architectural shingles color – Fox Hollow Gray; siding – Philadelphia Cream (HC-30); and trim – Van Courtland Blue (HC-145).
**Applicant: Rafiq Majeed**

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Anthony Coppola appeared before the Board.

Mr. Coppola stated that this is the 3rd time he has come before the ARC

for this property. Sometime last year they were here for the main house. There was a horrific fire here. It burned through the roof and they were here for the restoration of the main house to a single family. Then I was here in December for a proposal which was not approved by the Zoning Board and that was dealing with the carriage house that's in the rear. The proposal that was not approved was to convert this into a single family. The main house being a one family and this would be a second family on that site. That was not approved. What we are here for tonight is to try to make sense of what to do with this carriage house so we can get it approved and get it looking like the main house looks now. We want to remove this front one story garage. The building with the long shed roof is the building they want to remove. The carriage house sits behind that garage. The carriage house was original. The garage was an add on. They would like to remove that and give them a bigger driveway and then develop this carriage house into a garage and partial storage. They will put one overhead door center it right under this reverse gable. We will use a carriage style door that looks like it operates on hinges not an upward acting door. Take the same architectural theme from the main house. Everything will match with the main house. They will keep windows and hay door. They will remove skylight and possibly remove the chimney. They won't need either of those.

There were no people to speak for or against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Ms. Lonczak and seconded by Mr. Trunzo.

The motion was passed with a vote of 7-0.

| AR 2006-33 | 20 Liberty Street, W.H. |
|---|---|
| | To paint front of building in Opal Cream; repair-replace front entrance wood stairs with treated wood; touch up cement stairs with a sand and cement topping. |
| | **Applicant: Michael and Lucy Newell** |

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Michael and Lucy Newell appeared before the Board.

Mr. and Mrs. Newell explained to the Board what they wanted to do.

Mr. Neito suggested that they repoint the brick and Mr. and Mrs. Newell agreed to do this.

Somethings that were not submitted in their application which were approved are to paint the trim to match the dark green on the top of the building, to paint the retaining wall Opal Cream, to repoint brick and to power wash the building.

7

When the Chairperson asked if there was anyone present that would like to speak in favor of this appeal the following individual spoke:

Miquel Marquez, Coldwell Bankers

Mr. Marquez wanted to let everyone know that the dark green trim will look very nice against the cream color of the house. Mr. Marquez stated that these two colors are a popular combination right now.

There were no people to speak against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Ms. Lonczak and seconded by Mr. Neito.

The motion was passed with a vote of 7-0.

| | |
|---|---|
| **AR 2006-34** | **10 Bayview Terrace**<br>To restore existing clapboard siding (after removing asphalt and aluminum siding), restore Yankee gutters, replace damaged/broken windows with wood reproduction windows, replace failed roof with asphalt shingles – color to match original cedar shingles, rebuild missing/unoriginal porches, remove added external stairway and restore existing front door.<br>**Applicant: Isaac Diggs** |

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

James Hartford, Isaac Diggs and Ariyike Diggs appeared before the Board.

Mr. Hartford explained the project to the Board.

The dwelling was built in 1888. It is currently unoccupied. The owners would like to change it from a three family to a one family.

Mr. Herron is happy they are making it a one family.

Mr. Neito thinks they are taking on a brave project.

When the Chairperson asked if there was anyone present that would like to speak in favor of this appeal the following individuals spoke:

Maryann Prokosch, Galloway Avenue, Newburgh, New York
Michael Gabor, 297 Grand Street, Newburgh, New York
Sal Salazar from Sal's Contracting, Newburgh, New York

The above individuals thought it is wonderful that the owners are restoring this home to what it was and making in a one family again.

There were no people to speak against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Mr. King and seconded by Ms. Lonczak.

The motion was passed with a vote of 7-0.

| | |
|---|---|
| **AR 2006-35** | **30 South Miller Street**<br>To install handrail on front porch.<br>**Applicant: John Migliaccio** |

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Richard Milton appeared before the Board.

Mr. Milton informed the Board that Mr. Migliaccio was notified by the insurance company that he needed a handrail in place within 7 days or his insurance would be cancelled. He installed the handrail and then received a violation from the Code Compliance Department because he did not have ARC approval. Mr. Migliaccio did not have time to appear before the ARC before the 7 days were up.

Mr. Cummings verified that the work meets code.

Mr. King stated that the work has been done without our approval and actually this is one of the few times that this has happened where I do understand what happened. I don't see any reason to knock down the new structure at this point.

There were no people to speak for or against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Ms. Lonczak and seconded by Mr. Trunzo.

The motion was passed with a vote of 7-0.

| | |
|---|---|
| **AR 2006-37** | **81 South Street**<br>To replace rails on front steps; replace fence at front of building to match rails; install security picket fence at rear of building; construct deck at rear of building; replace/repair foundation under front steps; replace steps |

to basement front and back; repair basement walls; install
concrete floor to basement.
**Applicant: Norma Harley**

The Chairman of the Board then opened the Public Hearing by reading
the text of the notice.

Norma Harley and her daughter appeared before the Board.

There were no people to speak for or against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Ms. Lonczak and
seconded by Mr. Trunzo.

The motion was passed with a vote of 7-0.

| | |
|---|---|
| **AR 2006-38** | **149 Broadway**<br>To install two metal signs (front and side view) – yellow.<br>Dimensions: front – 8'-7" W X 34" H flat panel sign, side – 8'-11" X 34" H flat panel sign.<br>**Applicant: Gerry Sanchez** |

The applicant did not appear before the Board. This matter is tabled for
applicant's appearance.

| | |
|---|---|
| **AR 2006-39** | **96 Broadway**<br>For addition, alterations and repairs to doors, roof,<br>windows, steps, clock, finials, columns, and decorative<br>cornices. Paint colors to be beige and white.<br>**Applicant: 96 Broadway LLC** |

The Chairman of the Board then opened the Public Hearing by reading
the text of the notice.

Douglas Dollinger appeared before the Board.

Mr. Dollinger - You have my application. Do you have any questions?

Ms Crabb – Tell us what you would like to do?

Mr. Dollinger – I'm already doing it. I have a building permit I cannot proceed
forward. I'm here to help you. If you have any questions please let me know.

Ms. Crabb - Tell us what you would like to do, I mean this is a public hearing, this is
open to the public and the public needs to know exactly what you want to do
with this building.

Mr. Dollinger – Well actually they can go and view the file at the Building Dept.

Ms. Lonczak – That's not how we do it.

Ms. Kelson – Do the Board the courtesy of explaining...

Mr. Dollinger – They are not a Board. They are not a Board.

Ms. Kelson – Excuse me Sir! Please do the members of this Commission the courtesy of explaining what your plans are for the exterior renovations of this building. Thank you.

Mr. Dollinger – Do you have any specific questions concerning this building?

Ms. Kelson – We are asking you to give us a brief overview.

Ms. Lonczak – May I ask a question?

Mr. Dollinger – Yes.

Ms. Lonczak – How come you didn't come to the ARC before you started tearing that gorgeous building down?

Mr. Dollinger – First of all that gorgeous building was absolutely falling apart and it the City had done it's job they would have known it was a detriment to the public. People's lives were in jeopardy. The _____ was cracked and falling. It had been covered with fiberglass. The brick could be removed by hand.

Ms. Lonczak – I was in that building and that's your opinion.

Mr. Dollinger – Do you have a degree in engineering?

Ms. Lonczak – No I don't.

Ms. Kelson – Excuse me Mr. Dollinger. My name is Michelle Kelson, I'm the Assistant Corporation Counsel for the City of Newburgh. This Board has a civic responsibility as designated by the State of NY to review your exterior plans for the property and if you do not co-operate with this Board you will find yourself having more difficulties completing your project.

Mr. Dollinger – Thank You. My project is underway. I just want to make myself perfectly clear. I am not going to be intimidated by anyone .......

Ms. Kelson – No one is trying to intimidate you. We are asking for some common courtesy.

Mr. Dollinger – I will tell you again. Your wrong. My application......

Mr. Neito – Wrong, I haven't heard.....

Ms. Kelson – We are asking for some common courtesy.

Ms. Crabb – Wait a minute, wait a minute. Time Out. Let's be respectful to everybody here. We are here to help you. We are here to help you. Mr. Cummings would you like to explain what happened with this building?

11

Mr. Cummings – Mr. Dollinger made or rather a staffer made an application in 2005. In 2005 when the gentleman came forward to make the application the intent was to do in kind repair to the front of the building. There were numerous reviews. Mr. Dollingers engineers requested a roofing permit approximately January 2005 due to the detrimental weather after an engineering review and a structural review and his engineers stating that the safety of the building, we issued a roof permit only. At the same time they began the Building Permit review process. During that process one of Mr. Dollinger's representatives was advised they needed to come before ARC. However, because we were already in the building permit process, I missed that notice. The building permit process to review the building was finalized in April 2006. The building permit was issued in May of 2006. When the building work started to be done we received complaints. The officer in charge of that area checked the file, there was no ARC approval. Went up and saw that there was more than in kind work being done. A Stop Work Order was issued. Mr. Dollinger was asked to come into the office. The Chairperson was also asked to come into the office which is standard when we have one of these issues. Mr. Dollinger explained what happened. The front of the building was deterioration of the lintels more than what any of the engineers thought before they started opening the building up. It was agreed at that point that no exterior work would be issued. The stop work was issued, and that they were to appear before the ARC to receive the proper approvals for the exterior work. Mr. Dollinger then made an application to the board and we are here today.

Ms. Lonczak – But work continued after that Stop Work.

Mr. Cummings – Work continued on the interior not the exterior. Let me further say that presently the interior work has also been stopped.

Ms. Lonczak – But from our last ARC meeting when Mary had informed us that she had met with you and Mr. Dollinger that there was a stop work order. I drove by within three days and saw that there was new work being done. And since then I have…..

Ms. Crabb – On the exterior?

Ms. Lonczak – Yes. In the front on the top floor.

Mr. Cummings – To my knowledge and I will go back and look. I was just at the building a week ago. There has been no work since the day we put the stop work order on.

Mr. Dollinger – To answer your question in reference to the stop work order. All work was stopped. What you are looking at is shoring (unintelligible).

Mr. Neito – That may be your opinion sir and if I may add, and I'm speaking now, this board treats everyone in front of it with respect. I don't want to hear anymore about accusations of intimidation from you. And speak to us with respect. We have zero tolerance for anything else other that that.

Mr. Dollinger – Do you have a question that relates to the building?

Mr. King – Yes I do.

Mr. Dollinger – Can I have your name?

Mr. King – Yes I'm Peter King.  What is this and what was the building?

Ms. Crabb – We don't have a photograph of what it was before.

The board wants to see a picture of what the building looked like before any work was done.

There were no people to speak for this application.

When the Chairperson asked if there was anyone present that would like to speak against this appeal the following individuals spoke:

Michael Gabor, 297 Grand Street, Newburgh NY
Mr. Gabor produced a picture of 96 Broadway from many years ago. Mr. Gabor also stated that he would like the ARC to look at the property file for this property. He believes there is a letter in it from October or November of 2005 that the board should look at.

Brian Flannery, 5 Norton, Newburgh, NY
Mr. Flannery think's it is great that we seek the publics input.  He would also like to know if this will require a parking or area variance.

Barbara Smith, 345 Powell, Newburgh, NY
Wants to know if Mr. Dollinger was aware that there was an ARC or does he believe he is above the law and can do whatever he wants to do?

Maryann Prokosch, 22 Galloway Ave, Newburgh, NY
Many bizarre changes to the exterior of the building.  It looks like there is going to be a large window on the second floor.  Should he have had an extensive, special building permit for what he has done.
If the building has been vacant for more that 6 months they may need a variance for their setbacks.

Art Valensic, Newburgh, NY
Is it an historic building? And why is it being altered so much?

John Lonczak, Newburgh NY
Thinks board should investigate how this got so far with no one doing anything. The building is right across from City Hall within the eyesight of the City Manager. If this building is in violation of so many things how did it get so far out of hand so many months and how can we avoid this in the future. At this point everyone has a black eye.

Ms. Crabb stated that based on the magnitude of this she was going to keep the public hearing open.  Mr. Cummings did you find anything in the property file.

13

Mr. Cummings – Nothing from '05.

Ms. Kelson – At this point in time what I would suggest is putting aside the how and the why and maybe using the application that is before you to gleam some additional information from the applicant to determine whether or not you can move this application forward. Now on page 2 of the application under description of work the applicant lists an addition, alterations, repairs, doors, roof, windows, steps, clock finials, columns, decorative cornices, beige and white paint. So I think we can craft some intelligent questions using these points to find out exactly what the applicant plans to do with the property. For example, you have listed an addition. Can you please tell me what addition you are making to this building?

Ms. Crabb - May I ask one question before you go on? Does this have to go before the Zoning Board?

Ms. Kelson – I don't know enough about the application and at the first instance it's not my call as counsel.

Mr. Dollinger - The clock was purchased in Australia. I think it will enhance the city. It lights up. The addition is to the rear portion of the building. The design was taken from a church and we want it to conform with what was there. We thought it would enhance the block. There is no change to the footprint of what is there. They bought the lot behind for parking. Are providing handicap access in two places. Did you have another question?

Ms. Kelson – Can you explain to us what part of the exterior of the property needed to be repaired and how you plan to repair them?

Mr. Dollinger – The building had some sort of molding on the lower portion. Because of that the brick veneer became wet and started to crumble. To fix this we were hoping to put foundation stone in its place because there is no way to bring that brick back to life. After that they would do the cornice. Then replace windows with 4 over 4 energy efficient.

Ms. Lonczak – Replace. Not move.

Ms. Dollinger – There are two windows. If you look at the center peak of the turret there is one window there that someone a long time ago replaced and moved the window and it just doesn't look right. So we have extra brick and align the windows so it is straight.

Ms. Lonczak – You added all the windows at the top.

Mr. Dollinger – Yes. The windows at the top will all be added but it's not without reason. It's because the existing windows on the Liberty side have not lined up. They changed them and shifted them to the left.

Ms. Lonczak – You said the windows are 4 over 4. The original windows were 1 over 1.

14

Ms. Crabb – In this old picture they were 1 over 1. I don't know what was there before he started.

Mr. Dollinger – And the question is does it enhance or does it take away from the view?

Ms. Crabb – Well it's the historical district.

Mr. Dollinger – It is not a historical building.

Ms. Lonczak – It is an historical building and in the 1980's.

Everyone was talking over each other.

Ms. Crabb – You know there is no sense continuing this if we cannot talk to each other intelligently and with respect. I refuse to have somebody talking to my Commission like this. I suggest we table this tonight. Get the appropriate photographs and the necessary information we need to act on this.

Mr. King – Are we taking a position on lead agency?

Ms. Kelson – No. You would be responsible for doing your environmental review. So for the purposes of reviewing the…

Mr. King – I think this is an action. I would come out with a negative declaration.

Ms. Kelson – I think your putting the cart before the horse. You don't even know what the full extent of the renovations are.

Mr. King – I've seen it. I've seen what already occurred and if this were under the Secretary Standards the rehab obviously would not be acceptable.

Ms. Kelson – You would not negative dec. I think again your putting the cart before the horse.

Ms. Lonczak – Did you know you had to come before the ARC?

Mr. Dollinger – I obtained the permit (unintelligible) as Mr. Cummings told you they did not notify us.

Mr. Crabb – Answer her question. Did you know you had to come before the ARC? Did you have an idea?

Mr. Dollinger – If I knew I had to come before the ARC do you think I would have taken a half a million dollars out of my own pocket and let it sit there. What is the plan here? I am sitting here trying to make money for you.

Everyone started talking over each other.

Ms. Crabb – I'm not going to tolerate this.

Ms. Lonczak – One other question. Have you done anything like this before in a historic district?

Everyone started arguing

Ms. Crabb – At this time I'm going to table this application. I need a motion to table this application.

A motion to table the application was made by Mr. King and seconded by Mr. Neito.

The motion was passed with a vote of 7-0.

Ms. Crabb – Notion to adjourn?

Mr. Trunzo made the motion.
Mr. King 2nd.
All in Favor

Meeting adjourned at 10:00 p.m.


Respectfully submitted,


Nancy Evans
Secretary

Exhibit N

*Douglas R. Dollinger*
*Counselor at Law*
*Admitted to Both*
*State & Federal Practice*

96 *Broadway*
*City of Newburgh*
*Newburgh, New York 12550*
www.ddollingerlaw.com

TELEPHONE
(845) 562-9601

(888) CIVLAW

FAX
(845) 562-9602

CATHY BRENNAN
ADMINISTRATIVE ASSISTANT

June 26, 2006

Via Facsimile: (845) 569-0096
City of Newburgh
123 Grand Street
Newburgh, New York 12550
Att: William Cummings

Re:　96 Broadway

Dear Mr. Cummings:

In a follow-up to our telephone conservation of earlier today, and the scheduled meeting with my office, Mr. Bruce Twillliger, Mr. Michael J. Lamoreaux, P.E., while the meeting was originally slated to include the project's architect Eric Osborn, it appears that Mr. Osborn is away until June 30, 2006. I will coordinate a meeting for him to attend upon his return. In the interim, I will attend the meeting scheduled for June 27, 2006, so as to advise Mr. Osborn of the City's needs and attempt to reduce the possibility of any further delay.

In addition, I will be away in California on July 11, 2006. I will have my representative Mr. Brian Maximo Blake appear on behalf of the project with the Agriculture Review Committee ("ARC") and attempt to answer all there questions.

Additional information will be provided to the ARC for there convenience and in advance of the July 11, 2006 meeting in an effort to have everything they need at hand.

Thank you.

Very truly yours,

Douglas R. Dollinger, Esq.

DRD/cb

# CITY OF NEWBURGH
# ARCHITECTURAL REVIEW COMMISSION

**Mary Crabb, Chairperson**    **Nancy Evans, Secretary**
123 Grand Street, Newburgh, N.Y. 12550 (845) 569-7400 Fax 569-0096

---

**ARCHITECTURAL REVIEW COMMISSION** meeting of **July 11, 2006.**

The regular meeting of the City of Newburgh **Architectural Review Commission** was held on **Tuesday, July 11, 2006** at 7:30 p.m. in the Activity Center at 401 Washington Street, Newburgh, New York.

**Members Present:**  **Mary Crabb, Chairperson**
       **Keith Nelto**
       **Peter King**
       **Barbara Lonczak**
       **Don Herron**
       **Charles Passarotti**

**Members Absent:**  **Vincent Trunzo**

**Also present:**   **Michelle Kelson, Asst. Corporation Counsel**

The meeting was called to order at 7:30 p.m. after a quorum was confirmed.

### OLD BUSINESS

**AR 2006-38**   **149 Broadway**
       To install two metal signs (front and side view) – yellow.
       Dimensions: front – 8'-7" W X 34" H flat panel sign, side – 8'-11" X 34" H flat panel sign.
       **Applicant: Gerry Sanchez**

The Chairperson of the Board then opened the Public Hearing by reading the text of the notice.

Victor Haig appeared before the Board.

Mr. Haig explained that the signs were for the Affinity Health Plan. The logo will be red, the lettering will be black and the background will be golden rod. The metal aluminum frame will be flat and flush with the fascia.

There were no people to speak for or against this application.

The public hearing was completed on July 11, 2006.

A motion to approve the application was made by Mr. King and

seconded by Mr. Neito.

The motion was passed with a vote of 6-0.

| AR 2006-39 | 96 Broadway |
|---|---|
| | For addition, alterations and repairs to doors, roof, windows, steps, clock, finials, columns, and decorative cornices. Paint colors to be beige and white. |
| | Applicant: 96 Broadway LLC |

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Brian Maximo Blake appeared before the board.

Mr. Blake explained to the board that the building is a long term abandoned building, mixed use with commercial on the first and second floor and residential on the third floor.

Mr. King – Was there evidence that the structure at some phase was the second empire?

Mr. Blake – No. I believe it was actually not the second empire but the first. I believe it was done to match the style of George Washington time frame.

Mr. King – I think that may be one area where the process has been misunderstood. We are not really looking for a new style. The building has its own style. It's just a nice straight forward vernacular. Possibly revival or some federal style in it. A little bit of this.

Mr. Blake – Yes. That's exactly it. It's a hodge pog of various things.

Mr. King – If you look at the window frames on your proposal nothing like them exists on the structure. It is a flat structure there is really very few elevations you have the central bay and that's about it. You are changing the entire thing and I see no reason for it. Obviously there's a reason for it. Obviously there's a real problem with the fourth floor.

Mr. Blake – Is there a requirement to maintain it as it is even though it was abandoned?

Mr. King – What's going on is of great significance in terms of the National Register. I'm not speaking for the National Register but as someone who has worked within the National Register I would say this structure in its proposed plan would no longer be a contributing element of the National Historic District.

Mr. Blake – What was historic about it? How did it contribute previously? It was a ruined building. I don't understand.

Mr. King – It was a what?

Ms. Crabb – How was it ruined except for neglect?

Mr. King – In no way was it ruined. I mean I have seen great numbers of buildings in far worse condition that have been historic.

Mr. Blake – The brick work was completely gone. Actually is was about to collapse. That's why it was taken off.

Mr. King – It's not evident to me, I mean when I was there.

Mr. Blake – That's the only reason the brick work was removed. It wasn't safe.

Mr. King – Did you have a structure expert look at it?

Mr. Blake – No. The object was to fix it.

Ms. Crabb – But your changing the look of the building.

Mr. King – Have you read the Secretary's Standards on preservation?

Mr. Blake – Yes I have.

Mr. King – Then you should be able to see

Mr. Blake – I don't read it the same way you do.

Mr. King – Well I don't know how else you could read it. Which level are you applying for?

Mr. Blake – I am not that familiar with it. I have read it.

Mr. King – Are you restoring it?

Mr. Blake – Restoring to which period?

Mr. King – I am asking you sir.

Mr. Blake – We are bringing the building back on line.

Mr. King – I don't believe those terms are in the Secretary's Standards.

Mr. Blake – It is difficult to restore it since it has three buildings that were put together at different times in history. Which period should we be restoring.

Mr. King – That is your choice but this is not part of that period. Here is a period, that would have been a fine period. This is another period, this never existed. A period, your choice. We might not agree with you. We might say the period of significance was in the 1890's or whatever else. We take a look at the National Register.

Mr. Blake – That is the position of the board to try and restore that building

to its 1850'a condition? Because I don't get with the guidelines as to what your trying to have us achieve. In 1850 it might have been a two story building.

Mr. Kelson – No. According to the National Register 96 Broadway is listed in conjunction with three other buildings of similar time and structure. Circa 1850, three stories, three bay brick, commercial residential building with brackets, stone lintels and then there is an early 20th century store front and it was listed in fair condition in 1985 at the time that the historic district was approved and listed on the National Register. All three buildings were on the same block.

Mr. Neito – My simple understanding is that if there was a safety issue I would think that the common sense thing to do would be to secure the building as it was and wait to proceed on work until all the proper channels had been taken.

Ms. Kelson – My understanding is that there are ways to secure the structure so that there isn't any danger to harm and then applications can be made at the next regular meeting of the board to go through what would in fact be exterior restoration, repair, alterations.

There were no people to speak for this application.

When the Chairperson asked if there was anyone present that would like to speak against this appeal the following individuals spoke:

Michael Curry, 8 Grand Street, Newburgh New York
Mr. Curry explained the FOIL procedure. Did the applicant know he needed to come to the ARC? 9-2005 general notes on plans say ARC approval is needed. There was a not in file that the representative of 96 Broadway LLC was concerned about coming to this board. Roof repair only.

Michael Gabor, 297 Grand Street, Newburgh New York
Procedural problem. Need property file. Mr. Cummings should be here to answer questions.

Marietta Curry, 8 Grand Street, Newburgh New York
The first thing the building department does when you go to them to do anything to your building is ask what your address is and whether you are in the Historic District. Hard to believe they did not know.

Ms. Crabb – Counselor, where do we stand without having the file or Mr. Cummings here or having an engineer?

Ms. Kelson – If you feel that you have questions and you need information then you should get that information.

Ms. Crabb – I am going to recommend that we keep the public hearing open and maybe take a look at the file and have the engineer and Mr. Cummings here to help us answer our questions.
A motion to table the application was made by Mr. King, and seconded

by Ms. Lonczak.

The motion was passed with a vote of 6-0.

## NEW BUSINESS

**AR 2006-45        198 South Street**

To convert an existing dwelling into a two (2) family
dwelling. Needs recommendation to go before the Zoning
Board of Appeals.
**Applicant: John Lease**

The Chairman of the Board then opened the Public Hearing by reading
the text of the notice.

Joseph Sandridge from Coppola Associates appeared before the Board.

Mr. Sandridge explained the project to the board. The applicant is Joe
Delafiora. They are here tonight to request a recommendation to the
Zoning Board to convert the building into a two family. If approved the
first floor will be a one bedroom apartment, the second and third floor will
be a three bedroom apartment. The sale of the building is contingent on
approval.

Ms. Lonczak - The hesitancy is due to it being a crowded area already and
not wanted to make it more crowded by bringing in more apartments. On
the other hand if we don't approve this there will be another empty
building sitting there for however many years.

Mr. Neito – I think you bring up a good point and before we make our
recommendation we should keep in mind the specifics of that particular
neighborhood. Do we want another building to sit unoccupied?

Mr. Passarotti believes it was a multi-family originally.

A motion was made to recommend to the Zoning Board of Appeals that
the proposed change in use will have no negative impact on the Historic
District.

The motion was made by Ms. Lonczak and seconded by Mr. Neito.

The motion was denied with a vote of 2-4.

## PUBLIC HEARINGS

**AR 2006-40        165 Grand Street**

To install a fence to enclose property. Pressure treated
posts, cedar tone dog pickets on main body of fence.
Driveway gate – pressure treated posts, cedar pickets with
strap hinges.

**Applicant: Tom Williams**

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Tom Williams appeared before the Board.

Mr. Williams explained his project to the board. The house was a six family and Mr. Williams restored it to a one family. He is living there now with his family. There has been police activity and he would like to install a six foot height fence to enclose the backyard, side yard and driveway. The back fence will be cedar tone the gate will be true cedar.

When the Chairperson asked if there was anyone present that would like to speak in favor of this appeal the following individual spoke:

Michael Gabor, 297 Grand Street, Newburgh, New York

Mr. Gabor feels Mr. Williams has done a wonderful job on his home.

There were no people to speak against this application.

The public hearing was completed on July 11, 2006.

A motion to approve the application was made by Mr. King and seconded by Mr. Neito.

The motion was passed with a vote of 6-0.

| AR 2006-41 | **70 Johnes Street** |
|---|---|
| | To repair/repoint all masonry; to repair or replace inkind all cornices, soffits and trim; to install a new bitumen roof; to repair or replace sills with limestone sills to match; to install new aluminum baked enamel windows to match existing; all new brick panels to be installed with relocated brick. **Applicant: The Foundry Development Co., Inc.** |

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Joseph Sandridge appeared before the Board.

Mr. Sandridge explained the project to the board. The property is located on Edwards Street. The Zoning has already been approved for this. 60 unit condos, complete renovation, windows will be replaced with enamel baked aluminum to match the rest of the building. The AC units will be concealed in the courtyard. There will be one and two bedroom units and also loft units. The exterior is in good shape, the inside is in not so good shape. Garages will be on the lower level. 21 parking spaces.

When the Chairperson asked if there was anyone present that would like to speak in favor of this appeal the following individual spoke:

Ida Leung, 161 Johnston Street, Newburgh, New York

Ms. Leung wanted to know if any of the units face the water?  The answer is yes.

There were no people to speak against this application.

The public hearing was completed on July 11, 2006.

A motion to approve the application was made by Mr. King and seconded by Mr. Neito.

The motion was passed with a vote of 6-0.

**AR 2006-42**    **182 Grand Street**
To clean, repair and repoint masonry; to repair cornice and bracket with material in kind; front façade windows to be aluminum clad wood – white in color; existing porch to be repaired as required with wood painted gray.  Paint colors to be used: For cornice – BM Edgecomb Gray HC-173, cornice bracket – BM Knoxville Gray HC-160, accent trim to be BM Yarmouth Blue HC-150.
**Applicant: Agnes Bermudez**

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Joseph Sandridge from Coppola Associates  and Agnes Bermudez appeared before the Board.

Mr. Sandridge explained the project to the Board. This property has the main house and then a carriage house in the back. The Zoning recommendation involves the carriage house not the main house.  There is an apartment above the carriage house. The main house was originally a daycare center. They would like to make a color change from the application. They would like the entire house to be painted BM Lancaster Whitewash – HC-174. They are cleaning the property up already and it will be owner occupied. The house will be one family and the carriage house will have another family.

There were no people to speak for or against this application.

The public hearing was completed on July 11, 2006.

A motion to recommend to the Zoning Board of Appeals that the proposed change in use will have no negative impact on the Historic District was made by Ms. Lonczak and seconded by Mr. King.

The motion was passed with a vote of 6-0.

A motion to approve the application was made by Mr. Neito and seconded by Ms. Lonczak.

The motion was passed with a vote of 6-0.

As the applicants were getting up to leave Ms. Crabb asked them if they were doing something to the sidewalk. That should have come before us and you would have needed a public hearing. You can use the same application number but you will need to pay a public hearing fee. Not repairing in kind.

The applicant explained that there was a hazardous condition and the building department told them to fix it immediately.

Ms. Kelson – in the first instance did you hire a contractor to pave your driveway?

Mr. Bermudez – yes.

Ms. Kelson – And then the Building Inspector came back and said it wasn't being done properly.

Ms. Bermudez – Yes.

Ms. Kelson – So at the first instance your attempt to pave this driveway should have been subject to this boards approval before any work was started. That's what the board is saying and because the driveway work was not referenced in this public hearing letter the public was not given proper notice. That is why we cannot amend your application here tonight. Instead of filing a whole new application you can keep the same application number and just pay the public hearing portion of the application fee and then come back next month. The public hearing fee

# CITY OF NEWBURGH
## ARCHITECTURAL REVIEW COMMISSION
**Mary Crabb, Chairperson**       **Nancy Evans, Secretary**
123 Grand Street, Newburgh, N.Y. 12550    (845) 569-7400 Fax 569-0096

**ARCHITECTURAL REVIEW COMMISSION** meeting of **October 10, 2006.**

The regular meeting of the City of Newburgh **Architectural Review Commission** was held on **Tuesday, October 10, 2006** at 7:30 p.m. in the Activity Center at 401 Washington Street, Newburgh, New York.

**Members Present:**     **Mary Crabb, Chairperson**
                        **Peter King**
                        **Barbara Lonczak**
                        **Charles Passarotti**
                        **Brigidanne Flynn**

**Members Absent:**      **Keith Neito**
                        **Don Herron**

**Also present:**         **Michelle Kelson, Asst. Corporation Counsel**

The meeting was called to order at 7:30 p.m. after a quorum was confirmed.

### NEW BUSINESS

**AR 2006-58**        **124 Renwick Street**
                        To paint body of dwelling with BM Lafayette Green HC-135 and all trim with BM Philadelphia Cream HC-30.
                        **Applicant: Ismail Mohomad Al-Guhem**

The applicant did not appear before the Board. This matter is tabled for applicant's appearance.

**AR 2006-67**        **173 Broadway**
                        To paint the body of church with National Trust Historic colors – Oatlands Yellow and the trim with Lafonda Ortiz Gold.
                        **Applicant: Reverend Willie Mays**

The applicant did not appear before the Board. This matter is tabled for applicant's appearance.

**AR 2006-69**        **18-22 Johnes Street**
Needs recommendation to go before the Zoning Board of
Appeals for a change in use.
**Applicant: Alfred Favata**

The Chairman of the Board then opened the Public Hearing by reading
the text of the notice.

Pat Favata appeared before the Board.

Applicant needs a recommendation to Zoning Board of Appeals for a change in
use for the above property. Ms. Favata explained that the proposed use would
be for commercial sushi. They would assemble the product at this address and
then deliver to department and grocery stores for distribution. There would be no
cooking done on premises. They would only require a cooler, freezer and a rice
cooker. Only immediate family members are employed so there would not be
more that 10 employees. They only have one vehicle for delivery.

There were no people to speak for or against this application.

The public hearing was completed on October 10, 2006.

A motion to approve the application was made by Ms. Lonczak and
seconded by Mr. Passarotti.

The motion was passed with a vote of 5-0.

## PUBLIC HEARINGS

**AR 2006-65**        **6 Norton Street**
To install insulation and vinyl (cedar like) siding.
**Applicant: Maureen Mushlit**

The Chairman of the Board then opened the Public Hearing by reading
the text of the notice.

Maureen Mushlit appeared before the Board. Ms. Mushlit presented a
letter from her attorney.

Ms. Mushlit's originally had cedar shingles on her home. She was scraping
the wood to paint and the siding was breaking apart as she was scraping
due to rotten wood. Ms. Mushlit went to the building inspectors dept
earlier this year inquiring whether a building permit was required to side her
house. The building inspector told her she did not need a permit and
discarded her application. At the end of August she was issued a stop
work order. Meanwhile all of the vinyl siding had been purchased. It is
currently on site.

The Colonial Terrace Guidelines were adopted two years ago and
according to these guidelines vinyl siding is prohibited.

This is a semi attached home with someone living on the other side of her house.

Brigidanne Flynn asked Maureen if she had permits before she removed the siding on the front of the house.

Mr. King: Applicants counsel agrees that the design guidelines were in place and applicable and then argues that.

Mr. King quoted 300-27 and asked Ms. Mushlit if she was claiming a hardship. Mr. Mushlit replied – yes. She stated that she had $4,000 of product in her backyard that she cannot use. She purchased the largest reveal possible.

When the Chairperson asked if there was anyone present that would like to speak in favor of this appeal the following individual spoke:

Terry Flynn, 19 Farrell Street, Newburgh, New York
Betty Taylor, 8 Norton Street, Newburgh, New York
Lynn Rosa, 8 Bush Avenue, Newburgh, New York

Mr. Flynn presented a letter from his wife Linda Flynn. The letter stating that Ms. Mushlit is an asset to the community, that she has done a lot of work on her home to make it nice, has been written up in the Colonial Times for doing such a nice job on her home. She feels one can enhance their home with vinyl siding.

Ms. Taylor is the owner of the attached other side of the home. She feels terrible that the city waited until all of the siding was taken off the home before the stop work order was issued. She doesn't care is the vinyl siding is allowed. She just thinks the house needs to be protected.

Ms. Rosa, President of Colonial Terrace wants to go on the record as the president of the Association that the Association feels that even though she had the guidelines she did what she was told to do and the City should come to some sort of agreement that if she needs to put the correct siding on the building she shouldn't incur all the cost for that since she has already incurred the cost of the vinyl siding.

The public hearing was completed on October 10, 2006.

A motion to approve the application was made by Ms. Lonczak and seconded by Mr. Smith.

The motion was denied with a vote of 0-5.

**AR 2006-66**        **244-250 Broadway**
To replace all store fronts on 1st floor and to replace all windows on 2nd floor.
**Applicant: Benedetto Papaleo, Three Fratelli, Inc.**

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Benedetto Papaleo appeared before the Board.

Mr. Papaleo wants to return the façade of his building to what it originally was many years ago. They will remove the paint from the brick and re-point. Storefront will be Aluminum and glass using either slate or brick beneath the lower level windows; to replace all windows on the second floor with double paned wood one over one to be painted chutney. The center archway will stay in the same character as the archway on the second floor; all glass arches will have clear glass. All other existing structures are to remain the same. Outside lighting will be to light up the signs and will be made of high-pressure sodium with a metal halide in black or chutney. Approval was also given to widen the center door and lower it to be level with the sidewalk for handicap access as necessary to meet code. The door to the right will remain the same and the stairs will be made of granite. Your approval did not include the awning and you must come back to the Commission for a certificate of approval of the awning.

There were no people to speak for or against this application.

The public hearing was completed on October 10, 2006.

A motion to approve the application was made by Ms. Lonczak and seconded by Mr. Passarotti.

The motion was passed with a vote of 5-0.

**AR 2006-68**        **77 Leroy Place**
To rebuild porch with in the same footprint as existing porch and new steps with the same dimensions as existing ones and to build new brick piers to replace the damaged ones. Porch to be constructed with pressure treated material and to be covered with tongue and groove doug fur to be painted Sedona clay; to install railings on both sides of stairs. House to be painted Great Barrington Green HC-122.
**Applicant: Vincent Cassisi**

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Vincent Cassisi appeared before the Board.

4

Mr. Cassisi stated that approximately one year ago a car ran into his porch and knocked it down. He is ready to repair it and would like to make a few changes. He would like square wood support columns from floor to ceiling and brick piers from the floor to the ground with lattice work in between. The colors for the trim and rail will be Dunmore Cream, the house will be Great Barrington Green HC-122 and the deck floor will be Sedona Clay.

Mr. King: You are removing the paired columns and removing the corner triplicates and that really is a significant element of your architectural design. That goes back to the renaissance and that was what they were doing and I think in doing what you are proposing is basically breaking faith with the building it self. The length of the columns where they were actually build upon elevated piers was done more as an arcane concept of the enclosed walkway. What you have really done is taken a relatively elegant design and tremendously simplified it almost to the stage of a sears home. I think you had some nice detail that you lost. I recognize what your effort is but I think maybe you haven't recognized what you had.

Mr. Cassisi: I want to simplify it.

Mr. Passarotti: You are removing a significant amount of the charm of the building. It's a lot of work to remove all that brick and then build it back partial. Would you consider just rebuilding back that one pier and putting those columns back to match?

Applicant needs time to reconsider a new design.

A motion to table this application was made by Mr. King and seconded by Ms. Lonczak.

## OLD BUSINESS

**AR 2006-39**    **96 Broadway**
For addition, alterations and repairs to doors, roof, windows, steps, clock, finials, columns, and decorative cornices. Paint colors to be beige and white.
**Applicant: 96 Broadway LLC**

The Chairman of the Board then opened the Public Hearing by reading the text of the notice.

Eric Osborn appeared before the Board.

Mr. Osborn stated that the original cornice from the building was saved and will place back on building. He will advise the applicant to put tarp up.

Mr. King: I will flatly say that the original structure as an element of the Historic District is an understandable structure in Newburgh. It fills one of the critical corners left to us and this new structure is a foreign structure. It has no themes

5

within the City. It would rival City Hall in the grandiosity, which I think is inappropriate. The windows have been so totally re-worked it's become a catalog book of detail. From my personal prospective what the owner wants and what I'm willing to vote in favor of is certainly not this. What was is totally lost.

Ms. Crabb: I agree with Peter. The building, what's proposed and what it was is like two different buildings in two different eras.

Mr. King: I cannot speak for the state or for the National Register but I would say that this building would no longer be a contributing element of the National Register.

Mr. Passarotti: Is there a middle ground?

Mr. Osborn: What if I take away a lot of the gaudy details?

Mr. Passarotti: I think that would be the next move. I think we have seen all we want to see on these drawings and perhaps we can make a compromise.

Ms. Crabb: If he would take into consideration to try to have it look like it did before from the exterior except with the addition of the additional floor. But the windows have changed .....

Ms. Kelson: Here is the old front of the building. Could you match what was there in proportion?

Mr. Osborn: Sure.

Original roofline brought back
Take 3rd floor off
Original windows in the front

Mr. King: Move to table this application with the recommendation that the applicant consult with his professionals and refer to historic resources, possibly available from the City of Newburgh Historian Mary McTamaney, located at the Heritage Center, 123 Grand Street with the goal of providing a design that would not jeopardize the building's contributing status to the Historic District in the National Register of historic places.

A motion to table this application was made by Mr. King and seconded by Ms. Lonczak.

The motion was passed with a vote of 5-0.


**AR 2006-43**          **52 Beacon Street**
To install an iron wire fence with two gates along front and both sides of property.
**Applicant: Jose Guallpa**

The applicant did not appear before the Board. This matter is tabled for

applicant's appearance.

**AR 2006-13**          **64-68 Clinton Street**
                       For the construction of a new home.
                       **Applicant: Charles Brown and Carolyn Michell**

The applicant did not appear before the Board. This matter is tabled for
applicant's appearance.


Meeting adjourned at 10:00 p.m.


Respectfully submitted,


Nancy Evans
Secretary

Exhibit Q

# CITY OF NEWBURGH
# ARCHITECTURAL REVIEW COMMISSION

**Mary Crabb, Chairperson**                    **Nancy Evans, Secretary**
123 Grand Street, Newburgh, N.Y. 12550    (845) 569-7400 Fax 569-0096

October 27, 2006

96 Broadway LLC
96 Broadway
Newburgh, New York 12550

Re: AR 2006-39/ 96 Broadway

Dear Mr. Dollinger:

Please be advised that at their regular meeting held on October 10, 2006, the Architectural Review Commission voted 5-0 to table your application with the recommendation that the applicant consult with his professionals and refer to historic resources, possibly available from the City Of Newburgh Historian Mary McTamaney, located at the Heritage Center, 123 Grand Street with the goal of providing a design that would not jeopardize the building's contributing status to the Historic District in the National Register of historic places.

Please be further advised that any work you intend to perform may require a building permit. Kindly contact the Building Inspector's Office prior to commencing any work at 845-569-7400.

Sincerely,

*Mary Crabb / ne*

Mary Crabb
Chairperson

MC/ne

cc:    Jean Ann McGrane, City Manager
       Nicholas Valentine, Mayor
       Councilwoman Regina Angelo
       Councilwoman Mary Ann Dickinson
       Councilman George Bowles
       Councilman Salvatore Cracolici
       Steve Hunter, Acting Building Inspector
       Michelle Kelson, Assistant Corporation Counsel

Lorene Vitek, City Clerk

**Exhibit R**



NEWBURGH PRESERVATION ASSOCIATION

P. O. BOX 206

NEWBURGH, NEW YORK 12551

www.preservenewburgh.org

*NPA rebuilds, preserves, and promotes the architectural heritage and historic viewsheds of Newburgh.*

February 23, 2007

Mr. Steven Hunter, Building Inspector
City of Newburgh
123 Grand St.
Newburgh, NY 12550

Dear Mr. Hunter:

Newburgh Preservation Association is very concerned that the building at 96 Broadway has had no effort made to protect it in its partially rebuilt state. We understand there is litigation regarding the outcome of that building, however, this building stands at a major intersection in the Broadway Corridor, visible to all daily commerce in the city. It gives a message to citizens and visitors alike, that the city doesn't care for itself. The building's condition is embarrassing, if not dangerous.

This building is valuable and deserves reclamation. We would urge the city to cover and secure the building and bill the owner or put a lien on the property for the expense. No amount of planning for the future Broadway Corridor will overcome the sight of the neglect of this building in the present.

Sincerely,

Nancy Billman
President

cc: City Manager, Mayor, Members of Council, City Attorney, ARC

Exhibit S

**MAXIMUM SOLUTIONS, INC.**
P.O. Box 47
Bellvale, New York 10912
845-597-4377 CELL 845-987-2211 FAX
e-mail = recycle@warwick.net

April 10, 2007

Jean Ann McGrane, City Manager
City of Newburgh
83 Broadway
Newburgh, New York 12550
845-569-7301
845-569-7370 FAX

Re: 96 Broadway, Newburgh

Dear Ms. McGrane:

Thank you for organizing yesterday's meeting. I am sure that it will accelerate the process of get 96 Broadway back into use after many years of neglect. The following is my take on yesterday's meeting. Please let me know if any of my understandings are incorrect.

Sincerely,

Maximo Blake

cc. 96 Broadway, LLC

April 10, 2007 - Pat
Maximum Solutions to City of Newburgh - McGrane

April 9, 2007 Meeting
96 Broadway, Newburgh –
5:00 P.M. through 6:30 P.M. at the Newburgh Code Compliance Meeting
Room, Grand Street, Newburgh, NY

Attendees:

From the City of Newburgh:
- Jean Ann McGrane, City Manager 845-569-7301
- Michelle Kelson , Corporation Council 845-569-7335
- Mary Ann Dickinson, City Councilwoman 914-213-5380
- Steve Hunter, Code Compliance Supervisor  845-569-7480
- Barbara Lonczac, ARC 845-562-3791
- Chris Hansen, ARC 845-430-8380
- Peter Smith, (Ex ARC) 845-565-8113

From 96 Broadway, LLC
- Maximo Blake, MAXIMUM SOLUTIONS, Inc. – 96 Broadway, LLC
  Owners Representative 845-597-4377

April 9, 2007 Meeting Results:
- Permission to immediately weather seal the building, including framing, plywood and tarping, will be granted by the Building Department as soon as a plan to do so is submitted by the Owner. *OK*
- The design of the first floor façade is unrestricted by any historical regulation but only by the standard building code. The City is aware that the Owner is contemplating the use of the first floor for either office or commercial space.

April 10. 2007 - F
Maximum Solutions to City of Newburgh - McGrane

- The City requires the following architectural elements be maintained/restored to their pre-demolition appearance as they find these elements examples of Newburgh's historical style:
  - The front and side façades inclusive of materials, colors and window pattern between the "band" at the top of the first floor and the "band" at the top of the third floor. (These clearly demarcated bands are the result of changes in the type and pattern of building materials used.) This requirement does not include the façade of the rear, currently two story, addition. The City considers this portion of the building a separate architectural element and wants to see it designed so that it appears as a separate element and not as a continuation of the larger portion of the building.
  - The tower of bay windows facing Liberty Street.
  - The front and side cornices, or facsimiles, at their current, or new, location dependant on the roof design to be used. In addition the Liberty Street side cornice can be realigned to match the Owner's chosen roof pattern (pitched or flat).
- The design of the fourth floor façade is also unrestricted by any historical regulation. The City offered three suggestions for a fourth floor design that would be acceptable:
  - A story exactly the same as third floor, including moving the cornice up to the fourth floor roof line. (See attached sketch)
  - A mansard roofed loft similar to one included in the September 2006 Elevation by Osborne.
  - The addition of "eyebrow" windows in or just below the front cornice.
- The City made clear that they were not in favor of any copula with a clock
- The City hoped that the 96 Broadway, LLC would be able to make a presentation to the next scheduled ARC meeting May 8[th.] 2007, even if the presentation is incomplete.





# The City of Newburgh
## Office of the Corporation Counsel

City Hall – 83 Broadway
Newburgh, New York 12550
Tel. (845) 569-7335
Fax. (845) 569-7338

Michelle Kelson
Assistant Corporation Counsel

Geoffrey E. Chanin
Corporation Counsel

April 19, 2007

Maximo Blake
Maximum Solutions, Inc.
P.O. Box 47
Bellvale, New York 10912

Re:    96 Broadway, Newburgh, New York

Dear Mr. Blake:

Your letter, dated April 10, 2007, to City Manager Jean McGrane, regarding our April 9th Architectural Review Commission (ARC) work session concerning the rehabilitation of the building located at 96 Broadway has been referred to the undersigned.

Generally, we find your memorandum fairly summarizes our understanding of our April 9th meeting with some minor clarification. In this regard, it was our understanding that you and your clients may have more flexibility in the design of the first floor façade and the fourth floor but that the final designs would be subject to approval by the ARC.

Please be advised that the ARC will expect an appearance at its next regular meeting scheduled for Tuesday, May 8, 2007 at 7:30 p.m. for a presentation including your progress on the rehabilitation and your plan and timetable for completion of the project

Kindly contact the undersigned if have additional questions, comments or concerns.

Very truly yours,

MICHELLE KELSON
Assistant Corporation Counsel

MK/av