## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEWBURGH,                    )   HON. STEPHEN ROBINSON
                                         )
                    Plaintiff(s),        )
        vs.                              )   Case No.: 07CV 6419(SCR) (MLF)
                                         )
                                         )
                                         )
                                         )
96 BROADWAY, LLC and                     )
DOUGLAS R. DOLLINGER,                    )
                                         )
                    Defendant(s).        )
                                         )

---

## MEMORANDUM OF LAW FOR DISMISSAL OF CITY's COMPLAINT PURSUANT FRCP 12(b)(6)

---

*Respectfully submitted,*


DOUGLAS R. DOLLINGER, Pro-se
Attorney for Defendant 96 Broadway
P.O. Box 1111
113 Liberty Street
City of Newburgh
Newburgh, New York 12550
Tele.  (845) 562-9601
Fasc. (845) 562-9602

## I
## PRELIMINARY STATEMENT

The instant Motion premises dismissal of the CITY's State Court Complaint on their failure to state a cause of action against the Defendant DOUGLAS R. DOLLINGER (hereafter "DOLLINGER") in his individual or personal capacity.  **[See Exhibit "A" CITY Comp.]**

## II
## FACTS

The relevant factual alleges of the Complaint are that DOLLINGER is an owner of 96 BROADWAY, LLC (hereafter "96 BROADWAY" the "COMPANY") and an attorney. **[CITY Comp. ¶7.]**    The CITY acknowledges that 96 BROADWAY is a limited liability company. **[CITY Comp. ¶2.]**   The CITY claims that the application for a building permit issued on behalf of the COMPANY was signed by DOLLINGER. **[CITY Comp. ¶10 and see, Exhibit "B".]** The CITY's Complaint does not allege that the application was for DOLLINGER's personal benefit, only that the application was incomplete by omission of information on page 6. **[CITY Comp. ¶14.]**

Without explanation the CITY claims to have somehow relied on the incomplete application when they issued a building permit to 96 BROADWAY. **[CITY Comp.]**

DOLLINGER denies this fact and claims that the claimed failure to include-complete page 6 of the application is untrue and that it, like several of the other explained documents presented by the CITY, is inaccurate or far worse.[1]

## III
## ARGUMENT

Nowhere in the CITY's Complaint is there an allegation that DOLLINGER's conduct has pierced the corporate veil such that he is, or would be, personally liable for the restoration of the building located at 96 Broadway, City of Newburgh, Newburgh, New York.

The only allegations even remotely casting a suggestion or wrongdoing by him personally is the claim that he executed the application for the building permit as an owner and that he failed to complete the application, at page 6, wherein the CITY relied on this fact to their detriment.   The claim is strained at best, and more importantly is not the law in New York State.

Under New York law individual shareholder-members of a limited liability company may not be held liable for the acts of the company unless their individual and wrongful conduct was for their personal benefit.

To successfully pierce the corporate veil, Plaintiff must show that: " '(1) the owners exercised complete domination of the corporation in respect to the

---

[1]   All facts as contained herein are incorporated hereat and repeated as those having been set forth in DOLLINGER's Affidavit dated October 19, 2007 and also submitted in opposition to the Plaintiff's Motion for Remand.

transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the Plaintiff which resulted in Plaintiff's injury'." See, <u>Old Republic Nat. Title Ins. Co. v. Moskowitz</u>, 297 A.D.2d 724, 725 (2nd Dept. 2002), quoting, <u>Matter of Morris v New York State of Dept. of Taxation & Fin.</u>, 82 N.Y.2d 135, 141 (1993).

Additionally, the corporate veil can also be pierced when "there has been, inter alia, a failure to adhere to corporate formalities, inadequate capitalization, use of corporate funds for personal purpose, overlap in ownership and directorship, or common use of office space and equipment". See, <u>Forum Ins. Co. v. Texarkoma Transp. Co.</u>, 229 A.D.2d 341 (1st Dept. 1996).

Under either standard the Complaint in this case falls far short from satisfying the elements necessary to pierce the corporate veil.   Clearly there is no claim of or for fraud. What's more, there are no underlying allegations that DOLLINGER, even if the missing information were intentionally omitted from the application, which would support that the information was omitted for a wrongful purpose.

Likewise, there is no issue of monetary wrongdoing for personal gain. Moreover, there are no allegations that the CITY relied on the omitted information to their detriment.

In sum, the Complaint lack sufficient allegations to provide for jurisdiction over DOLLINGER and as such the Complaint against him should be dismissed.

## <u>CONCLUSION</u>

For all of the foregoing reason the CITY's Complaint against DOLLINGER should be dismissed.

**RESPECTFULLY SUBMITTED**, this 19th day of October 2007.

By: _____

DOUGLAS R. DOLLINGER, (DD 5922)

**EXHIBIT "A"**

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
=================================X

THE CITY OF NEWBURGH,

             Plaintiff,

    -against-

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

             Defendants,
=================================X

**SUMMONS**

Index Number:
Assigned Judge:

TO THE ABOVE-NAMED DEFENDANTS:

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorneys, TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC, within 20 days after the service of this summons, exclusive of the day of service or within 30 days after the service is complete if this summons is not personally served upon you within the State of New York; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated:   Newburgh, New York
         June 21, 2007

                             Yours, etc.,
                             TARSHIS, CATANIA, LIBERTH,
                             MAHON & MILIGRAM, PLLC

                By: _____
                           Steven I. Milligram, Esq.
                           Attorneys for Plaintiff
                           One Corwin Court
                           P.O. Box 1479
                           Newburgh, New York 12550
                           Tel. No. (845) 565-1100

TO:

Douglas R. Dollinger, Esq.
96 Broadway, LLC
96 Broadway
Newburgh, New York 12550

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
===============================X
THE CITY OF NEWBURGH,

                Plaintiff,

    -against-

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

              Defendants,
===============================X

VERIFIED COMPLAINT

Index Number:
Assigned Judge:

Plaintiff, THE CITY OF NEWBURGH, by its attorneys, TARSHIS, CATANIA,

LIBERTH, MAHON & MILLIGRAM, PLLC, complaining of the above captioned defendant

respectfully alleges upon information and belief as follows:

### Identity of the Parties

1. Plaintiff, THE CITY OF NEWBURGH (CITY) is a municipal corporation

organized and existing under the laws of the State of New York located at 83 Broadway, City of

Newburgh, County of Orange, State of New York.

2. Defendant 96 BROADWAY, LLC is a domestic limited liability company

organized and existing under the laws of the State of New York with a principle place of

business at 96 Broadway, City of Newburgh, County of Orange, State of New York and an

address registered with the New York State Secretary of State for service of process at:

Presidential Services, Inc. 23404 W Lyons Ave., #223, Santa Clarita, CA, 91321-2668.

3. Defendant DOUGLAS R. DOLLINGER ("DOLLINGER") is a natural person

and, upon information and belief, an attorney admitted to practice law by the State of New York.

DOLLINGER'S record address with the New York State Office of Court Administration in 96 Broadway, City of Newburgh, County of Orange, State of New York. DOLLINGER'S attorney registration number is 2354926 and the registration appears to be current, the next biennial registration period being due in May of 2008.

## Venue

4.     Plaintiff designates Orange County as the place of trial. The basis of the venue is based on the location of the real property in Orange County.

## Relief Requested

5.     The relief requested in this action is emergent in nature and therefore has been commenced by filing this action and has come before this Court by Order to Show Cause.

6.     The CITY seeks by way of this proceeding, it be ordered and adjudged that:

1)     Defendants immediately protect and secure the subject premises located at 96 Broadway, City of Newburgh, State of New York by weather sealing the premises and securing all windows, doors and other openings in the premises against the elements and weather in a good and workman like manner; and

2)     Defendants, in accord with Article V, §300-28(C)(2) of the City of Newburgh Code, restore the condition and appearance of the subject premises and its site to *status quo ante*; and

3)     Defendants strictly comply with Article V of the City of Newburgh Code; and

4)     Pending the issuance of final relief herein, defendants be restrained from performing any further work of any kind on the subject premises aside from

protecting and securing the premises in conformity with the stop work order

issued by plaintiff; and

     5)    Plaintiff have such other and further relief as to this Court may seem just,

proper, and equitable including reasonable attorney fees, disbursements and court costs

incurred in this action.

### General Averments Common to All Counts

7. Upon information and belief, defendant DOLLINGER claims an ownership interest in

the premises located at 96 Broadway, City of Newburgh, County of Orange, State of New York

(Section 30, Block 5, Lot 22)(the "Premises").

8. Upon information and belief, defendant 96 BROADWAY, LLC claims an

ownership interest in the Premises.

9. Upon information and belief, DOLLINGER is a member of or claims to have an

ownership interest in 96 BROADWAY, LLC, and/or claims to be the attorney for same.

10.    On or about January 17th, 2006, DOLLINGER completed, signed and filed with

the Building Inspector's Office for the City of Newburgh an application for a Building Permit

regarding the Premises (the "Application"). A copy of the application is annexed as Exhibit "B".

11.    At page 2 of the Application, the work to be performed is generally described as

'the alteration of an existing use hybrid commercial and residential structure by adding an

additional 1,000 square feet of space.' Exhibit "B".

12.    In response to item 7 of the application, the applicant denies that the proposed

work violates any zoning law or ordinance. Upon information and belief this was an incorrect

statement since Article V of the Code of the City of Newburgh requires Architectural Review

Commission oversight and approval, including the issuance of a Certificate of Appropriateness for the proposed exterior renovations. *See*, Exhibit "A"; Exhibit "B".

13.    At page 6 of the application there is a request that the applicant state whether certain pre-conditions to the issuance of the permit are required and if so whether that applicant has complied with those pre-conditions. Exhibit "B" at page 6.

14.    There is, among other things, an entry in the list of pre-conditions for "Historic Review". That, and all other entries, has been left blank by the applicant. By omission, the applicant has represented there are no pre-conditions, including Historical Review, for the issuance of the Building Permit.

15.    This is an incorrect statement of fact and law by the applicant since Article V of the Code of the City of Newburgh requires Architectural Review Commission oversight, including the issuance of a Certificate of Appropriateness for the proposed exterior renovations.

16.    At page 7 of the Application, there is space provided for signature of the Applicant under the following statement in relevant part:

> Application is hereby made to the Building Inspector of the City of Newburgh for the issuance of a Building Permit pursuant to the New York State Uniform Fire Prevention and Building Construction Code for the construction of buildings, additions or alterations . . . the applicant agrees to comply with all applicable laws, ordinances and regulations. Applicant further agrees that the City of Newburgh Building Inspector or his designate will be permitted to perform periodic inspections of this property to insure that work is being performed according to these codes, ordinances and regulations. It is understood by the applicant that if work is not performed according to codes, ordinances, or regulations, any permit that has been issued by the Building Inspector may be withdrawn and an order to stop work issued.

*See*, Exhibit "B" at page 7.

17.    Upon information and belief DOLLINGER signed the application where provided under the above statement as the applicant and owner and on behalf of 96 BROADWAY, LLC.

18.    There is a section to be filled in if the applicant is other than the Owner. This section was left blank by the applicant. Exhibit "B" at page 7.

19.    On or about January 25th, 2006 then City of Newburgh Building Inspector William Cummings wrote to the defendants acknowledging that the Application and certain plans had been received and reviewed by Architect Wheldon A. Abt. A copy of that letter is annexed to the Complaint as Exhibit "C". Ostensibly, Mr. Abt was acting as an independent contractor designated by the Building Inspector to, *inter alia*, review certain building permit applications. The letter specifically requested a preliminary meeting to discuss the Application.

20.    Mr. Abt's comments were enclosed with the said letter to the defendants. Among other things, Mr. Abt specifically identified that the Premises may be a Historic Building subject to Historical review. *See*, Exhibit "C". Mr. Abt further noted that the project documents did not "sufficiently address compliance with the code". Id. A preliminary meeting was scheduled for February 14th, 2006.

21.    On or about February 3rd, 2006 the defendants' architect, Eric Knute Osborn, wrote to the Building Inspector seeking permission to being roof repair due to a leaking roof. Accordingly, the Building Inspector issued a Building Permit for roof repair only on February 6th, 2006. A copy of the Knute-Osborn letters and the roof only Building Permit ("Roof Permit") are annexed as Exhibit "D".

22.    The aforementioned preliminary meeting was in fact held on or about February 14th, 2006. Minutes from that meeting are annexed hereto as Exhibit "E".

23.    Significantly, the minutes reflect that concerns were expressed that the City of Newburgh Historic requirements would prevent the proposed exterior renovations and re-construction. *See*, Exhibit "E". It was specifically noted that there was a "need to go to the Historic Review Board". *See*, Exhibit "E".

24.    Therefore the defendants were on actual notice as early as February 14th, 2006 that the proposed exterior renovations and re-construction to the Premises required oversight by the Historic Review Board.

25.    However the defendants did not take the proposed exterior renovations on the Premises to the ARC and apparently took no steps to ensure compliance with Article V of the City of Newburgh Code as they agreed to do in the building permit application.

26.    Rather, the defendants submitted "revised plans" to the Building Inspector dated February 27th, 2006. In response, Architect Abt issued a review dated March 22nd, 2006 and a Building Permit dated March 24th, 2006 was issued for the "revised work shown on the plans and subject to addressing comments on the March 22nd review by Abt. A copy of the said permit with Abt's comments attached is annexed as Exhibit "F".

27.    It should be noted that there is a handwritten notation on the March 24th, 2006 Permit which states: "No exterior changes until ARC approval as per Bill Cummings 5-8-06."

28.    On or about May 2nd, 2006 a stop work order was issued by the City of Newburgh Building Inspector on that grounds that, *inter alia*, the work being done to the exterior was being performed in violation of section 300-26A of the City Code since ARC approval for the exterior changes had not been obtained and for violation of section 122.12 of the City Code since the work being performed ostensibly exceeded the scope of the March 24th, 2006 building permit. Copies of the said stop work orders are annexed hereto as Exhibit "G".

29.     On or about May 8th, 2006 an order lifting the May 2nd order to vacate was issued by the Building Inspector on the basis that "an agreement had been reached with Cummings, Crab, Dollinger and Terwilliger." This document is annexed hereto as Exhibit "H".

30.     Upon information and belief the gravamen of the agreement was that the building would be secured and protected, that interior work could continue, but that no further exterior work would take place on the premises until a Certificate of Appropriateness was issued by the City of Newburgh ARC approving the proposed alterations or some modification of same. *See*, Exhibit "F". Indeed, a building permit dated May 13th, 2006 was issued for the purpose of "re-construction and scaffolding" only. *See*, Exhibit "I".

31.     Nevertheless, the defendants continued with exterior work on the premises in contravention of the Building Inspector's directions. Therefore, a stop work order was issued by the Building Inspector on or about June 2nd, 2006. A copy of that order is annexed as Exhibit "J".

32.     It is noted that on or about June 6th, 2006 a meeting was held between Bill Cummings, City Engineer Mike Lamoreaux, Code Officer Terwilliger, and DOLLINGER to discuss what had to be done in order to have the stop work order lifted. *See*, June 6th, 2006 Inspection Record annexed as Exhibit "K".

33.     Upon information and belief, DOLLINGER was again instructed of the requirement that the proposed exterior renovations of the Premises be reviewed by the ARC and that a Certificate of Appropriateness be obtained before the exterior work could continue.

34.     Indeed, on or about June 2nd, 2006 an application was submitted to the ARC by DOLLINGER vis-à-vis the Premises. A copy of the Application is annexed as Exhibit "L".

35.    The application indicates that the work to be done generally includes "addition, alterations, repair, doors, roof, windows, steps, clock, finials, columns, decorative cornices, beige and white paint." *See*, Exhibit "L".

36.    DOLLINGER signed the application as the owner thereby acknowledging his understanding and agreement that no work would commence on the Premises until written approval has been given by the ARC and the Building Inspector. *See*, Exhibit "L".

37.    On June 13th, 2006 a meeting of the City of Newburgh Architectural Review Commission was conducted. The application for the Premises was put on the ARC agenda for a public hearing. *See*, Exhibit "M" (June 13th, 2006 ARC Meeting Minutes).

38.    DOLLINGER appeared on behalf of 96 BROADWAY, LLC as the applicant.

39.    By review of the Minutes it is apparent that DOLLINGER approached this process with a hostile, oppositional and a generally obstreperous attitude.

40.    Indeed, the ARC application was ultimately tabled at this meeting because of DOLLINGER'S behavior and inclination to argue with the ARC members.

41.    At that same meeting, Inspector Bill Cummings gave a brief overview of the 96 Broadway project and noted specifically that the owner's representative was advised that the project had to come before the ARC during the Building Permit application process. *See*, Exhibit "M" at page 12. However, Mr. Cummings admitted that the permit was issued without ARC approval because he "missed that notice". Mr. Cummings noted that when it was determined that no ARC permit had issued a stop work order was issued and DOLLINGER agreed to cease exterior work and come to the ARC for approvals. *See*, Id.

42.    DOLLINGER denied knowing that ARC approval was a pre-condition to the commencement of exterior renovations stating in sum and substance "If I knew I had to come before the ARC do you think I would have taken a half-million dollars out of my own pocket and let it sit there?" *See*, Exhibit "M" at page 15.

43.    DOLLINGER thereafter submitted a letter dated June 26th, 2006 (Exhibit "N") noting that his representative Brian Maximo Blake would appear at the next ARC meeting on July 11th, 2006.

44.    Indeed, Mr. Blake appeared at the July 11th, 2006 ARC meeting. A copy of the minutes from that meeting are annexed as Exhibit "O".

45.    As the owner's representative, Mr. Blake continued the oppositional tone by disputing the building was "historic" stating that the Premises was a "ruined building". *See*, Exhibit "O".

46.    Michelle Kelson, Assistance Corporation Counsel for the City of Newburgh, informed Mr. Blake that the Premises was listed on the National Register of Historic Places and had been so listed since 1985. *See*, Exhibit "O".

47.    The ARC held the meeting open in order to solicit further information from the Owner and from the City Building Inspector. Id.

48.    The project Architect, Mr. Knute-Osborn, appeared before the ARC at its October 11th, 2006 meeting.[7] *See*, Exhibit "P" (October 11th, ARC meeting minutes). Id.

49.    The ARC expressed clearly to Mr. Knute-Osborn that the proposed exterior renovations were completely at odds with the historical character of the original building and the neighborhood. The proposal was, simply put, not appropriate. *See*, Exhibit "P".

---

[7] It should be noted that the subject Premises appeared on each monthly agenda of the ARC but only those meetings where the owner or one of its representatives appeared are discussed here.

50.    Mr. Knute-Osborn offered to take away "a lot of the gaudy details". Exhibit "P".

51.    The ARC voted to table the application while the applicant consulted with professional and historic resources to submit a design proposal which did not jeopardize the Premises as a contributor to the Historic District in the National Register of Historic Places. Id.

52.    Following the October 11th, 2006 ARC meeting, ARC Chairperson Mary Crabb wrote to DOLLINGER by letter dated October 27th, 2006. *See*, Exhibit "Q".

53.    In that letter, Ms. Crabb advised DOLLINGER of the outcome of the October ARC meeting and generally described what had to be done in order to move the application ahead together with an admonition that any work on the Premises would require a building permit. Exhibit "Q".

54.    However, neither DOLLINGER nor 96 BROADWAY, LLC has taken any of the steps required to move their application ahead, nor have either re-applied for any building permits of any kind.

55.    In fact, upon information and belief, nothing has been done with respect to the Premises in over a year. The Premises are unsecured, unprotected and remain exposed to the elements and to trespassers.

56.    Annexed hereto as Exhibit "R" is a February 23rd, 2007 letter by Nancy Billman, President of the Newburgh Preservation Association. In that letter, Ms. Billman described the condition of the Premises as "embarrassing, if not dangerous." *See*, Exhibit "R".

57.    The owner, through its representative Maximo Blake, held an informal work session with the City to address the ongoing problem of the half-demolished, weather exposed and unsecured Premises on April 9th, 2007.

58.    Mr. Blake sent a memorializing letter following this informal meeting. *See,* Exhibit "S". Among other things, Mr. Blake acknowledged on behalf of the owner the need to immediately secure, protect and weather seal the Premises.

59.    Assistant Corporation Counsel Kelson replied to Blake by letter dated April 19th, 2007 clarifying that while the City would allow some flexibility in design, the final designs would be subject to ARC approval in accord with the City Ordinances governing exterior renovation to Historic Premises. *See,* Exhibit "T".

60.    By that same letter, Ms. Kelson directed an appearance by a representative of the owner for the next ARC meeting scheduled for May 8th, 2007. Id.

61.    However, neither DOLLINGER, nor Maximo Blake nor Knute-Osborn nor anyone else purporting to be affiliated with the project appeared at the May 8th, 2007 ARC meeting. A copy of the minutes is annexed hereto as Exhibit "U". On the failure to appear, the ARC denied the application and voted to take action to secure and protect the Premises. *See,* Exhibit "U".

62.    Photographs showing the Premises in 2005 prior to the demolition, and in 2006 and 2007 are annexed hereto as Exhibit "V". The photographs show the illegal exterior renovations as well as the present unsecured, unprotected and weather exposed condition of the Premises.

63.    In conformity with the above documented adversarial and oppositional course of conduct, rather than move to protect the Premises and comply with the ARC process, DOLLINGER sent to the City a letter which has been annexed hereto as Exhibit "W".

64.     In his June 8th, 2007 letter, DOLLINGER sent to the CITY a bill for

$784,000.000 based upon certain claimed-published mistakes the Building Inspector as well as

certain unspecified violations of Constitutional and Statutory Rights. *See*, Exhibit "W".

65.     In that letter, DOLLINGER states that he has "elected to restore the building to its

former appearance". Id. While the CITY has no objection to this plan of action in principle, and

indeed affirmatively seeks such relief herein, DOLLINGER'S unilateral declaration that "work

will begin on June 21, 2007" without obtaining a building permit or ARC approvals for the work

is both unlawful and unacceptable. DOLLINGER'S brash plan has forced the CITY to seek

immediate relief by way of this application.

66.     It is respectfully submitted that there is a substantial danger of an immediate and

irreparable injury to the Premises, to the CITY and its interest in the preservation of the assets of

its Historic District. Specifically, if DOLLINGER makes good on his threat to press ahead with

work on June 21, 2007, the Premises may be damaged beyond repair and are in danger being lost

to History and to the City forever.

### AS AND FOR A FIRST CAUSE OF ACTION
**Defendants Must be Restrained from Working on the Premises and Must be Ordered to
Strictly Comply with the City of Newburgh's Codes and Ordinances**

67.     Plaintiff repeats, reiterates and re-alleges allegations 1-66 as though fully set forth

at length herein.

68.     Section  300-26(A) of the City of Newburgh Code states:

> Certificate required. No person shall carry out any exterior
> alteration, restoration, reconstruction, demolition, new construction
> or moving of a landmark, nor shall any person make any material
> change in the appearance of such a property, its light fixtures,
> signs, sidewalks, fences, steps, paving or other exterior elements
> visible from a public street or alley which affect the appearance

and cohesiveness of a district and its designated properties, without first obtaining a certificate of appropriateness.

City of Newburgh Code §300-26(A)[General Code, 2007]. Exhibit "A".

69. The Premises are designated "a historic landmark" and appears in the City of Newburgh, East End Historic District in the National Register of Historic Places.

70. There is no dispute that the defendants have proceeded with the demolition of the exterior of the Premises without first having obtained the requisite certificate of appropriateness from the City of Newburgh ARC.

71. Therefore the defendants are in violation of City of Newburgh Code §300-26(A).

72. Section 300-26(E) and (F) state in relevant part:

E. Prior to the commencement of any work requiring a certificate of appropriateness the owner shall file an application for such a certificate with the Commission.

F. No building permit shall be issued for such proposed work until a certificate of appropriateness has first been issued by the Commission. *The certificate of appropriateness required by this section shall be in addition to and not in lieu of any building permit that may be required by any other ordinance of the City of Newburgh.*

City of Newburgh Code §300-26(E),(F)[General Code, 2007](emphasis supplied). Exhibit "A".

73. It is equally clear that the defendants failed to file an application for a certificate of appropriateness prior to the commencement of work and that the certificate of appropriateness is in addition to, not in lieu of any building permit required under other ordinances of the City. Thus, the defendants may not argue that they were entitled to proceed based upon the March 2006 permit issued by Inspector Cummings.

74. Section 300-28(A) of the City of Newburgh Code states:

Enforcement. All work performed pursuant to a certificate of appropriateness issued under this article shall conform to any

requirements included therein. It shall be the duty of the Building
Inspector to inspect periodically any such work to assure
compliance. In the event work is found that is not being performed
in accordance with a certificate of appropriateness, the Building
Inspector shall issue a stop-work order and all work shall
immediately cease. *No further work shall be undertaken on the
project as long as a stop-work order is in effect.*

City of Newburgh Code §300-28(A)[General Code, 2007](emphasis supplied).

75.     Section 300-28(A) clearly authorized the stop work orders issued by Inspector

Cummings. Those stop work orders remain in effect. Moreover, the threat by DOLLINGER to

begin work on the Premises on June 21st, 2007 is in direct contravention to the prohibition of

section 300-28(A) that no work shall be undertaken unless and until a certificate of

appropriateness is obtained from the ARC and until the stop work order is lifted by the Building

Inspector.

76.     The defendants have not yet obtained such certificate of appropriateness, nor has

the stop work order been lifted.  Therefore the threat to begin work on June 21st is illegal and this

Court must restrain defendants from executing the threatened violation of law.

## AS AND FOR A SECOND CAUSE OF ACTION

### Defendants Must Be Compelled to Immediately Secure and Protect the Premises And to Restore the Exterior of the Premises to Status Quo Ante

77.     Plaintiff repeats, realleges and reiterates allegations 1-76 as though fully set forth

at length herein.

78.     The defendants must, as a matter of law, be compelled to secure and protect the

Premises without delay.

79.     Section 300-28(B) of the City of Newburgh Code states in part:

Maintenance required. Nothing in this article shall be construed to
prevent the ordinary maintenance and repair of any exterior

architectural feature of a landmark or property within a historic district which does not involve a change in the design, material, color, or outward appearance. *No owner or person with an interest in a designated property shall permit the property to fall into a serious state of disrepair so as to result in the deterioration of any exterior architectural or historic feature which would, in the judgment of the Commission, produce a detrimental effect upon the character of a historic or architectural district as a whole or the life and character of a landmark.* Examples of such deterioration include:

(1)   Deterioration of exterior walls or other vertical supports;

(2)   Deterioration of roofs and other horizontal members;

(3)   Deterioration of exterior chimneys;

(4)   Deterioration or crumbling of exterior stucco or mortar;

(5)   Ineffective waterproofing of exterior walls, roofs, or foundations, including broken windows or doors; and

(6)   Deterioration of any features so as to create a hazardous condition which could lead to a claim that demolition is necessary for the public safety.

City of Newburgh Code §300-28(B)[General Code, 2007](emphasis supplied).

80.     The ARC determined at its May 2007 meeting that the Premises being unsecured, unprotected and open to the elements amounted to such a serious state of disrepair that immediate steps were required to protect the Premises voting that "the City take the necessary steps to secure and protect 96 Broadway and to hold the owner's of 96 Broadway accountable in full." *See*, Exhibit "U".

81.     Additionally, code compliance officers with the City of Newburgh have

determined

that the Premises are indeed in a state of disrepair as contemplated by the City Code.

82.    Section 300-28(C) of the City of Newburgh Code states in part:

> Any person who demolishes, alters, constructs or permits a designated property to fall into a serious state of disrepair in violation of this article shall be required to restore the property and its site to its appearance prior to the violation. An action to enforce this subsection may be brought by the City in any court of competent jurisdiction. This civil remedy shall be in addition to and not in lieu of any criminal prosecution and penalty.

City of Newburgh Code §300-28(C)(2)[General Code, 2007](emphasis supplied). Exhibit "A".

83.    Thus, City of Newburgh Code §300-28(C)(2) provides for the authority to direct the defendants to immediately secure and protect the Premises as well as to direct defendants to restore the Premises to *status quo ante*. Based upon the undisputed violations of City Code by the defendants, the Court has it well within its discretion to grant the requested relief.

**WHEREFORE**, plaintiff CITY OF NEWBURGH prays this Court order and adjudge that:

1)    Defendants, in accord with Article V of the City of Newburgh Code, <u>immediately</u> protect and secure the subject premises located at 96 Broadway, City of Newburgh, State of New York by weather sealing the premises and securing all windows, doors and other openings in the premises against the elements and weather in a good and workman like manner; and

2)    Defendants, in accord with Article V, §300-28(C)(2) of the City of Newburgh Code, restore the condition and appearance of the subject premises and its site to *status quo ante*; and

3)    Defendants strictly comply with Article V of the City of Newburgh Code; and

4)    Pending the issuance of final relief herein, defendants be restrained from performing any further work of any kind on the subject premises aside from protecting and securing the premises in conformity with the stop work order issued by plaintiff; and

5)    Plaintiff have such other and further relief as to this Court may seem just, proper, and equitable including reasonable attorney fees, disbursements and court costs incurred in this action.

Dated:   Newburgh, New York
         June 21, 2007

Yours, etc.,
TARSHIS, CATANIA, LIBERTH,
MAHON & MILIGRAM, PLLC

By: _____



Steven I. Milligram, Esq.
Attorneys for Plaintiff
One Corwin Court
P.O. Box 1479
Newburgh, New York 12550
Tel. No. (845) 565-1100

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
=================================================X

THE CITY OF NEWBURGH,

                          Plaintiff,

        -against-


96 BROADWAY, LLC, and                                    Index Number:
DOUGLAS R. DOLLINGER

                          Defendants,
=================================================X



## VERIFICATION

STATE OF NEW YORK          )
                          )ss.:
COUNTY OF ORANGE          )


        Michelle Kelson, Esq., being duly sworn, deposes and says:


        1.      I am assistant corporation counsel for the City of Newburgh, the plaintiff in the

within proceeding.

        2.      I have read the annexed complaint, I am familiar with the contents thereof, the

same are true to my knowledge, except those matters therein which are stated to be alleged upon

information and belief, and as to those matters I believe them to be true.


                                                _____
                                                Michelle Kelson, Esq.

Sworn to before me on the _21^{ST}_

Day of ___June___, 2007.


_Donna M. Rickey_
NOTARY PUBLIC


FIRST DRAFT


DONNA M. RICKEY
Notary Public, State of New York
No. 01RI4705930
Residing in Orange County
Commission Expires April 30, 20 _11_

**EXHIBIT "B"**

# BUILDING INSPECTOR'S OFFICE
## CITY OF NEWBURGH

22 Grand Street                                      Phone: 569-7400

PERMIT NUMBER _____        DATE SUBMITTED _____
                                    DATE OF ISSUE   _____

INSTRUCTIONS
This application must be completely filled in by typewriter or printed in ink
and submitted to the building inspectors office.

A plot plan showing location of lot and buildings on premises, relationship to
adjoining premises or public streets or areas, the existing or proposed
connections to city water and sewer mains, provisions for handling storm water
run off and giving detailed description of layout of property must be on the
diagram which is a part of this application or be drawn as a separate item and
submitted with this application.

This application must be submitted with two complete sets of plans showing
proposed construction and two complete sets of specifications.  New York State
law, under Section 7307 of the New York State Education Law, requires that new
buildings or alterations costing $10,000.00 or more or changes that affect the
structural safety of a building must be stamped and signed by a New York State
licensed professional engineer or architect.  Plans and specifications shall
describe the nature and scope of the work to be performed, the materials and
equipment to be used and details of structural, mechanical, electrical and
plumbing installations.

The work covered by this application may not be commenced until the issuance of
a building permit.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Upon approval of this application, the building inspector will issue a building
permit to the applicant together with approved duplicate set of plans and
specifications.  Such permit and plans and specifications shall be kept on the
premises available for inspection throughout the progress of the work.

No building shall be occupied or used in whole or in part for any purpose
whatever until an application is made for and a certificate of occupancy shall
have been granted by the building inspector.

LOCATION OF PROPERTY: *96 Broadway, City of Newburgh, Newburgh, NY 12550*
   (GIVE STREET NUMBER AND NAME OR NAME AND DISTANCE FROM NEAREST
CROSS STREET)

ZONE: _____    SECTION: *30*    BLOCK: *5*    LOT: *22*

OWNERS NAME: *96 Broadway, L.L.C.*

OWNERS ADDRESS: *96 Broadway, City of Newburgh, Newburgh, NY 12550*

OWNERS PHONE: *(845) 562-9601*

CONTACT PERSON: *Douglas R. Dollinger, Esq.*

1

## BUILDING INSPECTOR'S OFFICE   CITY OF NEWBURGH

1.   State use and occupancy of premises and intended use and
     occupancy

     a. Existing use and occupancy:
     _Commercial/residential_

     b. Intended use and/occupancy:
     _Commercial/residential_

2.   Nature of work to be performed: (Check which is applicable)

     New Building: _____  Addition: _____  Alteration: __✓__

     Repair: _____  Demolition: _____  Other: _____

3.   If a residential dwelling:

          Number of existing dwelling units: _N/A_

          Number of proposed dwelling units: _N/A_

4.   If Business, Commercial or Mixed Occupancy, specify nature and
     extent of each type of use: _Two Business, two residential_

5.   Total square footage of existing building:
     _5,200_

     Total square footage of proposed building:
     _6,200_

6.   Size of lot: _24 x 84_

7.   Does proposed construction violate any zoning law or ordinance:
     NO _✓_  YES _____

     If Yes, Give appeal number that granted variance:
     _____

8.   Name of compensation Insurance Carrier:
     _____

     Policy Number: _____  Expiration Date: _____

9.   Name of Engineer or Architect:
     _Eric Osbourn_

     Address:
     _____

     Phone: _(845) 942-4614_

2

**BUILDING INSPECTOR'S OFFICE  CITY OF NEWBURGH**

10.    Name of Contractor: _Self_

Address: _____

Phone: _____

11.    Name of Electrician: _Pending_

Permit Number: _____    Phone: _____

12.    Name of Plumber: _Pending_

Permit Number: _____    Phone: _____

13.    What type of heat in building; will heating plants be located on each floor or will there be a central heating plant:

_Hot air, separate for each floor_

PROVIDE A BRIEF DESCRIPTION OF THE WORK THAT IS GOING TO BE PERFORMED:

_Demolition interior / Exterior_

DUMPSTER PERMIT NUMBER: _711_

ESTIMATED COST: _$5,000.00_

STARTING DATE: _ASAP_

ESTIMATED FINISH DATE: _Thirty days._

3

ALL APPLICATIONS SHALL INCLUDE A PLOT PLAN THAT IS DRAWN TO SCALE, SHOWING THE LOCATION AND SIZE OF ALL PROPOSED NEW CONSTRUCTION ALL EXISTING STRUCTURES ON THE SITE, THE EXISTING OR PROPOSED CONNECTIONS TO THE CITY WATER OR SEWER MAINS, PROVISIONS FOR THE HANDLING OF STORM WATER RUN OFF, DISTANCES FROM LOT LINES, THE RELATIONSHIP OF STRUCTURES ON ADJOINING PROPERTY, WIDTHS AND GRADES OF ADJOINING STREETS, WALKS AND ALLEYS.

### BUILDING INSPECTOR'S OFFICE  CITY OF NEWBURGH

## ** NOTICE **
## FOR FIRST TIME CONNECTION INTO CITY SEWER SYSTEM

### CONNECTIONS TO CITY SEWER SYSTEM:

NOTE: THE HEALTH DEPARTMENT REQUIRES A SPACE OF AT LEAST TEN (10) FEET BETWEEN WATER SND SEWER SERVICE

### TAPPING SEWER MAIN:

THE OWNER OR HIS CONTRACTOR SHALL MAKE A COMPLETE INSTALLATION FOR SEWER SERVICE.  ALL WORK SHALL BE UNDER   THE DIRECTION AND SUPERVISION OF THE DEPARTMENT OF PUBLIC WORKS.

### STREET OPENING FOR SEWER CONNECTIONS:

A STREET OPENING PERMIT MUST BE OBTAINED BEFORE EXCAVATING  IN THE CITY'S RIGHT OF WAY FOR THE PURPOSE OF MAKING A   CONNECTION INTO THE CITY SEWER OR WATER MAIN. THIS PERMIT MUST BE OBTAINED BEFORE BUILDING PERMIT CAN BE ISSUED.

### INSTALLATION AND MAINTENANCE COSTS:

ALL COSTS INCIDENTAL TO THE INSTALLATION AND CONNECTION OF THE BUILDING SEWER AS WELL AS MAINTENANCE AND REPAIR OR   REPLACEMENT OF THE BUILDING SEWER LATERAL SHALL BE BORNE BY THE OWNER.

### INDUSTRIAL USERS:

ALL INDUSTRIAL USERS PROPOSING TO CONNECT INTO THE CITY SEWER SYSTEM MUST COMPLETE AN INDUSTRIAL WASTEWATER DISCHARGE PERMIT APPLICATION THAT IS OBTAINABLE FROM THE CITY ENGINEERS OFFICE.

### FEES:

| | |
|---|---|
| RESIDENTIAL OR COMMERCIAL CONNECTIONS | $40.00 |
| INDUSTRIAL CONNECTIONS | $60.00 |
| OTHER REQUIRED PERMITS | |

| | WHERE OBTAINED | REQUIRED | DONE |
|---|---|---|---|
| TYPE: | | (Y/N) | (Y/N) |
| ZONING VARIANCE | BLDG. INSP. | _____ | _____ |
| SPECIAL USE PERMIT | BLDG INSP. | _____ | _____ |
| PLANNING BOARD REVIEW | BLDG INSP. | _____ | _____ |
| CONST. TRAILER PERMIT | BLDG. INSP. | _____ | _____ |
| BLASTING PERMIT | FIRE DEPT. | _____ | _____ |
| STREET OPENING PERMIT | BLDG INSP. | _____ | _____ |
| INSTALL GAS TANK | FIRE DEPT. | _____ | _____ |
| ELECTRIC PERMIT | ELECTRICIAN (LIC) | _____ | _____ |
| PLUMBING PERMIT | PLUMBER (LIC) | _____ | _____ |
| SIGN PERMIT | BLDG. INSP. | _____ | _____ |
| SCAFFOLD PERMIT | BLDG. INSP. | _____ | _____ |
| SIDEWALK PERMIT | BLDG. INSP. | _____ | _____ |
| CURB CUT PERMIT | BLDG. INSP. | _____ | _____ |
| CRANE Permit | BLDG. INSP. | _____ | _____ |
| DEMOLITION | BLDG. INSP. | _____ | _____ |
| HISTORIC REVIEW | BLDG. INSP. | _____ | _____ |
| OIL BURNER | BLDG INSP. | _____ | _____ |

6

Application is hereby made to the Building Inspector of the City of
Newburgh for the issuance of a Building Permit pursuant to the New
York State Uniform Fire Prevention and Building Construction Code for
the construction of buildings, additions or alterations, or the removal
or demolition, as herein described.  The applicant agrees to comply
with all applicable laws, ordinances and regulations.  Applicant
further agrees that the City of Newburgh Building Inspector or his
designate will be permitted to perform periodic inspections of this
property to insure that work is being performed according to these
codes, ordinances or regulations.  It is understood by the applicant
that if work is not performed according to codes, ordinances or
regulations, any permit that has been issued by the Building Inspector
may be withdrawn and an order to stop work issued.


_____
                    (signature of applicant)


_____

COMPLETE THIS SECTION ONLY IF APPLICANT IS OTHER THAN OWNER


_____ swears and says that
he/she

is the applicant signed above. He/she is the Agent _____, Corporate

Officer _____ Contractor _____ of said owner or owners and is duly
authorized to perform the said work  and to make and file this
application;  That all statements contained in this application are
true to the best of his/her knowledge and belief;  that the work will
be performed in the manner set forth in the application and in the
plans and specifications filed therewith.



Subscribed and sworn to before              _____
                                                (signature of applicant)

me on _____ 20_____          _____
                                                (address of applicant)

                                           _____
_____                 (address of applicant)
        (Notary Public)                    _____
                                             (telephone number of applicant)



ABOVE STATEMENT MUST BE SIGNED AND NOTARIZED PRIOR TO SUBMITTING
APPLICATION
OFFICE USE ONLY

PLANS REVIEWED BY: _____ DATE _____

SPECIFICATIONS REVIEWED BY: _____ DATE: _____

APPLICATION APPROVED BY: _____ DATE: _____

RECEIPT NUMBER: _____   CENSUS CODE NO: _____

FEES:
BUILDING PERMIT
BLASTING PERMIT          _____
SEWER CONNECTION         _____
SIGN(S) PERMIT           _____
SCAFFOLD PERMIT          _____
SIDEWALK PERMIT          _____
CURB CUT PERMIT          _____
CRANE PERMIT             _____
DEMOLITION PERMIT        _____

        TOTAL:      _____

# City of Newburgh
## Building Inspectors Office

22 Grand Street
Newburgh, NY 12550

Phone: (914) 569-7400
Fax: (914) 569-7435

## BUILDING PERMIT APPLICATION CHECK LIST

1. _____ TYPE OF MATERIALS TO BE USED.

2. _____ MEASUREMENTS

3. _____ RAILINGS (DIMENSIONS)

4. _____ FOOTINGS (DEPTH AND DIMENSIONS)

5. _____ SUPPORT BEAMS

6. _____ TYPE OF DECKING

7. _____ FRAMING, SIZE, AND SPACING BETWEEN

8. _____ STAIRS (HOW MANY), DIMENSIONS OF RISERS, TREAD, WIDTH

9. _____ EXTERIOR WALLS, TYPE OF SHEATHING

10. _____ TYPE OF INSULATION AND R-VALUE

11. _____ ROOF RAFTERS, SIZE AND SPACING BETWEEN

12. _____ FLOOR JOISTS, SIZE AND SPACING BETWEEN

13. _____ FLOOR PLAN SHOWING WALLS, DOORS, WINDOWS

# CITY OF NEWBURGH
# BUILDING INSPECTOR'S OFFICE

22 Grand Street
Newburgh, New York 12550

Phone: 569-7400
Fax:    569-7435

## TO ALL GENERAL CONTRACTORS WITH WORKERS COMPENSATION INSURANCE

For businesses listed as the general contractors on building permits, proof that they are in compliance with Section 57 of the Workers Compensation Law is on one of the following forms that indicate that they are:

- Insured (WC/DB 100) ( replaces C105.21)

- Accord Insurance Form is no longer accepted

- Self Insured ( S1-12)

Under the mandatory coverage provisions of the WCL, any residence that is not a 1,2,3 or 4 family, owner occupied residence is considered a business ( income or potential income property) and must prove compliance by filing on the of the above forms.

If you have any further questions, please contact:

Workers Compensation Office
41 North Division Street
Peekskill, New York 10566
(914) 788-5775

## Coverage for a 1, 2, 3 or 4 Family, Owner-occupied Residence

Under penalty of perjury, I certify that I am the owner of the 1, 2, 3 or 4 family, owner-occupied residence (including condominiums) listed on the building permit that I am applying for, and I am not required to show specific proof of workers' compensation insurance coverage for such residence because (please check the appropriate box):

☐  I am performing all the work for which the building permit was issued.

☐  I am not hiring, paying or compensating in any way, the individual(s) that is(are) performing all the work for which the building permit was issued or helping me perform such work.

☐  I have a homeowners insurance policy that is currently in effect and covers the property listed on the attached building permit AND am hiring or paying individuals a total of less than 40 hours per week (aggregate hours for all paid individuals on the jobsite) for which the building permit was issued.

I also agree to either:

✦  acquire appropriate workers' compensation coverage and provide appropriate proof of that coverage on forms approved by the Chair of the NYS Workers' Compensation Board to the government entity issuing the building permit if I need to hire or pay individuals a total of 40 hours or more per week (aggregate hours for all paid individuals on the jobsite) for work indicated on the building permit; OR

✦  have the general contractor, performing the work on the 1, 2, 3 or 4 family, owner-occupied residence (including condominiums) listed on the building permit that I am applying for, provide appropriate proof of workers' compensation coverage or proof of exemption from that coverage on forms approved by the Chair of the NYS Workers' Compensation Board to the government entity issuing the building permit if the project takes a total of 40 hours or more per week (aggregate hours for all paid individuals on the jobsite) for work indicated on the building permit.

_____

(Signature of Homeowner)          _____

                                  (Date Signed)

_____

(Homeowner's Name Printed)        Home Telephone Number

Property Address that requires the building permit:

_____

_____

| Sworn to before me this _____ day of |
| _____ |
| _____ |
| (County Clerk or Notary Public) |

BP1 (3/99)                        –3–

| NYS WCB WC/DB100/101 100 Broadway Menands 1 ALBANY 12241 (866) 750-5157 Fax# (518) 473-9166 | NYS WCB WC/DB100/101 State Office Building 44 Hawley Street BINGHAMTON 13901 (866) 802-3604 Fax# (607) 721-8464 | NYS WCB WC/DB100/101 111 Livingston St. 22nd Floor BROOKLYN 11201 (800) 877-1373 Fax# (718) 802-6642 | NYS WCB WC/DB100/101 107 Delaware Ave. BUFFALO 14202 (866) 211-0645 Fax# (716) 842-2155 | NYS WCB WC/DB100/101 220 Rabro Drive Suite 100 HAUPPAUGE 11788 (866) 681-5354 Fax# (631) 952-7966 | NYS WCB WC/DB100/101 175 Fulton Ave. HEMPSTEAD 11550 (866) 805-3630 Fax# (516) 560-7607 | NYS WCB WC/DB100/101 215 W. 125th St. 3rd Floor NEW YORK 10027 (800) 877-1373 Fax# (212) 316-9183 | NYS WCB WC/DB100/101 41 North Division St. PEEKSKILL 10566 (866) 746-0552 Fax# (914) 788-5793 | NYS WCB WC/DB100/101 168-46 91st Ave. 3rd Floor QUEENS 11432 (800) 877-1373 Fax# (718) 291-7248 | NYS WCB WC/DB100/101 130 Main St. ROCHESTER 14614 (866) 211-0644 Fax# (585) 238-6341 | NYS WCB WC/DB100/101 935 James St. SYRACUSE 13203 (866) 802-3730 Fax# (315) 423-2938 |
|---|---|---|---|---|---|---|---|---|---|---|

## Affidavit For New York Entities And Any Out Of State Entities With No Employees, That New York State Workers' Compensation And/Or Disability Benefits Insurance Coverage Is Not Required

*(Incomplete forms will be returned – Please contact an attorney if you have any questions regarding this form.)*

**\*\*This form cannot be used to waive the workers' compensation rights or obligations of any party.\*\***

The applicant may use this Affidavit <u>ONLY</u> to show a government entity that New York State specific workers' compensation and/or disability benefits insurance is not required. The applicant may <u>NOT</u> use this form to show either other businesses or those business' insurance carriers that such insurance is not required.

Applicant must either fax or mail this completed form to the closest New York State Workers' Compensation Board office at the fax number or address listed on the top of this form.    <u>Incomplete forms will be returned.</u>

Please note: This statement *must be notarized* and also have been *stamped* by the New York State Workers' Compensation Board. This affidavit will not be accepted by government officials one year from the date received by the Workers' Compensation Board.

Upon receipt of a fully completed WC/DB 100 form, the Workers' Compensation Board will stamp this form as received and return it to you by either mail or fax. Please provide a copy (or the original, if required by the government entity) of this stamped form to the government entity from which you are requesting a permit, license or contract.

In the Application of (Business Name and Address) _____

_____

_____

for a _____ permit/license/contract

State of _____ )

                              ) ss.:

County of _____ )

_____ *(applicant's name)* being duly sworn, deposes and says:

1.    I am the _____ *(position)* with _____ *(business · or trade name)*, a _____ *(type of business).* The telephone number of the business is (____) _____. The Federal Employer Identification Number of the business (or the Social Security Number of the business owner) is _____. The New York State Unemployment Insurance Employer Registration Number (if any) of the business is _____. I affirm that due to my position with the above-named business I have the knowledge, information and authority to make this affidavit.

2.    My personal address is _____ and my home telephone number is (____) _____.

3.    That the above named business is applying for a _____ *(type of permit/ license/contract applying for)* from _____ *(governmental entity issuing the permit/ license/contract).*

        3a) *{Optional* — *Location of where work will be performed in New York State* _____ *from _____to_____ (dates necessary to complete work associated with permit/license/contract).* The estimated dollar amount of project is _____.*}*

4.    That the above named business is certifying that it is exempt from obtaining New York State specific workers' compensation insurance coverage for the following reason (to be eligible for exemption, applicant must be able to truthfully check ONE of the boxes from 4a. through 4h.):

☐ 4a.) the business is owned by one individual and is not a corporation. Other than the owner, there are no employees, leased employees, borrowed employees, part-time employees or unpaid volunteers (including family members).

☐ 4b.) the business is a partnership under the laws of New York State and is not a corporation. Other than the partners, there are no employees, leased employees, borrowed employees, part-time employees or unpaid volunteers (including family members). *(Must attach separate sheet with a list of all the partners names and also with the signatures of all the partners.)*

☐ 4c.) the business is a one person owned corporation, with that individual owning all of the stock and holding all offices of the corporation. Other than the corporate owner, there are no employees, leased employees, borrowed employees, part-time employees or unpaid volunteers (including family members).

WC/DB-100 (6-04) {Replaces Form C-105.21}

                                                               (Over)

November 3, 2003

## WORKERS' COMPENSATION REQUIREMENTS UNDER WCL §57

To comply with coverage provisions of the Workers' Compensation Law, businesses must:

- A)   be legally exempt from obtaining workers' compensation insurance coverage; or
- B)   obtain such coverage from insurance carriers; or
- C)   be self-insured or participate in an authorized group self-insurance plan.

To assist State and municipal entities in enforcing Section 57 of the Workers' Compensation Law, <u>businesses</u> requesting permits or seeking to enter into contracts <u>MUST provide</u> ONE of the following forms to the government entity issuing the permit or entering into a contract:

- A)   WC/DB-100, Affidavit For New York Entities And Any Out Of State Entities With No Employees, That New York State Workers' Compensation And/Or Disability Benefits Insurance Coverage Is Not Required; OR

    WC/DB-101, Affidavit That An OUT OF STATE OR FOREIGN EMPLOYER Working In New York State Does Not Require Specific New York State Workers' Compensation And/Or Disability Benefits Insurance Coverage; OR

    **(Affidavits must be stamped as received by the NYS Workers' Compensation Board)**

- B)   C-105.2 -- Certificate of Workers' Compensation Insurance (the business' insurance carrier will send this form to the government entity upon request)  **PLEASE NOTE:** The State Insurance Fund provides its own version of this form, the U-26.3; OR

- C)   SI-12 -- Certificate of Workers' Compensation Self-Insurance (the business calls the Board's Self-Insurance Office at 518-402-0247), OR GSI-105.2 -- Certificate of Participation in Worker's Compensation Group Self-Insurance (the business' Group Self-Insurance Administrator will send this form to the government entity upon request).

## DISABILITY BENEFITS REQUIREMENTS UNDER WCL §220 SUBD 8

To comply with coverage provisions of the Disability Benefits Law, businesses may:

- A)   be legally exempt from obtaining disability benefits insurance coverage; or
- B)   obtain such coverage from insurance carriers; or
- C)   be self-insured.

Accordingly, to assist State and municipal entities in enforcing Section 220 Subd. 8 of the Disability Benefits Law, <u>businesses</u> requesting permits or seeking to enter into contracts <u>MUST provide</u> ONE of the following forms to the entity issuing the permit or entering into a contract:

- A)   WC/DB-100, Affidavit For New York Entities And Any Out Of State Entities With No Employees, That New York State Workers' Compensation And/Or Disability Benefits Insurance Coverage Is Not Required; OR

    WC/DB-101, Affidavit That An OUT OF STATE OR FOREIGN EMPLOYER Working In New York State Does Not Require Specific New York State Workers' Compensation And/Or Disability Benefits Insurance Coverage; OR

    **(Affidavits must be stamped as received by the NYS Workers' Compensation Board)**

- B)   Either the DB-120.1 -- Certificate of Disability Benefits Insurance **OR** the DB-820/829 Certificate/Cancellation of Insurance (the business' insurance carrier will send one of these forms to the government entity upon request); OR

- C)   DB-155 -- Certificate of Disability Benefits Self-Insurance (the business calls the Board's Self-Insurance Office at 518-402-0247).

## PROOF OF SERVICE

STATE OF NEW YORK   )

COUNTY OF NEW YORK)

I maintain my offices in the City of Newburgh, County of Orange, State of New York. I am over the age of 18 and not a party to these proceedings. My business address is 96 Broadway, City of Newburgh, Newburgh, New York 12550.

On October 19, 2007, I served the forgoing documents: MOTION FOR DISMISAL OF PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(B) (6) * MEMORANDUM TO DISMISS PLAINTIFF'S PURSUANT TO FRCP 12(b)(6) * MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND * DOLLINGER's AFFIDAVIT and EXHIBITS.

### *** PLEASE SEE ATTACHED SERVICE LIST***

__X__ VIA OVERNIGHT MAIL:

By delivering such documents to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express courier addressed to the person(s) on whom it is to be served.

_____ VIA U.S. MAIL:

By depositing a sealed envelope containing the above-cited document with the U.S. Postal Service on _____ with postage thereon fully paid at the local post office in Newburgh, New York.

_____ VIA PERSONAL DELIVERY:

By personally delivering such sealed envelope by hand to the offices of the addressee pursuant to the applicable law

VIA FACSIMILE:

By facsimile transmission where a report was generated indicating that the transmission was completed to the number indicated on the report without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true ad correct and I declare that I did so at the direction of the member of the bar of this Court at whose direction the service was made.

Executed this 19th day of October 2007, City of Newburgh, County of Orange, State of New York.

EDWARD McCARTHY

Subscribed and sworn to before me
this 19th day of Oct. 2007

Notary Public

SIXTO SANJUAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SA6158573
Qualified in Dutchess County
My Commission Expires January 02, 2011

1

2

<u>**SERVICE LIST**</u>

3

<u>**96 Broadway etal., Case No.: 07cv 7419(SCR) (MLF)**</u>

4

5

TARSHIS, CATANIA, LIBERTH, MAHON & MILIGRAM, PLLC
Attorneys for Plaintiffs

6

One Corwin Court
P.O. Box 1479

7

Newburgh, New York 12550
Tel. No. 845.565.1100

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28