**EXHIBIT "15"**

**BUILDING INSPECTORS OFFICE**

123 Grand Street                    Phone:   569-7400
Newburgh, NY 12550                  Fax:     569-0096

## COMPLAINT

MEMO TO: _____ Bruce _____

MEMO FROM: _____ Belissa _____

DATE: _____ 4-28-06 _____

RE: _____ 96 Broadway _____

COMPLAINT NAME: _____ Michael Gabore _____

COMPLAINT ADDRESS: _____

COMPLAINT PHONE: _____

_____ WILL MEET INSPECTORS

AT _____ AM/PM ON _____
    (TIME)                      (DATE)

NATURE OF COMPLAINT _____ Floor being added onto
building. No permit for it, No arc
approval.

**EXHIBIT "16"**

# CITY OF NEWBURGH
## CODE COMPLIANCE DEPARTMENT
### 123 Grand St. Newburgh, NY 12550
### Telephone: (845) 569-7400  Fax: (845) 569-0096

Date: 5/2/2006

SBL: 30.-5-22

To: 96 BROADWAY LLC
96 BROADWAY
NEWBURGH, NY 12550

Re: Violation Notice Number: 2006-2637
At: 96 Broadway

Property Owned By:  96 BROADWAY LLC
Premises Occupied By:

PLEASE TAKE NOTICE:
That upon inspection duly made in accordance with the City of Newburgh Code of Ordinances, it appears that there is upon the premises or property located as name above a violation of the  NYS Property Maintenance Code  Specifically it is believed that there is a violation of Section: 300-26A CITY CODE

There is reason to believe that said condition is Dangerous to Public Safety AND SHALL BE CORRECTED AT ONCE. Failure to comply with this notice may result in penlaty as prescribed by the Ordinances of the City Of Newburgh.

DESCRIPTION OF VIOLATION: 96 BROADWAY
CERTIFICATE OF APPROPRIATENESS.
NO PERSON SHALL CARRY OUT ANY EXTERIOR ALTERATION,
RESTORATION,RECONSTRUCTION, DEMOLOTION , NEW CONSTRUCTION
OR MOVING OF A LANDMARK, NOR SHALL ANY PERSON MAKE ANY MATERIAL CHANGr
IN THE APPEARANCE OF SUCH A PROPERTY, IT'S
LIGHT FIXTURES, SIGNS, SIDEWALKS, FENCES, STEPS, PAVING OR
OTHER EXTERIOR ELEMENTS VIVIBLE FROM  A PUBLIC STREET OR
ALLEY WHICH AFFECT THE APPEARANCE AND COHESIVENESS OF A DISTRICT AND I1
DESIGNATED PROPERTIES, WITHOUT FIRST
OBTAINING A CERTIFICATE OF APPROPRIATENESS.

CORRECTIVE ACTION NEEDED:
OBTAIN ARC APPROVAL FOR ANY EXTERIOR CHANGES/ EXTERIOR

By Order Of:

You are hereby advised to notify this office when this violation has been corrected by calling the number lister
At that time you should request an appointment for reinspection of the property. If you have any questions
concerning this violation, please call this office and request to speak to: BRUCE TERWILLIGER

**EXHIBIT "17"**

# CITY OF NEWBURGH
## CODE COMPLIANCE DEPARTMENT
### 123 Grand St. Newburgh, NY 12550
### Telephone: (845) 569-7400   Fax: (845) 569-0096

Date: 5/2/2006

SBL: 30.-5-22

To: 96 BROADWAY LLC
    96 BROADWAY
    NEWBURGH, NY 12550

Re: Violation Notice Number: 2006-2636
At: 96 Broadway

Property Owned By:  96 BROADWAY LLC
Premises Occupied By:

PLEASE TAKE NOTICE:
That upon inspection duly made in accordance with the City of Newburgh Code of Ordinances, it appears, that there is upon the premises or property located as name above a violation of the  CITY CODE OF ORDINANCE  Specifically it is believed that there is a violation of Section: 122.12 CITY CODE

There is reason to believe that said condition is Dangerous to Public Safety AND SHALL BE CORRECTED AT ONCE. Failure to comply with this notice may result in penlaty as prescribed by the Ordinances of the City Of Newburgh.

DESCRIPTION OF VIOLATION: 96 BROADWAY
122.12.  NO PERSON SHALL COMMENCE THE ERECTION, CONSTRUCTION, ENLARGEMENT, ALTERATION, REMOVAL, IMPROVEMENT, DEMOLITION, CONVERSION OR CHANGE IN THE NATURE OF THE OCCUPANCY OF ANY BUILDING OR STRUCTURE, OR CAUSE THE SAME TO BE DONE, WITHOUT FIRST OBTAINING A SEPARATE BUILDING PERMIT FROM THE BUILDING OFFICIAL FOR EACH SUCH BUILDING OR STRUCTURE, EXCEPT THAT NO BUILDING PERMIT SHALL BE REQUIRED FOR THE PERFORMANCE ( ORDINARY REPAIRS WHICH ARE NOT STRUCTURAL IN NATURE.

CORRECTIVE ACTION NEEDED:
STOP ALL WORK UNTIL PROPER BUILDING PERMIT IS OBTAINED/ EXTERIOR

By Order Of:

You are hereby advised to notify this office when this violation has been corrected by calling the number listed abo
At that time you should request an appointment for reinspection of the property. If you have any questions concerning this violation, please call this office and request to speak to: BRUCE TERWILLIGER

**EXHIBIT "18"**

# CITY OF NEWBURGH
## Building Inspector's Office
123 Grand Street  Newburgh, NY 12550
Phone: (845) 569-7400 Fax: (845) 569-0096

**Bill Cummings**                                                                    5/8/2006
Director of Code Compliance


96 BROADWAY LLC
96 BROADWAY
NEWBURGH, NY
12550


## *LIFTING ORDER TO VACATE*


Re:    96 Broadway


Dear 96 BROADWAY LLC


An inspection was made on 5/8/2006 by the Code Compliance Office.  This inspection will Lift the
Order to Vacate dated 5/2/2006.


Sincerely,


Bill Cummings
Director of Code Compliance

**EXHIBIT "19"**

**A+ Exclusive Granite**
Bronze & Marble

9 Stage Road, Monroe, NY • 845-783-1811
1 Hudson St., Chester, NY • 845-469-2525



**Northern Windows**
**Siding & Roofing**

**OPEN SATURDAYS**
Come visit our showroom, where every day is a Home Show
**772 East Main Street, Middletown**

COMPARE
SEE THE
DIFFERENCE

827-0107    845-342-9998    www.northernwindows.com



**Summer Clearance Sale**
Sale Ends June 30th

0% Off
Selected
Scratch 'n Dent
One of a Kind
Closeouts
Floor Models

**FURNITURE OPTIONS**
Route 17M, Goshen, NY
Living Room & Dining: 845-294-8069
Bedrooms & Serta Sleep Shop: 845-294-5312
Tues.-Thurs. 10-6 • Fri. 10-8 • Sat. 10-5 • Sun. 12-4
www.furnops.com



Times Herald-Record photo/JEFF GOULDING
Amos Harris, left, of Newburgh and Dan Crandell of Warwick work Thursday on overhauling 96 Broadway in Newburgh. Some residents want to halt the building's reconstruction.

# Renovation riles Newburgh locals

By John Doherty
Times Herald-Record
jdoherty@th-record.com

Newburgh — To outsiders, the overhaul of 96 Broadway might seem like something Newburgh's residents could get giddy about.

The century-old, three-story building is one of the city's many diamonds in the rough: good-looking, but banged up and empty for 18 years.

Now that it's getting a loving — and expensive — face lift, 96 Broadway would seem set to become another poster child in Newburgh's slow but steady renaissance. It has suites of offices and apartments, a brick facade, and pressed tin exterior details.

Instead, the address is now the latest rallying point for residents suspicious of City Hall and skeptical of Newburgh's path to progress.

What's going on here is very, very wrong. And it's so secretive," said Michael Gabor, one of the residents who have pushed city officials to stop the work at 96 Broadway. "We have people talking about there must be favoritism or payoffs. That's how shady it is."

For now, work has stopped at the downtown building, and renovation plans have been sent back for scrutiny by the city's Architectural Review Commission.

"Someone dropped the ball somewhere along the line, and we got issued a building permit before we were supposed to. I'm sure there are people out there who think it's some big payoff or conspiracy," said Doug Dollinger, a local lawyer managing the renovation for Michael Mollus, a California investor.

"All we are is a group trying to do well by the city. And this is just making a bigger problem."

Critics say the real issue isn't 96 Broadway. The issue is how Newburgh is going about its revitalization. At City Council meetings, on Internet chat rooms and citizen get-togethers, 96 Broadway has attracted the attention of a small but often-effective group of Newburgh residents.

Collectively, they're interested in a mix of slightly high-minded issues: keeping city officials out of closed-door sessions as much as possible, saving historic buildings, and following the money trail of big-ticket public works projects like the new city courthouse and proposed SUNY Orange campus.

"Look, this isn't a make-or-break issue. They're not putting a nuclear power



The building at the corner of Broadway and Liberty Street in Newburgh will house two apartments and office space.

plant in, there (96 Broadway)," says Michael Curry, who has filed Freedom of Information Law requests concerning 96 Broadway and spoken out about the project at City Council meetings.

Curry, like many city-hall watchdogs, is a relative newcomer to the city. His interest in local government started when he went before the Architectural Review Commission to make improvements to his Grand Street town house.

In reviewing the building department file for 96 Broadway, he found that developers did not get ARC approval before receiving a building permit.

"This building is right in the heart of the city, a really prominent position," said Curry. "It's not being watched, what else is falling by the wayside?"

Bill Cummings, the city's code enforcement chief, admits that as the scope of the work on 96 Broadway increased, he should have required the project to get ARC approval.

"If blew it," Cummings says. "With all the projects going on in the city, this one got passed. It's my fault."

Dollinger said his application for 96 Broadway is completed and ready to go before ARC. He hopes to get approval quickly. To date, the project's costs are estimated at $250,000 and counting.

"In my opinion, the city needs to take a long, hard look at how it goes about reviewing itself," he said.

**EXHIBIT "20"**

FILED
ORANGE COUNTY CLERK

2006 JUN -5 AM 11: 53

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

-------------------------------------------------X

96 BROADWAY, LLC, MICHAEL MOLUS and )
DOUGLAS R. DOLLINGER, ESQ, )
                                  Plaintiff(s), )
     -against- )
                                               )
                                               )
MICHAEL GABOR, and JOHN and JANE DOES 1 )
through 50, )
                               Defendant(s). )

-------------------------------------------------X

SUMMONS
(Slander and Libel)

**2006 - 4376**

Index No: 06/
Date purchased
June 5, 2006

JUN 5 2006

TO: MICHAEL GABOR, and JOHN and JANE DOES 1 through 50:

     You are hereby summoned and required to serve upon plaintiff's attorney

an answer to the complaint in this action within twenty (20) days after the service

of summons, exclusive of the day of service, or within thirty (30) days after

service is complete if this summons is not personally delivered to you within the

State of New York.  In case of your failure to answer, judgment will be taken

against you by default for the relief demanded in the complaint.

     The basis of the venue designated is the place of occurrence.  Plaintiffs

designate Orange County as the place of trial.

Dated:  June 5, 2006
         Newburgh, New York

Summons-Verified Complaint- Verification

Law Offices of Douglas R. Dollinger and Associates
96 Broadway, City of Newburgh, Newburgh, New York 12550 * 845.562.9601

Law Offices of Douglas R. Dollinger and Associates

By:  DOUGLAS R. DOLLINGER, ESQ.
Attorney for Plaintiff(s)
96 Broadway
Newburgh, New York 12550
(845) 562-9601

DEFENDANT'S ADDRESS:
MICHAEL GABOR,
and JOHN and JANE DOES 1 through 50,
297 Grand Street
Newburgh, New York 12550

Summons-Verified Complaint- Verification

Law Offices of Douglas R. Dollinger and Associates
96 Broadway, City of Newburgh, Newburgh, New York 12550 * 845.562.9601

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

-------------------------------------------------------------------X

96 BROADWAY, LLC, MICHAEL MOLUS and )
DOUGLAS R. DOLLINGER, ESQ, )
                      Plaintiff(s), )

      -against- )

MICHAEL GABOR, and JOHN and JANE DOES 1 )
through 50, )

                       Defendant(s). )

-------------------------------------------------------------------X

VERIFIED COMPLAINT
(Slander and Libel)

2006 - 4371

Index No: 06/
Date purchased
June 5, 2006

JUN 5 2006

      Plaintiff(s) complaining of the Defendant, MICHAEL GABOR and for

causes of action allege as follows:

      1.    Plaintiff, MICHAEL MOLUS is an individual and is now, and at all

times hereinafter mentioned in this complaint was, a resident of Palm Desert,

Riverside  County, California.

      2.     Plaintiff 96 Broadway, LLC is now, and at all times hereinafter

mentioned in this complaint was, a corporation organized and existing under the

laws of the State of New York.

      3.     Plaintiff, MICHAEL MOLUS is an investor and/or shareholder of 96

Broadway LLC.

Summons-Verified Complaint- Verification

Law Offices of Douglas R. Dollinger and Associates
96 Broadway, City of Newburgh; Newburgh, New York 12550 * 845 562 9601

4. Plaintiff, DOUGLAS R. DOLLINGER ("DOLLINGER") is an individual and is now, and at all times mentioned in this complaint was, a resident of Orange County, New York.

5. Defendant MICHAEL GABOR is an individual, was, is now, and at all times mentioned in this complaint a resident of Orange County, State of New York.

6. The true names of defendants DOES 1 through 50 inclusive, are unknown to plaintiff(s) at this time. Plaintiff sues those defendants by such fictitious names and is informed and believes, and based on that information and belief alleges, that each of the defendants designated as a DOE is legally responsible for the events and happenings referred to in this complaint, and unlawfully caused the injuries and damages to plaintiff(s) alleged in this complaint.

7. Plaintiff(s) are informed and believe, and based on that information and belief allege, that at all times mentioned in this complaint, each defendant was/were the agents and/or employees, members of an association-in-fact of each co-defendant MICHAEL GABOR and DOES 1-50 and in doing the things alleged in this complaint were acting within the course and scope of such agency and

Summons-Verified Complaint- Verification

Law Offices of Douglas R. Dollinger and Associates
96 Broadway, City of Newburgh, Newburgh, New York 12550 * 845 562 9601

employment or other association-in-fact or are otherwise individually responsible for the claims of slander and libel.

8.    Plaintiff, DOLLINGER is an attorney duly licensed to practice law in the State of New York.

9.    Plaintiff DOLLINGER has worked as an attorney in this community and in Orange County, New York for in excess of 15 years.

10.    Plaintiff DOLLINGER has during all this time enjoyed a good reputation, both generally and in his person and profession.

11.    At all times hereinafter mentioned, Plaintiff, DOLLINGER was managing a certain renovation project located at 96 Broadway owned by 96 Broadway LLC (hereinafter the premises), City of Newburgh, Newburgh, New York, County of Orange, State of New York.

12.    That at all times hereinafter mentioned 96 Broadway LLC paid for obtained and undertook reconstruction of the premises pursuant to a building permit lawfully issued by the City of Newburgh Building Department.

13.    On or about June 3, 2006, defendant(s) made certain derogatory, false and otherwise misleading factual statements to members of the news media intending to injure the plaintiffs in their personal and business reputations and in their property concerning the issuance of said building permit.

Summons-Verified Complaint- Verification

Law Offices of Douglas R. Dollinger and Associates
96 Broadway, City of Newburgh, Newburgh, New York 12550 * 845.562.9601

14.    The statements so made referred to plaintiff(s) and were made of and concerning plaintiff(s), and was so understood by those who read said publication to be illegal acts committed by plaintiff(s) in so obtaining said building permit, including: "What's going on here is very, very wrong. And it so secretive" . . . . "We have people talking about favoritism or payoffs. That's how shady it is."

15.    The entire statements was and is false as it pertains to plaintiff(s) and the defendants knew that said statements were false and otherwise intended to injure plaintiffs.

16.    The newspaper article is libelous on its face. It clearly exposes plaintiff(s) to hatred, contempt, ridicule and obloquy because it charges plaintiff(s) with having committed and been part of a criminal act, inclusive of illegal payoffs in obtaining a building permit.

17.    The newspaper article was seen and read on or about June 3, 2006, in the Times Herald Record in Orange County, New York by multiple members of the community.

18.    As a proximate result of the above-described publication, plaintiff(s) have suffered loss of their reputation, shame, mortification, and injury to their feelings, all to their damage in the amount to be established by proof at trial.

Summons-Verified Complaint- Verification

Law Offices of Douglas R. Dollinger and Associates
96 Broadway, City of Newburgh, Newburgh, New York 12550 * 845.562.9601

19.    The above-described publication was not privileged because it was caused to be published by defendants with malice, hatred and ill will toward plaintiff(s) and the desire to injure them in that defendants had expressed a desire to stop the restoration and reconstruction on the build known as 96 Broadway.

20.    Because of defendants' malice in publishing said statements, plaintiff(s) seek punitive damages in a total amount to be established by proof at trial, but in no event to be less than Five Million Dollars ($5,000,000.00) Dollars.

WHEREFORE, plaintiff(s) demands judgment against defendants, and each of them, for:

1. Compensatory damages according to proof;

2. Punitive damages;

3. Interest as allowed by law;

4. Costs of suit; and

5. Such other and further relief as this court may deem just and proper.

Dated: June 3, 2006           Law Offices of Douglas R. Dollinger and Associates

By: DOUGLAS R. DOLLINGER, ESQ.
Attorney for Plaintiff(s)
96 Broadway
Newburgh, New York 12550
(845) 562-9601

Summons-Verified Complaint- Verification

Law Offices of Douglas R. Dollinger and Associates
96 Broadway, City of Newburgh, Newburgh, New York 12550 * 845.562.9601

## VERIFICATION

State of New York )
                   ) SS.:
County of Orange )

DOUGLAS R. DOLLINGER, ESQ., being duly sworn, deposes and says, that deponent is a Plaintiff herein a principle and of counsel to **The Law Offices of Douglas R. Dollinger and Associates, P.C.**, and is admitted to practice in the courts of New York State. The firm is the attorney of record for the plaintiff(s) in the within action; that deponent has read the foregoing VERIFIED COMPLAINT and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes them to be true. Your deponent further states that the reason your deponent makes the within verification as one of the plaintiff(s) is that the remaining plaintiff(s) are corporate entities or otherwise reside in a county other than the county where ther firm maintains its offices.

The grounds for your deponent's beliefs as to matters not stated upon your deponent's own knowledge are as follows: statements of the plaintiff(s) and deponents own general investigation into the facts and circumstances of this action.

DOUGLAS R. DOLLINGER, ESQ.

Sworn to before me this 5th
day of June 2006

SHIRLEY B. HADDEN

NOTARY PUBLIC Notary Public, State of New York
Qualified in Orange County
Commission Expires October 31, 20__

Summons-Verified Complaint- Verification

Law Offices of Douglas R. Dollinger and Associates
96 Broadway, City of Newburgh, Newburgh, New York 12550 * 845.562.9601

**EXHIBIT "21"**

CODE COMPLIANCE DEPARTMENT
123 Grand St. Newburgh, NY 12550
Telephone: (845) 569-7400  Fax: (845) 569-0096

Date: 6/2/2006

SBL: 30.-5-22

To: 96 BROADWAY LLC
96 BROADWAY
NEWBURGH, NY 12550

Re: Violation Notice Number: 2006-3635
At: 96 Broadway

Property Owned By: 96 BROADWAY LLC
Premises Occupied By:

PLEASE TAKE NOTICE:
That upon inspection duly made in accordance with the City of Newburgh Code of Ordinances, it appears that there is upon the premises or property located as name above a violation of the  CITY CODE OF ORDINANCE  Specifically it is believed that there is a violation of Section: 122.20(A) CITY CODE

There is reason to believe that said condition is Dangerous to Public Safety AND SHALL BE CORRECTED AT ONCE. Failure to comply with this notice may result in penalty as prescribed by the Ordinances of the City Of Newburgh.

DESCRIPTION OF VIOLATION: 96 BROADWAY
122.20(A).  WHENEVER THE BUILDING OFFICIAL HAS REASONABLE GROUNDS TO BELIEVE THAT WORK ON ANY BUILDING OR STRUCTURE IS BEING PROSECUTED IN VIOLATION OF THE PROVISIONS OF THE APPLICABLE BUILDING PERMIT AS ISSUED OR IN AN UNSAFE AND DANGEROUS MANNER, HE SHALL NOTIFY THE OWNER OF THE PROPERTY OR THE OWNER'S AGENT OR THE PERSON PERFORMING THE WORK TO SUSPEND ALL WORK, AND ANY SUCH PERSON SHALL FORTHWITH STOP SUCH WORK AND SUSPEND ALL BUILDING ACTIVITIES UNTIL THE STOP ORDER HAS BEEN RESCINDED.

CORRECTIVE ACTION NEEDED:
STOP WORK!  EXISTING CONSTRUCTION DOES NOT REFLECT APPROVED DRAWINGS. CEASE AND DESIST ALL WORK UNTIL DRAWINGS ARE AMENDED AND APPROVED BY THIS OFFICE.

By Order Of:

You are hereby advised to notify this office when this violation has been corrected by calling the number listed above. At that time you should request an appointment for reinspection of the property. If you have any questions concerning this violation, please call this office and request to speak to: BRUCE TERWILLIGER

# CITY OF NEWBURGH

## Work on This Building is to

# STOP

*For Violations of Building Codes as Indicated:-*

☑ **ELECTRICAL**            ☑ **GENERAL CONSTRUCTION**

☐ **PLUMBING**              ☐ **OTHER**

☐ **HEATING**

*By Order*

6/2/06
Date

Inspector

96 BROADWAY

**EXHIBIT "22"**

**ORIGINAL**

## APPLICATION FOR ARCHITECTURAL
## REVIEW COMMISSION
## CITY OF NEWBURGH

**123 GRAND STREET**                    **PHONE 569-7400**

AR NUMBER _2006-39_      DATE SUBMITTED _6-2-06_

MEETING DATE _6-13-06_

### INSTRUCTIONS

This application must be completely filled in by typewriter or printed in ink and submitted to the building inspectors office. If the applicant is not the owner, a letter must accompany this application from the owner giving permission for the work to be done on said property.

Please include a drawing showing the location of lot and buildings on premises, relationship to adjoining premises or public streets or areas. A description of the layout of the property must be on the diagram, which is a part of this application, or be drawn as a separate item and submitted with this application.

This application must describe the nature and scope of the work to be performed, the materials and equipment to be used and details of structural installations.

LOCATION OF PROPERTY: _96 Broadway_
(GIVE STREET NUMBER AND NAME OR NAME AND DISTANCE FROM NEAREST CROSS STREET)

OWNERS NAME: _96 Broadway LLC_

OWNERS ADDRESS: _96 Broadway, Newburgh, NY 12550_

OWNERS PHONE: _845-562-9601_

PLACE PICTURE HERE:
PLEASE NOTE: FAILURE TO SUBMIT PICTURE WITH APPLICATION WILL CONSTITUTE NO REVIEW OF THE APPLICATION BY THE ARCHITECTURAL REVIEW COMMISSION**

30
5
22

**APPLICATION FOR ARCHITECTURAL
REVIEW COMMISSION
CITY OF NEWBURGH**

1. Nature of work to be performed:  (Check which is applicable)

   Addition: ✓ Alteration: ✓ Repair: ✓
   Demolition:_____ Other:_____
   Doors: ✓ Roof: ✓ Windows: ✓ Sign:_____
   Soffits:_____ Cornices: ✓ Fences:_____ Decks:_____
   Pointing:_____ Spindles:_____ Railings:_____ Steps: ✓
   Recommendation to Planning Board:_____
   Recommendation to Zoning Board of Appeals:_____

2. Total square footage of proposed building: _____N/A_____
   IF NEEDED

3. Size of lot: _____N/A_____

4. Name of Engineer or Architect: _ERIC KNUTE OSBORN_
   IF NEEDED

   Address: _7 JOYCE PLACE, STONY POINT, N.Y. 10980_

   Phone: _845-496-9000_

5. Name of Contractor: _MAXIMUM SOLUTIONS_

   Address: _PO BOX 47, Bellvale, NY 10912_

   Phone: _845-592-4377_

PROVIDE A BRIEF DESCRIPTION OF THE FOLLOWING:  <u>Attach product literature,
photo's, sketches, etc. of work.</u>

- Description of work to be done, materials being used, dimensions of work, color of
  paint being used, etc.:

_ADDITION, ALTERATIONS, Repair,_
_Doors, Roof, Windows, Steps, Clock, Finials_
_Columns, Decorative CORNICES_
_Beige + White Paint_

Variance or Special Permit:  For recommendations only;  Please circle one or both whichever
applies.
Please explain what variance or special use permit is for: _____N/A_____

**APPLICATION FOR ARCHITECTURAL
REVIEW COMMISSION
CITY OF NEWBURGH**

STARTING DATE: _march 2006_

TO BE FINISHED SIX MONTHS FROM STARTING DATE: _October 2006_

DRAW SKETCH HERE:

See Amend Sketch Photo

I UNDERSTAND AND AGREE THAT NO WORK ON THIS REQUEST SHALL
COMMENCE UNTIL WRITTEN APPROVAL HAS BEEN GIVEN BY THE
ARCHITECTURAL REVIEW COMMISSION AND APPROVAL FROM THE
BUILDING INSPECTOR.

PRINT NAME AND SIGN

_D. Dollinger_                    _____
                                 (signature of owner)

617.20
*Appendix A*
*State Environmental Quality Review*
FULL ENVIRONMENTAL ASSESSMENT FORM

Purpose: The full EAF is designed to help applicants and agencies determine, in an orderly manner, whether a project or action may be significant. The question of whether an action may be significant is not always easy to answer. Frequently, there are aspects of a project that are subjective or unmeasurable. It is also understood that those who determine significance may have little or no formal knowledge of the environment or may not be technically expert in environmental analysis. In addition, many who have knowledge in one particular area may not be aware of the broader concerns affecting the question of significance.

The full EAF is intended to provide a method whereby applicants and agencies can be assured that the determination process has been orderly, comprehensive in nature, yet flexible enough to allow introduction of information to fit a project or action.

Full EAF Components:    The full EAF is comprised of three parts:

Part 1:    Provides objective data and information about a given project and its site. By identifying basic project data, it assists a reviewer in the analysis that takes place in Parts 2 and 3.

Part 2:    Focuses on identifying the range of possible impacts that may occur from a project or action. It provides guidance as to whether an impact is likely to be considered small to moderate or whether it is a potentially-large impact. The form also identifies whether an impact can be mitigated or reduced.

Part 3:    If any impact in Part 2 is identified as potentially-large, then Part 3 is used to evaluate whether or not the impact is actually important.

## THIS AREA FOR <u>LEAD AGENCY</u> USE ONLY

## DETERMINATION OF SIGNIFICANCE -- Type 1 and Unlisted Actions

Identify the Portions of EAF completed for this project:    ☒ Part 1     ☐ Part 2     ☐ Part 3

Upon review of the information recorded on this EAF (Parts 1 and 2 and 3 if appropriate), and any other supporting information, and considering both the magnitude and importance of each impact, it is reasonably determined by the lead agency that:

☒ A.    The project will not result in any large and important impact(s) and, therefore, is one which will not have a significant impact on the environment, therefore a negative declaration will be prepared.

☐ B.    Although the project could have a significant effect on the environment, there will not be a significant effect for this Unlisted Action because the mitigation measures described in PART 3 have been required, therefore a CONDITIONED negative declaration will be prepared.*

☐ C.    The project may result in one or more large and important impacts that may have a significant impact on the environment, therefore a positive declaration will be prepared.

*A Conditioned Negative Declaration is only valid for Unlisted Actions

_____96 Broadway LLC_____
Name of Action

_____
Name of Lead Agency

_____    _____
Print or Type Name of Responsible Officer in Lead Agency    Title of Responsible Officer

_____    _____
Signature of Responsible Officer in Lead Agency    Signature of Preparer (if different from responsible officer)

bsite    _____
Date

## PART 1--PROJECT INFORMATION
### Prepared by Project Sponsor

NOTICE: This document is designed to assist in determining whether the action proposed may have a significant effect on the environment. Please complete the entire form. Parts A through E. Answers to these questions will be considered as part of the application for approval and may be subject to further verification and public review. Provide any additional information you believe will be needed to complete Parts 2 and 3.

It is expected that completion of the full EAF will be dependent on information currently available and will not involve new studies, research or investigation. If information requiring such additional work is unavailable, so indicate and specify each instance.

Name of Action ___ 96 Broadway LLC

Location of Action (include Street Address, Municipality and County)

___ 96 Broadway, Newburgh, NY 12550    Orange County

Name of Applicant/Sponsor ___ Law Offices of Douglas R. Dollinger

Address ___ 96 Broadway

City / PO ___ Newburgh    State ___ NY    Zip Code ___ 12550

Business Telephone ___ 845-562-9601

Name of Owner (if different) ___

Address ___

City / PO ___    State ___    Zip Code ___

Business Telephone ___

Description of Action:

Please Complete Each Question--Indicate N.A. if not applicable

## A. SITE DESCRIPTION

Physical setting of overall project, both developed and undeveloped areas.

1. Present Land Use: ☐ Urban ☐ Industrial ☒ Commercial ☐ Residential (suburban) ☐ Rural (non-farm)
   ☐ Forest ☐ Agriculture ☐ Other _____

2. Total acreage of project area: _NA_ acres.

| APPROXIMATE ACREAGE | PRESENTLY | AFTER COMPLETION |
|---|---|---|
| Meadow or Brushland (Non-agricultural) | _____ acres | _____ acres |
| Forested | _____ acres | _____ acres |
| Agricultural (Includes orchards, cropland, pasture, etc.) | _____ acres | _____ acres |
| Wetland (Freshwater or tidal as per Articles 24,25 of ECL) | _____ acres | _____ acres |
| Water Surface Area | _____ acres | _____ acres |
| Unvegetated (Rock, earth or fill) | _____ acres | _____ acres |
| Roads, buildings and other paved surfaces | _____ acres | _____ acres |
| Other (Indicate type) _____ | _____ acres | _____ acres |

3. What is predominant soil type(s) on project site? _NA_

   a. Soil drainage: ☐ Well drained _____% of site ☐ Moderately well drained _____% of site.
   ☐ Poorly drained _____% of site

   b. If any agricultural land is involved, how many acres of soil are classified within soil group 1 through 4 of the NYS Land Classification System? _____ acres (see 1 NYCRR 370).

4. Are there bedrock outcroppings on project site? ☐ Yes ☒ No

   a. What is depth to bedrock _____ (in feet)

5. Approximate percentage of proposed project site with slopes:
   ☒ 0-10% _____% ☐ 10-15% _____% ☐ 15% or greater _____%

6. Is project substantially contiguous to, or contain a building, site, or district, listed on the State or National Registers of Historic Places? ☐ Yes ☒ No

7. Is project substantially contiguous to a site listed on the Register of National Natural Landmarks? ☐ Yes ☒ No

8. What is the depth of the water table? _NA_ (in feet)

9. Is site located over a primary, principal, or sole source aquifer? ☐ Yes ☒ No

10. Do hunting, fishing or shell fishing opportunities presently exist in the project area? ☐ Yes ☒ No

11. Does project site contain any species of plant or animal life that is identified as threatened or endangered?  ☐ Yes  ☒ No

According to:

Identify each species:

12. Are there any unique or unusual land forms on the project site? (i.e., cliffs, dunes, other geological formations?

☐ Yes   ☒ No

Describe:

13. Is the project site presently used by the community or neighborhood as an open space or recreation area?

☐ Yes   ☒ No

If yes, explain:

14. Does the present site include scenic views known to be important to the community?   ☐ Yes   ☒ No

15. Streams within or contiguous to project area:

NA

a.   Name of Stream and name of River to which it is tributary

16.  Lakes, ponds, wetland areas within or contiguous to project area:

NA

b.   Size (in acres):

17. Is the site served by existing public utilities? ☒ Yes    ☐ No

   a. If YES, does sufficient capacity exist to allow connection? ☒ Yes    ☐ No

   b. If YES, will improvements be necessary to allow connection? ☒ Yes    ☐ No

18. Is the site located in an agricultural district certified pursuant to Agriculture and Markets Law, Article 25-AA, Section 303 and 304? ☐ Yes    ☒ No

19. Is the site located in or substantially contiguous to a Critical Environmental Area designated pursuant to Article 8 of the ECL, and 6 NYCRR 617? ☐ Yes    ☒ No

20. Has the site ever been used for the disposal of solid or hazardous wastes? ☐ Yes    ☒ No

B. Project Description

1. Physical dimensions and scale of project (fill in dimensions as appropriate).

   a. Total contiguous acreage owned or controlled by project sponsor: _1/4_ acres.

   b. Project acreage to be developed: _NA_ acres initially; _____ acres ultimately.

   c. Project acreage to remain undeveloped: _NA_ acres.

   d. Length of project, in miles: _NA_ (if appropriate)

   e. If the project is an expansion, indicate percent of expansion proposed. _20_ %

   f. Number of off-street parking spaces existing _____; proposed _____  *owner has provided seperate parking LOT in EXCESS of Limited Amount of Parking spaces*

   g. Maximum vehicular trips generated per hour: _NA_ (upon completion of project)?

   h. If residential: Number and type of housing units: NA

|  | One Family | Two Family | Multiple Family | Condominium |
|---|---|---|---|---|
| Initially | _____ | _____ | _____ | _____ |
| Ultimately | _____ | _____ | _____ | _____ |

   i. Dimensions (in feet) of largest proposed structure: _____ height; _____ width; _____ length.

   j. Linear feet of frontage along a public thoroughfare project will occupy is? _____ ft.

2. How much natural material (i.e. rock, earth, etc.) will be removed from the site? _NA_ tons/cubic yards.

3. Will disturbed areas be reclaimed? ☐ Yes    ☐ No    ☒ N/A

   a. If yes, for what intended purpose is the site being reclaimed?

   b. Will topsoil be stockpiled for reclamation? ☐ Yes    ☐ No  *NA*

   c. Will upper subsoil be stockpiled for reclamation? ☐ Yes    ☐ No  *NA*

4. How many acres of vegetation (trees, shrubs, ground covers) will be removed from site? _O_ acres.

5.  Will any mature forest (over 100 years old) or other locally-important vegetation be removed by this project?

☐ Yes    ☒ No

6.  If single phase project: Anticipated period of construction: __6__ months, (including demolition)

7.  If multi-phased: NA

a.  Total number of phases anticipated _____ (number)

b.  Anticipated date of commencement phase 1: _____ month _____ year, (including demolition)

c.  Approximate completion date of final phase: _____ month _____ year.

d.  Is phase 1 functionally dependent on subsequent phases? ☐ Yes ☐ No

8.  Will blasting occur during construction? ☐ Yes ☒ No

9.  Number of jobs generated: during construction __6__ ; after project is complete __25__

10. Number of jobs eliminated by this project __0__

11. Will project require relocation of any projects or facilities? ☐ Yes ☒ No

If yes, explain:

12. Is surface liquid waste disposal involved? ☐ Yes ☒ No

a.  If yes, indicate type of waste (sewage, industrial, etc) and amount _____

b.  Name of water body into which effluent will be discharged _____

13. Is subsurface liquid waste disposal involved? ☐ Yes ☒ No   Type _____

14. Will surface area of an existing water body increase or decrease by proposal? ☐ Yes ☒ No

If yes, explain:

15. Is project or any portion of project located in a 100 year flood plain? ☐ Yes ☒ No

16. Will the project generate solid waste? ☐ Yes ☒ No

a.  If yes, what is the amount per month? _____ tons

b.  If yes, will an existing solid waste facility be used? ☐ Yes ☐ No

c.  If yes, give name _____ : location _____

d.  Will any wastes not go into a sewage disposal system or into a sanitary landfill? ☐ Yes ☐ No

e.   If yes, explain:

17. Will the project involve the disposal of solid waste? ☐ Yes ☒ No

a.   If yes, what is the anticipated rate of disposal? _____ tons/month.

b.   If yes, what is the anticipated site life? _____ years.

18. Will project use herbicides or pesticides? ☐ Yes ☒ No

19. Will project routinely produce odors (more than one hour per day)? ☐ Yes ☒ No

20. Will project produce operating noise exceeding the local ambient noise levels? ☐ Yes ☒ No

21. Will project result in an increase in energy use? ☐ Yes ☒ No

If yes, indicate type(s)

22. If water supply is from wells, indicate pumping capacity ___NA___ gallons/minute.

23. Total anticipated water usage per day ___NA___ gallons/day.

24. Does project involve Local, State or Federal funding? ☐ Yes ☒ No

If yes, explain:

25. Approvals Required:

| | | | Type | Submittal Date |
|---|---|---|---|---|
| City, Town. Village Board | ☐ Yes | ☒ No | | |
| City, Town, Village Planning Board | ☒ Yes | ☐ No | Dept & Building | March 06 |
| City, Town Zoning Board | ☐ Yes | ☒ No | | |
| City, County Health Department | ☐ Yes | ☒ No | | |
| Other Local Agencies | ☐ Yes | ☒ No | | |
| Other Regional Agencies | ☐ Yes | ☒ No | | |
| State Agencies | ☐ Yes | ☒ No | | |
| Federal Agencies | ☐ Yes | ☒ No | | |

C. Zoning and Planning Information

1. Does proposed action involve a planning or zoning decision? ☐ Yes ☒ No

If Yes, indicate decision required:

☐ Zoning amendment     ☐ Zoning variance     ☐ New/revision of master plan     ☐ Subdivision

☐ Site plan     ☐ Special use permit     ☐ Resource management plan     ☐ Other

2.  What is the zoning classification(s) of the site?

NA

3.  What is the maximum potential development of the site if developed as permitted by the present zoning?

NA

4.  What is the proposed zoning of the site?

NA

5.  What is the maximum potential development of the site if developed as permitted by the proposed zoning?

NA

6.  Is the proposed action consistent with the recommended uses in adopted local land use plans?    ☒ Yes    ☐ No

7.  What are the predominant land use(s) and zoning classifications within a ¼ mile radius of proposed action?

Commercial
Retail
Restaurants

8.  Is the proposed action compatible with adjoining/surrounding land uses with a ¼ mile?    ☒ Yes    ☐ No

9.  If the proposed action is the subdivision of land, how many lots are proposed?    NA

   a.  What is the minimum lot size proposed?

10. Will proposed action require any authorization(s) for the formation of sewer or water districts?  ☐ Yes  ☒ No

11. Will the proposed action create a demand for any community provided services (recreation, education, police, fire protection?

☐ Yes  ☒ No

a.  If yes, is existing capacity sufficient to handle projected demand?  ☐ Yes  ☒ No

12. Will the proposed action result in the generation of traffic significantly above present levels?  ☐ Yes  ☐ No

a.  If yes, is the existing road network adequate to handle the additional traffic.  ☐ Yes  ☐ No

D.  Informational Details

Attach any additional information as may be needed to clarify your project.  If there are or may be any adverse impacts associated with your proposal, please discuss such impacts and the measures which you propose to mitigate or avoid them.

E.  Verification

I certify that the information provided above is true to the best of my knowledge.

Applicant/Sponsor Name  _LAW Office of Douglas R Dollinger_  Date  _6-2-06_

Signature  _____

Title  _ATTORNEY for 96 Broadway LLC_

If the action is in the Coastal Area, and you are a state agency, complete the Coastal Assessment Form before proceeding with this assessment.

## PART 2 - PROJECT IMPACTS AND THEIR MAGNITUDE
### Responsibility of Lead Agency

**General Information (Read Carefully)**

!    In completing the form the reviewer should be guided by the question: Have my responses and determinations been reasonable? The reviewer is not expected to be an expert environmental analyst.

!    The Examples provided are to assist the reviewer by showing types of impacts and wherever possible the threshold of magnitude that would trigger a response in column 2. The examples are generally applicable throughout the State and for most situations. But, for any specific project or site other examples and/or lower thresholds may be appropriate for a Potential Large Impact response, thus requiring evaluation in Part 3.

!    The impacts of each project, on each site, in each locality, will vary. Therefore, the examples are illustrative and have been offered as guidance. They do not constitute an exhaustive list of impacts and thresholds to answer each question.

!    The number of examples per question does not indicate the importance of each question.

!    In identifying impacts, consider long term, short term and cumulative effects.

**Instructions (Read carefully)**

a.    Answer each of the 20 questions in PART 2. Answer Yes if there will be any impact.

b.    Maybe answers should be considered as Yes answers.

c.    If answering Yes to a question then check the appropriate box(column 1 or 2)to indicate the potential size of the impact. If impact threshold equals or exceeds any example provided, check column 2. If impact will occur but threshold is lower than example, check column 1.

d.    Identifying that an impact will be potentially large (column 2) does not mean that it is also necessarily significant. Any large impact must be evaluated in PART 3 to determine significance. Identifying an impact in column 2 simply asks that it be looked at further.

e.    If reviewer has doubt about size of the impact then consider the impact as potentially large and proceed to PART 3.

f.    If a potentially large impact checked in column 2 can be mitigated by change(s) in the project to a small to moderate impact, also check the Yes box in column 3. A No response indicates that such a reduction is not possible. This must be explained in Part 3.

| | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated by<br>Project Change |
|---|---|---|---|

**Impact on Land**

1. Will the Proposed Action result in a physical change to the project site?

NO ☒    YES ☐

Examples that would apply to column 2

| | 1 | 2 | 3 |
|---|---|---|---|
| Any construction on slopes of 15% or greater, (15 foot rise per 100 foot of length), or where the general slopes in the project area exceed 10%. | ☐ | ☐ | ☐ Yes ☐ No |
| Construction on land where the depth to the water table is less than 3 feet. | ☐ | ☐ | ☐ Yes ☐ No |
| Construction of paved parking area for 1,000 or more vehicles. | ☐ | ☐ | ☐ Yes ☐ No |
| Construction on land where bedrock is exposed or generally within 3 feet of existing ground surface. | ☐ | ☐ | ☐ Yes ☐ No |
| Construction that will continue for more than 1 year or involve more than one phase or stage. | ☐ | ☐ | ☐ Yes ☐ No |
| Excavation for mining purposes that would remove more than 1,000 tons of natural material (i.e., rock or soil) per year. | ☐ | ☐ | ☐ Yes ☐ No |

| | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated by<br>Project Change |
|---|---|---|---|
| Construction or expansion of a sanitary landfill. | ☐ | ☐ | ☐ Yes ☐ No |
| Construction in a designated floodway. | ☐ | ☐ | ☐ Yes ☐ No |
| Other impacts: | ☐ | ☐ | ☐ Yes ☐ No |

┌─────────────────────────────────────────────────┐
│                                                 │
│                                                 │
└─────────────────────────────────────────────────┘

2. Will there be an effect to any unique or unusual land forms found on the site? (i.e., cliffs, dunes, geological formations, etc.)

☒ NO    ☐ YES

| | | | |
|---|---|---|---|
| Specific land forms: | ☐ | ☐ | ☐ Yes ☐ No |

┌─────────────────────────────────────────────────┐
│                                                 │
│                                                 │
└─────────────────────────────────────────────────┘

**Impact on Water**

3. Will Proposed Action affect any water body designated as protected? (Under Articles 15, 24, 25 of the Environmental Conservation Law, ECL)

☒ NO    ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| Developable area of site contains a protected water body. | ☐ | ☐ | ☐ Yes ☐ No |
| Dredging more than 100 cubic yards of material from channel of a protected stream. | ☐ | ☐ | ☐ Yes ☐ No |
| Extension of utility distribution facilities through a protected water body. | ☐ | ☐ | ☐ Yes ☐ No |
| Construction in a designated freshwater or tidal wetland. | ☐ | ☐ | ☐ Yes ☐ No |
| Other impacts: | ☐ | ☐ | ☐ Yes ☐ No |

┌─────────────────────────────────────────────────┐
│                                                 │
│                                                 │
└─────────────────────────────────────────────────┘

4. Will Proposed Action affect any non-protected existing or new body of water?

☒ NO    ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| A 10% increase or decrease in the surface area of any body of water or more than a 10 acre increase or decrease. | ☐ | ☐ | ☐ Yes ☐ No |
| Construction of a body of water that exceeds 10 acres of surface area. | ☐ | ☐ | ☐ Yes ☐ No |
| Other impacts: | ☐ | ☐ | ☐ Yes ☐ No |

┌─────────────────────────────────────────────────┐
│                                                 │
│                                                 │
└─────────────────────────────────────────────────┘

| | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated by<br>Project Change |
|---|---|---|---|

5.  Will Proposed Action affect surface or groundwater quality or quantity?

☒ NO     ☐ YES

Examples that would apply to column 2

| | 1 | 2 | 3 |
|---|---|---|---|
| • Proposed Action will require a discharge permit. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action requires use of a source of water that does not have approval to serve proposed (project) action. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action requires water supply from wells with greater than 45 gallons per minute pumping capacity. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Construction or operation causing any contamination of a water supply system. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will adversely affect groundwater. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Liquid effluent will be conveyed off the site to facilities which presently do not exist or have inadequate capacity. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action would use water in excess of 20,000 gallons per day. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will likely cause siltation or other discharge into an existing body of water to the extent that there will be an obvious visual contrast to natural conditions. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will require the storage of petroleum or chemical products greater than 1,100 gallons. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will allow residential uses in areas without water and/or sewer services. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action locates commercial and/or industrial uses which may require new or expansion of existing waste treatment and/or storage facilities. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Other impacts: | ☐ | ☐ | ☐ Yes  ☐ No |

| | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated by<br>Project Change |
|---|---|---|---|

6. Will Proposed Action alter drainage flow or patterns, or surface water runoff?

☒ NO   ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • Proposed Action would change flood water flows | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action may cause substantial erosion. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action is incompatible with existing drainage patterns. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will allow development in a designated floodway. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Other impacts: | ☐ | ☐ | ☐ Yes  ☐ No |

IMPACT ON AIR

7. Will Proposed Action affect air quality?

☒ NO   ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • Proposed Action will induce 1,000 or more vehicle trips in any given hour. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will result in the incineration of more than 1 ton of refuse per hour. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Emission rate of total contaminants will exceed 5 lbs. per hour or a heat source producing more than 10 million BTU's per hour. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will allow an increase in the amount of land committed to industrial use. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will allow an increase in the density of industrial development within existing industrial areas. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Other impacts: | ☐ | ☐ | ☐ Yes  ☐ No |

IMPACT ON PLANTS AND ANIMALS

8. Will Proposed Action affect any threatened or endangered species?

☒ NO   ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • Reduction of one or more species listed on the New York or Federal list, using the site, over or near the site, or found on the site. | ☐ | ☐ | ☐ Yes  ☐ No |

| | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated by<br>Project Change |
|---|---|---|---|
| Removal of any portion of a critical or significant wildlife habitat. | ☐ | ☐ | ☐ Yes ☐ No |
| • Application of pesticide or herbicide more than twice a year, other than for agricultural purposes. | ☐ | ☐ | ☐ Yes ☐ No |
| • Other impacts: | ☐ | ☐ | ☐ Yes ☐ No |

```
┌─────────────────────────────────────────────────────┐
│                                                     │
│                                                     │
│                                                     │
└─────────────────────────────────────────────────────┘
```

9. Will Proposed Action substantially affect non-threatened or non-endangered species?

☒ NO    ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • Proposed Action would substantially interfere with any resident or migratory fish, shellfish or wildlife species. | ☐ | ☐ | ☐ Yes ☐ No |
| • Proposed Action requires the removal of more than 10 acres of mature forest (over 100 years of age) or other locally important vegetation. | ☐ | ☐ | ☐ Yes ☐ No |
| • Other impacts: | ☐ | ☐ | ☐ Yes ☐ No |

```
┌─────────────────────────────────────────────────────┐
│                                                     │
│                                                     │
│                                                     │
└─────────────────────────────────────────────────────┘
```

IMPACT ON AGRICULTURAL LAND RESOURCES

10. Will Proposed Action affect agricultural land resources?

☒ NO    ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • The Proposed Action would sever, cross or limit access to agricultural land (includes cropland, hayfields, pasture, vineyard, orchard, etc.) | ☐ | ☐ | ☐ Yes ☐ No |
| • Construction activity would excavate or compact the soil profile of agricultural land. | ☐ | ☐ | ☐ Yes ☐ No |
| • The Proposed Action would irreversibly convert more than 10 acres of agricultural land or, if located in an Agricultural District, more than 2.5 acres of agricultural land. | ☐ | ☐ | ☐ Yes ☐ No |

| | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated by<br>Project Change |
|---|---|---|---|
| The Proposed Action would disrupt or prevent installation of agricultural land management systems (e.g., subsurface drain lines, outlet ditches, strip cropping); or create a need for such measures (e.g. cause a farm field to drain poorly due to increased runoff). | ☐ | ☐ | ☐ Yes  ☐ No |
| Other impacts: | ☐ | ☐ | ☐ Yes  ☐ No |

**IMPACT ON AESTHETIC RESOURCES**

11. Will Proposed Action affect aesthetic resources? (If necessary, use the Visual EAF Addendum in Section 617.20, Appendix B.)
   ☒ NO    ☐ YES

| Examples that would apply to column 2 | | | |
|---|---|---|---|
| Proposed land uses, or project components obviously different from or in sharp contrast to current surrounding land use patterns, whether man-made or natural. | ☐ | ☐ | ☐ Yes  ☐ No |
| Proposed land uses, or project components visible to users of aesthetic resources which will eliminate or significantly reduce their enjoyment of the aesthetic qualities of that resource. | ☐ | ☐ | ☐ Yes  ☐ No |
| Project components that will result in the elimination or significant screening of scenic views known to be important to the area. | ☐ | ☐ | ☐ Yes  ☐ No |
| Other Impacts: | ☐ | ☐ | ☐ Yes  ☐ No |

**IMPACT ON HISTORIC AND ARCHAEOLOGICAL RESOURCES**

12. Will Proposed Action impact any site or structure of historic, prehistoric or paleontological importance?
   ☒ NO    ☐ YES

| Examples that would apply to column 2 | | | |
|---|---|---|---|
| Proposed Action occurring wholly or partially within or substantially contiguous to any facility or site listed on the State or National Register of historic places. | ☐ | ☐ | ☐ Yes  ☐ No |
| Any impact to an archaeological site or fossil bed located within the project site. | ☐ | ☐ | ☐ Yes  ☐ No |
| Proposed Action will occur in an area designated as sensitive for archaeological sites on the NYS Site Inventory. | ☐ | ☐ | ☐ Yes  ☐ No |

| | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated by<br>Project Change |
|---|---|---|---|
| Other impacts: | ☐ | ☐ | ☐ Yes ☐ No |

---

## IMPACT ON OPEN SPACE AND RECREATION

13. Will proposed Action affect the quantity or quality of existing or future open spaces or recreational opportunities?

☒ NO  ☐ YES

| Examples that would apply to column 2 | | | |
|---|---|---|---|
| • The permanent foreclosure of a future recreational opportunity. | ☐ | ☐ | ☐ Yes ☐ No |
| • A major reduction of an open space important to the community. | ☐ | ☐ | ☐ Yes ☐ No |
| • Other impacts: | ☐ | ☐ | ☐ Yes ☐ No |

## IMPACT ON CRITICAL ENVIRONMENTAL AREAS

14. Will Proposed Action impact the exceptional or unique characteristics of a critical environmental area (CEA) established pursuant to subdivision 6NYCRR 617.14(g)?

☒ NO  ☐ YES

List the environmental characteristics that caused the designation of the CEA.

| Examples that would apply to column 2 | | | |
|---|---|---|---|
| • Proposed Action to locate within the CEA? | ☐ | ☐ | ☐ Yes ☐ No |
| • Proposed Action will result in a reduction in the quantity of the resource? | ☐ | ☐ | ☐ Yes ☐ No |
| • Proposed Action will result in a reduction in the quality of the resource? | ☐ | ☐ | ☐ Yes ☐ No |
| • Proposed Action will impact the use, function or enjoyment of the resource? | ☐ | ☐ | ☐ Yes ☐ No |
| • Other impacts: | ☐ | ☐ | ☐ Yes ☐ No |

| | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated by<br>Project Change |
|---|---|---|---|

## IMPACT ON TRANSPORTATION

**15. Will there be an effect to existing transportation systems?**

☒ NO    ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • Alteration of present patterns of movement of people and/or goods. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will result in major traffic problems. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Other impacts: | ☐ | ☐ | ☐ Yes  ☐ No |

## IMPACT ON ENERGY

**16. Will Proposed Action affect the community's sources of fuel or energy supply?**

☒ NO    ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • Proposed Action will cause a greater than 5% increase in the use of any form of energy in the municipality. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will require the creation or extension of an energy transmission or supply system to serve more than 50 single or two family residences or to serve a major commercial or industrial use. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Other impacts: | ☐ | ☐ | ☐ Yes  ☐ No |

## NOISE AND ODOR IMPACT

**17. Will there be objectionable odors, noise, or vibration as a result of the Proposed Action?**

☒ NO    ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • Blasting within 1,500 feet of a hospital, school or other sensitive facility. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Odors will occur routinely (more than one hour per day). | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will produce operating noise exceeding the local ambient noise levels for noise outside of structures. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Proposed Action will remove natural barriers that would act as a noise screen. | ☐ | ☐ | ☐ Yes  ☐ No |
| • Other impacts: | ☐ | ☐ | ☐ Yes  ☐ No |

| | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated by<br>Project Change |
|---|---|---|---|

## IMPACT ON PUBLIC HEALTH

18. Will Proposed Action affect public health and safety?

☒ NO   ☐ YES

| | | | |
|---|---|---|---|
| Proposed Action may cause a risk of explosion or release of hazardous substances (i.e. oil, pesticides, chemicals, radiation, etc.) in the event of accident or upset conditions, or there may be a chronic low level discharge or emission. | ☐ | ☐ | ☐ Yes  ☐ No |
| Proposed Action may result in the burial of "hazardous wastes" in any form (i.e. toxic, poisonous, highly reactive, radioactive, irritating, infectious, etc.) | ☐ | ☐ | ☐ Yes  ☐ No |
| Storage facilities for one million or more gallons of liquefied natural gas or other flammable liquids. | ☐ | ☐ | ☐ Yes  ☐ No |
| Proposed Action may result in the excavation or other disturbance within 2,000 feet of a site used for the disposal of solid or hazardous waste. | ☐ | ☐ | ☐ Yes  ☐ No |
| Other impacts: | ☐ | ☐ | ☐ Yes  ☐ No |

## IMPACT ON GROWTH AND CHARACTER
## OF COMMUNITY OR NEIGHBORHOOD

19. Will Proposed Action affect the character of the existing community?

☒ NO   ☐ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| The permanent population of the city, town or village in which the project is located is likely to grow by more than 5%. | ☐ | ☐ | ☐ Yes  ☐ No |
| The municipal budget for capital expenditures or operating services will increase by more than 5% per year as a result of this project. | ☐ | ☐ | ☐ Yes  ☐ No |
| Proposed Action will conflict with officially adopted plans or goals. | ☐ | ☐ | ☐ Yes  ☐ No |
| Proposed Action will cause a change in the density of land use. | ☐ | ☐ | ☐ Yes  ☐ No |
| Proposed Action will replace or eliminate existing facilities, structures or areas of historic importance to the community. | ☐ | ☐ | ☐ Yes  ☐ No |
| Development will create a demand for additional community services (e.g. schools, police and fire, etc.) | ☐ | ☐ | ☐ Yes  ☐ No |

|  | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated by<br>Project Change |
|---|---|---|---|
| Proposed Action will set an important precedent for future projects. | ☐ | ☐ | ☐ Yes ☐ No |
| Proposed Action will create or eliminate employment. | ☐ | ☐ | ☐ Yes ☐ No |
| Other impacts: | ☐ | ☐ | ☐ Yes ☐ No |

20. Is there, or is there likely to be, public controversy related to potential adverse environment impacts?

☒ NO          ☐ YES

If Any Action in Part 2 is Identified as a Potential Large Impact or if you Cannot Determine the Magnitude of Impact, Proceed to Part 3

Page 20 of 21

## Part 3 - EVALUATION OF THE IMPORTANCE OF IMPACTS

### Responsibility of Lead Agency

Part 3 must be prepared if one or more impact(s) is considered to be potentially large, even if the impact(s) may be mitigated.

Instructions (If you need more space, attach additional sheets)

Discuss the following for each impact identified in Column 2 of Part 2:

1.   Briefly describe the impact.

2.   Describe (if applicable) how the impact could be mitigated or reduced to a small to moderate impact by project change(s).

3.   Based on the information available, decide if it is reasonable to conclude that this impact is important.

To answer the question of importance, consider:

    I The probability of the impact occurring
    I The duration of the impact
    I Its irreversibility, including permanently lost resources of value
    I Whether the impact can or will be controlled
    I The regional consequence of the impact
    I Its potential divergence from local needs and goals
    I Whether known objections to the project relate to this impact.









Check 1123:

96 BROADWAY LLC
204 MAIN STREET
GOSHEN, NY 10924

PAY TO THE ORDER OF City of Newburgh

Twenty - Five dollars

DATE 6-2-06

$ 25 00/100 DOLLARS

FOR Application fee

Bank of America
Goshen, New York

⑆001123⑆ ⑆021300019⑆ 95017 619881⑆

29-1/213
9501761988

Check 1124:

96 BROADWAY LLC
204 MAIN STREET
GOSHEN, NY 10924

PAY TO THE ORDER OF City of Newburgh

Forty dollars

DATE 6-2-06

$ 40 00/100 DOLLARS

FOR Public Health Labor fee

Bank of America
Goshen, New York

⑆001124⑆ ⑆021300019⑆ 95017 619881⑆

29-1/213
9501761988B