**EXHIBIT "25"**



**EXHIBIT "26"**

January 24, 2007

City Manager Jean Anne McGrane
City of Newburgh
83 Broadway
Newburgh, NY 12550

     I find it necessary to resign from the Architectural Review Commission at this time. I am especially excited to be working with the DPPC and find myself spending more time there. I am sitting on the Charter Review Commission, and serving on a committee for the restoration of the Ritz. My personal projects and my family are taking up more and more of my time.

     While I have thoroughly enjoyed several years on the ARC learning about the city's architectural treasures, I have also found the work frustrating and unsatisfying. There appears to be a lack of support from the Building Code and Law Departments. Our Board has little direction to conduct proper legal business. State law for the kinds of decisions the Board has to make is built around criteria that are decades old. The Board needs technical assistance from the Building Department's code enforcement and the Law Department. Without that assistance, the Board has become in some cases ineffective. Often applicants are directed to us erroneously, creating a rift between the board, the applicant, and the community. If you think that further discussion of my comments would be helpful, I would be more than happy to discuss them with you.

     I am feeling the need to be more selective about my volunteer projects so that I can both be of greater benefit to community and leave sufficient time for my personal life and family. I look forward to working with you on other city enhancement projects.

Sincerely

Keith Nieto

Cc:
Mayor Nicholas Valentine
Councilwoman Regina Angelo
Councilman George Bowles
Councilman Sal Cracolici
Councilwoman Maryann Dickinson

**EXHIBIT "27"**



# The City of Newburgh
## Office of the Corporation Counsel

City Hall – 83 Broadway
Newburgh, New York 12550
Tel. (845) 569-7335
Fax. (845) 569-7338

Geoffrey E. Chanin
Corporation Counsel

Michelle Kelson
Assistant Corporation Counsel

April 19, 2007

Maximo Blake
Maximum Solutions, Inc.
P.O. Box 47
Bellvale, New York 10912

     Re:   96 Broadway, Newburgh, New York

Dear Mr. Blake,

Your letter, dated April 10, 2007, to City Manager Jean McGrane, regarding our April 9th Architectural Review Commission (ARC) work session concerning the rehabilitation of the building located at 96 Broadway has been referred to the undersigned.

Generally, we find your memorandum fairly summarizes our understanding of our April 9th meeting with some minor clarification. In this regard, it was our understanding that you and your clients may have more flexibility in the design of the first floor façade and the fourth floor but that the final designs would be subject to approval by the ARC.

Please be advised that the ARC will expect an appearance at its next regular meeting scheduled for Tuesday, May 8, 2007 at 7:30 p.m. for a presentation including your progress on the rehabilitation and your plan and timetable for completion of the project

Kindly contact the undersigned if have additional questions, comments or concerns.

Very truly yours,

MICHELLE KELSON
Assistant Corporation Counsel

MK/av

cc:     Jean Ann McGrane, City Manager
        Geoffrey E. Chanin, Corporation Counsel
        Steve Hunter, Code Compliance Supervisor
        Nancy Evans, Secretary to the ARC

**EXHIBIT "28"**

to basement front and back; repair basement walls; install
concrete floor to basement.
**Applicant: Norma Harley**

The Chairman of the Board then opened the Public Hearing by reading
the text of the notice.

Norma Harley and her daughter appeared before the Board.

There were no people to speak for or against this application.

The public hearing was completed on June 13, 2006.

A motion to approve the application was made by Ms. Lonczak and
seconded by Mr. Trunzo.

The motion was passed with a vote of 7-0.

| | |
|---|---|
| **AR 2006-38** | **149 Broadway** |
| | To install two metal signs (front and side view) – yellow. |
| | Dimensions: front – 8'-7" W X 34" H flat panel sign, side – 8'- |
| | 11" X  34" H flat panel sign. |
| | **Applicant: Gerry Sanchez** |

The applicant did not appear before the Board.  This matter is tabled for
applicant's appearance.

| | |
|---|---|
| **AR 2006-39** | **96 Broadway** |
| | For addition, alterations and repairs to doors, roof, |
| | windows, steps, clock, finials, columns, and decorative |
| | cornices.  Paint colors to be beige and white. |
| | **Applicant: 96 Broadway LLC** |

The Chairman of the Board then opened the Public Hearing by reading
the text of the notice.

Douglas Dollinger appeared before the Board.

Mr. Dollinger - You have my application.  Do you have any questions?

Ms Crabb – Tell us what you would like to do?

Mr. Dollinger – I'm already doing it. I have a building permit I cannot proceed
forward.  I'm here to help you.  If you have any questions please let me know.

Ms. Crabb - Tell us what you would like to do, I mean this is a public hearing, this is
open to the public and the public needs to know exactly what you want to do
with this building.

Mr. Dollinger – Well actually they can go and view the file at the Building Dept.

Ms. Lonczak – That's not how we do it.

10

Ms. Kelson – Do the Board the courtesy of explaining...

Mr. Dollinger – They are not a Board. They are not a Board.

Ms. Kelson – Excuse me Sir! Please do the members of this Commission the courtesy of explaining what your plans are for the exterior renovations of this building. Thank you.

Mr. Dollinger – Do you have any specific questions concerning this building?

Ms. Kelson – We are asking you to give us a brief overview.

Ms. Lonczak – May I ask a question?

Mr. Dollinger – Yes.

Ms. Lonczak – How come you didn't come to the ARC before you started tearing that gorgeous building down?

Mr. Dollinger – First of all that gorgeous building was absolutely falling apart and it the City had done it's job they would have known it was a detriment to the public. People's lives were in jeopardy. The _____ was cracked and falling. It had been covered with fiberglass. The brick could be removed by hand.

Ms. Lonczak – I was in that building and that's your opinion.

Mr. Dollinger - Do you have a degree in engineering?

Ms. Lonczak – No I don't.

Ms. Kelson – Excuse me Mr. Dollinger. My name is Michelle Kelson, I'm the Assistant Corporation Counsel for the City of Newburgh. This Board has a civic responsibility as designated by the State of NY to review your exterior plans for the property and if you do not co-operate with this Board you will find yourself having more difficulties completing your project.

Mr. Dollinger – Thank You. My project is underway. I just want to make myself perfectly clear. I am not going to be intimidated by anyone .......

Ms. Kelson – No one is trying to intimidate you. We are asking for some common courtesy.

Mr. Dollinger – I will tell you again. Your wrong. My application......

Mr. Neito – Wrong, I haven't heard.....

Ms. Kelson – We are asking for some common courtesy.

Ms. Crabb – Wait a minute, wait a minute. Time Out. Let's be respectful to everybody here. We are here to help you. We are here to help you. Mr. Cummings would you like to explain what happened with this building?

Mr. Cummings – Mr. Dollinger made or rather a staffer made an application in 2005. In 2005 when the gentleman came forward to make the application the intent was to do in kind repair to the front of the building. There were numerous reviews. Mr. Dollingers engineers requested a roofing permit approximately January 2005 due to the detrimental weather after an engineering review and a structural review and his engineers stating that the safety of the building, we issued a roof permit only. At the same time they began the Building Permit review process. During that process one of Mr. Dollinger's representatives was advised they needed to come before ARC. However, because we were already in the building permit process, I missed that notice. The building permit process to review the building was finalized in April 2006. The building permit was issued in May of 2006. When the building work started to be done we received complaints. The officer in charge of that area checked the file, there was no ARC approval. Went up and saw that there was more than in kind work being done. A Stop Work Order was issued. Mr. Dollinger was asked to come into the office. The Chairperson was also asked to come into the office which is standard when we have one of these issues. Mr. Dollinger explained what happened. The front of the building was deterioration of the lintels more than what any of the engineers thought before they started opening the building up. It was agreed at that point that no exterior work would be issued. The stop work was issued, and that they were to appear before the ARC to receive the proper approvals for the exterior work. Mr. Dollinger then made an application to the board and we are here today.

Ms. Lonczak – But work continued after that Stop Work.

Mr. Cummings – Work continued on the interior not the exterior. Let me further say that presently the interior work has also been stopped.

Ms. Lonczak – But from our last ARC meeting when Mary had informed us that she had met with you and Mr. Dollinger that there was a stop work order. I drove by within three days and saw that there was new work being done. And since then I have.....

Ms. Crabb – On the exterior?

Ms. Lonczak – Yes. In the front on the top floor.

Mr. Cummings – To my knowledge and I will go back and look. I was just at the building a week ago. There has been no work since the day we put the stop work order on.

Mr. Dollinger – To answer your question in reference to the stop work order. All work was stopped. What you are looking at is shoring (unintelligible).

Mr. Neito – That may be your opinion sir and if I may add, and I'm speaking now, this board treats everyone in front of it with respect. I don't want to hear anymore about accusations of intimidation from you. And speak to us with respect. We have zero tolerance for anything else other that that.

Mr. Dollinger – Do you have a question that relates to the building?

Mr. King – Yes I do.

Mr. Dollinger – Can I have your name?

Mr. King – Yes I'm Peter King.  What is this and what was the building?

Ms. Crabb – We don't have a photograph of what it was before.

The board wants to see a picture of what the building looked like before any work was done.

There were no people to speak for this application.

When the Chairperson asked if there was anyone present that would like to speak against this appeal the following individuals spoke:

Michael Gabor, 297 Grand Street, Newburgh NY
Mr. Gabor produced a picture of 96 Broadway from many years ago.  Mr. Gabor also stated that he would like the ARC to look at the property file for this property. He believes there is a letter in it from October or November of 2005 that the board should look at.

Brian Flannery, 5 Norton, Newburgh, NY
Mr. Flannery think's it is great that we seek the publics input.  He would also like to know if this will require a parking or area variance.

Barbara Smith, 345 Powell, Newburgh, NY
Wants to know if Mr. Dollinger was aware that there was an ARC or does he believe he is above the law and can do whatever he wants to do?

Maryann Prokosch, 22 Galloway Ave, Newburgh, NY
Many bizarre changes to the exterior of the building.  It looks like there is going to be a large window on the second floor.  Should he have had an extensive, special building permit for what he has done.
If the building has been vacant for more that 6 months they may need a variance for their setbacks.

Art Valensic, Newburgh, NY
Is it an historic building? And why is it being altered so much?

John Lonczak, Newburgh NY
Thinks board should investigate how this got so far with no one doing anything. The building is right across from City Hall within the eyesight of the City Manager. If this building is in violation of so many things how did it get so far out of hand so many months and how can we avoid this in the future.  At this point everyone has a black eye.

Ms. Crabb stated that based on the magnitude of this she was going to keep the public hearing open.  Mr. Cummings did you find anything in the property file.

Mr. Cummings – Nothing from '05.

Ms. Kelson – At this point in time what I would suggest is putting aside the how and the why and maybe using the application that is before you to gleam some additional information from the applicant to determine whether or not you can move this application forward. Now on page 2 of the application under description of work the applicant lists an addition, alterations, repairs, doors, roof, windows, steps, clock finials, columns, decorative cornices, beige and white paint. So I think we can craft some intelligent questions using these points to find out exactly what the applicant plans to do with the property. For example, you have listed an addition. Can you please tell me what addition you are making to this building?

Ms. Crabb - May I ask one question before you go on? Does this have to go before the Zoning Board?

Ms. Kelson – I don't know enough about the application and at the first instance it's not my call as counsel.

Mr. Dollinger - The clock was purchased in Australia. I think it will enhance the city. It lights up. The addition is to the rear portion of the building. The design was taken from a church and we want it to conform with what was there. We thought it would enhance the block. There is no change to the footprint of what is there. They bought the lot behind for parking. Are providing handicap access in two places. Did you have another question?

Ms. Kelson – Can you explain to us what part of the exterior of the property needed to be repaired and how you plan to repair them?

Mr. Dollinger – The building had some sort of molding on the lower portion. Because of that the brick veneer became wet and started to crumble. To fix this we were hoping to put foundation stone in its place because there is no way to bring that brick back to life. After that they would do the cornice. Then replace windows with 4 over 4 energy efficient.

Ms. Lonczak – Replace. Not move.

Ms. Dollinger – There are two windows. If you look at the center peak of the turret there is one window there that someone a long time ago replaced and moved the window and it just doesn't look right. So we have extra brick and align the windows so it is straight.

Ms. Lonczak – You added all the windows at the top.

Mr. Dollinger – Yes. The windows at the top will all be added but it's not without reason. It's because the existing windows on the Liberty side have not lined up. They changed them and shifted them to the left.

Ms. Lonczak – You said the windows are 4 over 4. The original windows were 1 over 1.

14

Ms. Crabb – In this old picture they were 1 over 1. I don't know what was there before he started.

Mr. Dollinger – And the question is does it enhance or does it take away from the view?

Ms. Crabb – Well it's the historical district.

Mr. Dollinger – It is not a historical building.

Ms. Lonczak – It is an historical building and in the 1980's.

Everyone was talking over each other.

Ms. Crabb – You know there is no sense continuing this if we cannot talk to each other intelligently and with respect. I refuse to have somebody talking to my Commission like this. I suggest we table this tonight. Get the appropriate photographs and the necessary information we need to act on this.

Mr. King – Are we taking a position on lead agency?

Ms. Kelson – No. You would be responsible for doing your environmental review. So for the purposes of reviewing the…

Mr. King – I think this is an action. I would come out with a negative declaration.

Ms. Kelson – I think your putting the cart before the horse. You don't even know what the full extent of the renovations are.

Mr. King – I've seen it. I've seen what already occurred and if this were under the Secretary Standards the rehab obviously would not be acceptable.

Ms. Kelson – You would not negative dec. I think again your putting the cart before the horse.

Ms. Lonczak – Did you know you had to come before the ARC?

Mr. Dollinger – I obtained the permit (unintelligible) as Mr. Cummings told you they did not notify us.

Mr. Crabb – Answer her question. Did you know you had to come before the ARC? Did you have an idea?

Mr. Dollinger – If I knew I had to come before the ARC do you think I would have taken a half a million dollars out of my own pocket and let it sit there. What is the plan here? I am sitting here trying to make money for you.

Everyone started talking over each other.

Ms. Crabb – I'm not going to tolerate this.

Ms. Lonczak – One other question.  Have you done anything like this before in a historic district?

Everyone started arguing

Ms. Crabb – At this time I'm going to table this application.  I need a motion to table this application.

A motion to table the application was made by Mr. King and seconded by Mr. Neito.

The motion was passed with a vote of 7-0.

Ms. Crabb – Notion to adjourn?

Mr. Trunzo made the motion.
Mr. King 2nd.
All in Favor

Meeting adjourned at 10:00 p.m.


Respectfully submitted,


Nancy Evans
Secretary

**EXHIBIT "29"**

E-mail this story | Printable version | Talk about it

*June 14, 2002*

## Newburgh, museum strike deal to end sign dilemma

By Wayne A. Hall
Times Herald-Record
whall@th-record.com

Newburgh – Tempest in a teacup or scandalous damage to Newburgh history?

The name "Newburgh Savings Bank" high on the stone facade of one of the city's grand old buildings [built in 1920] was filled in with cement so a new sign could cover the old letters.

Not just any new sign, but one announcing the Karpeles Manuscript Museum, which displays some of the most historic words ever written and is now a landmark of its own in the bank at 94 Broadway, right across from City Hall.

Yesterday, a two-year legal battle between city officials and David Karpeles over whether he violated city rules by filling in the letters was almost over and city officials were talking about what a great asset the museum has become.

A deal struck in City Court paves the way for Karpeles to finally get up his sign – two years after he landed here – to tastefully broadcast his museum's name from the facade in bronze letters.

Gerry Sanchez, a restorer of Newburgh buildings, will send an expert aloft in a lift armed with miniature scraping tools to see if the cement can be removed without damaging the building. He'll just test one letter. If it works, the city agrees to pay Sanchez's Polonia restoration company about $4,000.

Karpeles agrees to fix his bronze letters on bronze extenders out from a metal backing that will be bolted to the building and easily unbolted should he ever leave town.

And if the cement won't budge? "If the test doesn't turn out we're back to square one, but it sounds very promising," said Karpeles.

Whatever happens, though, Karpeles is getting a much warmer embrace from city officials than he did when another city manager was in charge, City Hall insiders say.

"I think it was a tremendous asset to the city to have the Karpeles Museum located here," said City Manager William Ketcham. "And not just a great resource to see the collection as it cycles through but also Karpeles has been very supportive of a great many community events."

Right now, the museum is showing a poignant display from the World Trade Center collapse. And, "just last weekend, he hosted the opening of Newburgh for Newcomers," which included potential homeowners and investors, Ketcham said.

"It's rather a shame this fundamental misunderstanding happened," Ketcham said. "I'm very hopeful everyone can work together resolving the problem."

The city's Architectural Review Board said they never gave Karpeles permission to fill in the letters. Karpeles, though, obtained a permit. City officials said they may have goofed in giving it to him but had assumed he wasn't going to fill in the letters.

Copyright 2002 Orange County Publications, a division of Ottaway Newspapers Inc., all rights reserved.

**EXHIBIT "30"**





**EXHIBIT "31"**







**EXHIBIT "32"**



STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
============================================X

THE CITY OF NEWBURGH,

                    Plaintiff,

     -against-

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

                    Defendants,
============================================X

<u>SUMMONS</u>

Index Number:
Assigned Judge:

TO THE ABOVE-NAMED DEFENDANTS:

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorneys, TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC, within 20 days after the service of this summons, exclusive of the day of service or within 30 days after the service is complete if this summons is not personally served upon you within the State of New York; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated:   Newburgh, New York
          June 21, 2007

                       Yours, etc.,
                       TARSHIS, CATANIA, LIBERTH,
                       MAHON & MILIGRAM, PLLC

            By:
                       Steven I. Milligram, Esq.
                       Attorneys for Plaintiff
                       One Corwin Court
                       P.O. Box 1479
                       Newburgh, New York 12550
                       Tel. No. (845) 565-1100

TO:

Douglas R. Dollinger, Esq.
96 Broadway, LLC
96 Broadway
Newburgh, New York 12550

STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
=============================================X
THE CITY OF NEWBURGH,

                          Plaintiff,                          VERIFIED COMPLAINT

        -against-                                             Index Number:
                                                              Assigned Judge:

96 BROADWAY, LLC, and
DOUGLAS R. DOLLINGER

                          Defendants,
=============================================X

        Plaintiff, THE CITY OF NEWBURGH, by its attorneys, TARSHIS, CATANIA,

LIBERTH, MAHON & MILLIGRAM, PLLC, complaining of the above captioned defendant

respectfully alleges upon information and belief as follows:

                      **Identity of the Parties**

        1.  Plaintiff, THE CITY OF NEWBURGH (CITY) is a municipal corporation

organized and existing under the laws of the State of New York located at 83 Broadway, City of

Newburgh, County of Orange, State of New York.

        2.  Defendant 96 BROADWAY, LLC is a domestic limited liability company

organized and existing under the laws of the State of New York with a principle place of

business at 96 Broadway, City of Newburgh, County of Orange, State of New York and an

address registered with the New York State Secretary of State for service of process at:

Presidential Services, Inc. 23404 W Lyons Ave., #223, Santa Clarita, CA, 91321-2668.

        3.      Defendant DOUGLAS R. DOLLINGER ("DOLLINGER") is a natural person

and, upon information and belief, an attorney admitted to practice law by the State of New York.

DOLLINGER'S record address with the New York State Office of Court Administration in 96 Broadway, City of Newburgh, County of Orange, State of New York. DOLLINGER'S attorney registration number is 2354926 and the registration appears to be current, the next biennial registration period being due in May of 2008.

### Venue

4.    Plaintiff designates Orange County as the place of trial. The basis of the venue is based on the location of the real property in Orange County.

### Relief Requested

5.    The relief requested in this action is emergent in nature and therefore has been commenced by filing this action and has come before this Court by Order to Show Cause.

6.    The CITY seeks by way of this proceeding, it be ordered and adjudged that:

1)    Defendants immediately protect and secure the subject premises located at 96 Broadway, City of Newburgh, State of New York by weather sealing the premises and securing all windows, doors and other openings in the premises against the elements and weather in a good and workman like manner; and

2)    Defendants, in accord with Article V, §300-28(C)(2) of the City of Newburgh Code, restore the condition and appearance of the subject premises and its site to *status quo ante*; and

3)    Defendants strictly comply with Article V of the City of Newburgh Code; and

4)    Pending the issuance of final relief herein, defendants be restrained from performing any further work of any kind on the subject premises aside from

protecting and securing the premises in conformity with the stop work order issued by plaintiff; and

       5)     Plaintiff have such other and further relief as to this Court may seem just, proper, and equitable including reasonable attorney fees, disbursements and court costs incurred in this action.

### General Averments Common to All Counts

7.  Upon information and belief, defendant DOLLINGER claims an ownership interest in the premises located at 96 Broadway, City of Newburgh, County of Orange, State of New York (Section 30, Block 5, Lot 22)(the "Premises").

8. Upon information and belief, defendant 96 BROADWAY, LLC claims an ownership interest in the Premises.

9.  Upon information and belief, DOLLINGER is a member of or claims to have an ownership interest in 96 BROADWAY, LLC, and/or claims to be the attorney for same.

10.     On or about January 17th, 2006, DOLLINGER completed, signed and filed with the Building Inspector's Office for the City of Newburgh an application for a Building Permit regarding the Premises (the "Application"). A copy of the application is annexed as Exhibit "B".

11.     At page 2 of the Application, the work to be performed is generally described as 'the alteration of an existing use hybrid commercial and residential structure by adding an additional 1,000 square feet of space.' Exhibit "B".

12.    In response to item 7 of the application, the applicant denies that the proposed work violates any zoning law or ordinance. Upon information and belief this was an incorrect statement since Article V of the Code of the City of Newburgh requires Architectural Review

Commission oversight and approval, including the issuance of a Certificate of Appropriateness

for the proposed exterior renovations. *See*, Exhibit "A"; Exhibit "B".

13.    At page 6 of the application there is a request that the applicant state whether

certain pre-conditions to the issuance of the permit are required and if so whether that applicant

has complied with those pre-conditions. Exhibit "B" at page 6.

14.    There is, among other things, an entry in the list of pre-conditions for "Historic

Review". That, and all other entries, has been left blank by the applicant. By omission, the

applicant has represented there are no pre-conditions, including Historical Review, for the

issuance of the Building Permit.

15.    This is an incorrect statement of fact and law by the applicant since Article V of

the Code of the City of Newburgh requires Architectural Review Commission oversight,

including the issuance of a Certificate of Appropriateness for the proposed exterior renovations.

16.    At page 7 of the Application, there is space provided for signature of the

Applicant under the following statement in relevant part:

> Application is hereby made to the Building Inspector of the City of
> Newburgh for the issuance of a Building Permit pursuant to the
> New York State Uniform Fire Prevention and Building
> Construction Code for the construction of buildings, additions or
> alterations . . . the applicant agrees to comply with all applicable
> laws, ordinances and regulations. Applicant further agrees that the
> City of Newburgh Building Inspector or his designate will be
> permitted to perform periodic inspections of this property to insure
> that work is being performed according to these codes, ordinances
> and regulations. It is understood by the applicant that if work is not
> performed according to codes, ordinances, or regulations, any
> permit that has been issued by the Building Inspector may be
> withdrawn and an order to stop work issued.

*See*, Exhibit "B" at page 7.

17.    Upon information and belief DOLLINGER signed the application where provided under the above statement as the applicant and owner and on behalf of 96 BROADWAY, LLC.

18.    There is a section to be filled in if the applicant is other than the Owner. This section was left blank by the applicant. Exhibit "B" at page 7.

19.    On or about January 25th, 2006 then City of Newburgh Building Inspector William Cummings wrote to the defendants acknowledging that the Application and certain plans had been received and reviewed by Architect Wheldon A. Abt. A copy of that letter is annexed to the Complaint as Exhibit "C". Ostensibly, Mr. Abt was acting as an independent contractor designated by the Building Inspector to, *inter alia*, review certain building permit applications. The letter specifically requested a preliminary meeting to discuss the Application.

20.    Mr. Abt's comments were enclosed with the said letter to the defendants. Among other things, Mr. Abt specifically identified that the Premises may be a Historic Building subject to Historical review. *See*, Exhibit "C". Mr. Abt further noted that the project documents did not "sufficiently address compliance with the code". Id. A preliminary meeting was scheduled for February 14th, 2006.

21.    On or about February 3rd, 2006 the defendants' architect, Eric Knute Osborn, wrote to the Building Inspector seeking permission to being roof repair due to a leaking roof. Accordingly, the Building Inspector issued a Building Permit for roof repair only on February 6th, 2006. A copy of the Knute-Osborn letters and the roof only Building Permit ("Roof Permit") are annexed as Exhibit "D".

22.    The aforementioned preliminary meeting was in fact held on or about February 14th, 2006. Minutes from that meeting are annexed hereto as Exhibit "E".

23.     Significantly, the minutes reflect that concerns were expressed that the City of Newburgh Historic requirements would prevent the proposed exterior renovations and re-construction. *See*, Exhibit "E". It was specifically noted that there was a "need to go to the Historic Review Board". *See*, Exhibit "E".

24.     Therefore the defendants were on actual notice as early as February 14th, 2006 that the proposed exterior renovations and re-construction to the Premises required oversight by the Historic Review Board.

25.     However the defendants did not take the proposed exterior renovations on the Premises to the ARC and apparently took no steps to ensure compliance with Article V of the City of Newburgh Code as they agreed to do in the building permit application.

26.     Rather, the defendants submitted "revised plans" to the Building Inspector dated February 27th, 2006. In response, Architect Abt issued a review dated March 22nd, 2006 and a Building Permit dated March 24th, 2006 was issued for the "revised work shown on the plans and subject to addressing comments on the March 22[nd] review by Abt. A copy of the said permit with Abt's comments attached is annexed as Exhibit "F".

27.     It should be noted that there is a handwritten notation on the March 24th, 2006 Permit which states: "No exterior changes until ARC approval as per Bill Cummings 5-8-06."

28.     On or about May 2nd, 2006 a stop work order was issued by the City of Newburgh Building Inspector on that grounds that, *inter alia*, the work being done to the exterior was being performed in violation of section 300-26A of the City Code since ARC approval for the exterior changes had not been obtained and for violation of section 122.12 of the City Code since the work being performed ostensibly exceeded the scope of the March 24th, 2006 building permit. Copies of the said stop work orders are annexed hereto as Exhibit "G".

29.     On or about May 8th, 2006 an order lifting the May 2nd order to vacate was issued by the Building Inspector on the basis that "an agreement had been reached with Cummings, Crab, Dollinger and Terwilliger." This document is annexed hereto as Exhibit "H".

30.     Upon information and belief the gravamen of the agreement was that the building would be secured and protected, that interior work could continue, but that no further exterior work would take place on the premises until a Certificate of Appropriateness was issued by the City of Newburgh ARC approving the proposed alterations or some modification of same. *See*, Exhibit "F". Indeed, a building permit dated May 13th, 2006 was issued for the purpose of "re-construction and scaffolding" only. *See*, Exhibit "I".

31.     Nevertheless, the defendants continued with exterior work on the premises in contravention of the Building Inspector's directions. Therefore, a stop work order was issued by the Building Inspector on or about June 2nd, 2006. A copy of that order is annexed as Exhibit "J".

32.     It is noted that on or about June 6th, 2006 a meeting was held between Bill Cummings, City Engineer Mike Lamoreaux, Code Officer Terwilliger, and DOLLINGER to discuss what had to be done in order to have the stop work order lifted. *See*, June 6th, 2006 Inspection Record annexed as Exhibit "K".

33.     Upon information and belief, DOLLINGER was again instructed of the requirement that the proposed exterior renovations of the Premises be reviewed by the ARC and that a Certificate of Appropriateness be obtained before the exterior work could continue.

34.     Indeed, on or about June 2nd, 2006 an application was submitted to the ARC by DOLLINGER vis-à-vis the Premises. A copy of the Application is annexed as Exhibit "L".

35.    The application indicates that the work to be done generally includes "addition, alterations, repair, doors, roof, windows, steps, clock, finials, columns, decorative cornices, beige and white paint." *See*, Exhibit "L".

36.    DOLLINGER signed the application as the owner thereby acknowledging his understanding and agreement that no work would commence on the Premises until written approval has been given by the ARC and the Building Inspector. *See*, Exhibit "L".

37.    On June 13th, 2006 a meeting of the City of Newburgh Architectural Review Commission was conducted. The application for the Premises was put on the ARC agenda for a public hearing. *See*, Exhibit "M" (June 13th, 2006 ARC Meeting Minutes).

38.    DOLLINGER appeared on behalf of 96 BROADWAY, LLC as the applicant.

39.    By review of the Minutes it is apparent that DOLLINGER approached this process with a hostile, oppositional and a generally obstreperous attitude.

40.    Indeed, the ARC application was ultimately tabled at this meeting because of DOLLINGER'S behavior and inclination to argue with the ARC members.

41.    At that same meeting, Inspector Bill Cummings gave a brief overview of the 96 Broadway project and noted specifically that the owner's representative was advised that the project had to come before the ARC during the Building Permit application process. *See*, Exhibit "M" at page 12. However, Mr. Cummings admitted that the permit was issued without ARC approval because he "missed that notice". Mr. Cummings noted that when it was determined that no ARC permit had issued a stop work order was issued and DOLLINGER agreed to cease exterior work and come to the ARC for approvals. *See*, Id.

42.    DOLLINGER denied knowing that ARC approval was a pre-condition to the commencement of exterior renovations stating in sum and substance "If I knew I had to come before the ARC do you think I would have taken a half-million dollars out of my own pocket and let it sit there?" *See*, Exhibit "M" at page 15.

43.    DOLLINGER thereafter submitted a letter dated June 26th, 2006 (Exhibit "N") noting that his representative Brian Maximo Blake would appear at the next ARC meeting on July 11th, 2006.

44.    Indeed, Mr. Blake appeared at the July 11th, 2006 ARC meeting. A copy of the minutes from that meeting are annexed as Exhibit "O".

45.    As the owner's representative, Mr. Blake continued the oppositional tone by disputing the building was "historic" stating that the Premises was a "ruined building". *See*, Exhibit "O".

46.    Michelle Kelson, Assistance Corporation Counsel for the City of Newburgh, informed Mr. Blake that the Premises was listed on the National Register of Historic Places and had been so listed since 1985. *See*, Exhibit "O".

47.    The ARC held the meeting open in order to solicit further information from the Owner and from the City Building Inspector. Id.

48.    The project Architect, Mr. Knute-Osborn, appeared before the ARC at its October 11th, 2006 meeting.[7] *See*, Exhibit "P" (October 11th, ARC meeting minutes). Id.

49.    The ARC expressed clearly to Mr. Knute-Osborn that the proposed exterior renovations were completely at odds with the historical character of the original building and the neighborhood. The proposal was, simply put, not appropriate. *See*, Exhibit "P".

---

[7] It should be noted that the subject Premises appeared on each monthly agenda of the ARC but only those meetings where the owner or one of its representatives appeared are discussed here.

50.    Mr. Knute-Osborn offered to take away "a lot of the gaudy details". Exhibit "P".

51.    The ARC voted to table the application while the applicant consulted with professional and historic resources to submit a design proposal which did not jeopardize the Premises as a contributor to the Historic District in the National Register of Historic Places. Id.

52.    Following the October 11th, 2006 ARC meeting, ARC Chairperson Mary Crabb wrote to DOLLINGER by letter dated October 27th, 2006. *See*, Exhibit "Q".

53.    In that letter, Ms. Crabb advised DOLLINGER of the outcome of the October ARC meeting and generally described what had to be done in order to move the application ahead together with an admonition that any work on the Premises would require a building permit. Exhibit "Q".

54.    However, neither DOLLINGER nor 96 BROADWAY, LLC has taken any of the steps required to move their application ahead, nor have either re-applied for any building permits of any kind.

55.    In fact, upon information and belief, nothing has been done with respect to the Premises in over a year. The Premises are unsecured, unprotected and remain exposed to the elements and to trespassers.

56.    Annexed hereto as Exhibit "R" is a February 23rd, 2007 letter by Nancy Billman, President of the Newburgh Preservation Association. In that letter, Ms. Billman described the condition of the Premises as "embarrassing, if not dangerous." *See*, Exhibit "R".

57.    The owner, through its representative Maximo Blake, held an informal work session with the City to address the ongoing problem of the half-demolished, weather exposed and unsecured Premises on April 9th, 2007.

58.    Mr. Blake sent a memorializing letter following this informal meeting. *See*, Exhibit "S". Among other things, Mr. Blake acknowledged on behalf of the owner the need to immediately secure, protect and weather seal the Premises.

59.    Assistant Corporation Counsel Kelson replied to Blake by letter dated April 19th, 2007 clarifying that while the City would allow some flexibility in design, the final designs would be subject to ARC approval in accord with the City Ordinances governing exterior renovation to Historic Premises. *See*, Exhibit "T".

60.    By that same letter, Ms. Kelson directed an appearance by a representative of the owner for the next ARC meeting scheduled for May 8th, 2007. Id.

61.    However, neither DOLLINGER, nor Maximo Blake nor Knute-Osborn nor anyone else purporting to be affiliated with the project appeared at the May 8th, 2007 ARC meeting. A copy of the minutes is annexed hereto as Exhibit "U". On the failure to appear, the ARC denied the application and voted to take action to secure and protect the Premises. *See*, Exhibit "U".

62.    Photographs showing the Premises in 2005 prior to the demolition, and in 2006 and 2007 are annexed hereto as Exhibit "V". The photographs show the illegal exterior renovations as well as the present unsecured, unprotected and weather exposed condition of the Premises.

63.    In conformity with the above documented adversarial and oppositional course of conduct, rather than move to protect the Premises and comply with the ARC process, DOLLINGER sent to the City a letter which has been annexed hereto as Exhibit "W".

64.    In his June 8th, 2007 letter, DOLLINGER sent to the CITY a bill for

$784,000.000 based upon certain claimed-published mistakes the Building Inspector as well as

certain unspecified violations of Constitutional and Statutory Rights. *See*, Exhibit "W".

65.    In that letter, DOLLINGER states that he has "elected to restore the building to its

former appearance". Id. While the CITY has no objection to this plan of action in principle, and

indeed affirmatively seeks such relief herein, DOLLINGER'S unilateral declaration that "work

will begin on June 21, 2007" without obtaining a building permit or ARC approvals for the work

is both unlawful and unacceptable. DOLLINGER'S brash plan has forced the CITY to seek

immediate relief by way of this application.

66.    It is respectfully submitted that there is a substantial danger of an immediate and

irreparable injury to the Premises, to the CITY and its interest in the preservation of the assets of

its Historic District. Specifically, if DOLLINGER makes good on his threat to press ahead with

work on June 21, 2007, the Premises may be damaged beyond repair and are in danger being lost

to History and to the City forever.

### AS AND FOR A FIRST CAUSE OF ACTION
**Defendants Must be Restrained from Working on the Premises and Must be Ordered to
Strictly Comply with the City of Newburgh's Codes and Ordinances**

67.    Plaintiff repeats, reiterates and re-alleges allegations 1-66 as though fully set forth

at length herein.

68.    Section 300-26(A) of the City of Newburgh Code states:

> Certificate required. No person shall carry out any exterior
> alteration, restoration, reconstruction, demolition, new construction
> or moving of a landmark, nor shall any person make any material
> change in the appearance of such a property, its light fixtures,
> signs, sidewalks, fences, steps, paving or other exterior elements
> visible from a public street or alley which affect the appearance

and cohesiveness of a district and its designated properties, without first obtaining a certificate of appropriateness.

City of Newburgh Code §300-26(A)[General Code, 2007]. Exhibit "A".

69.     The Premises are designated "a historic landmark" and appears in the City of Newburgh, East End Historic District in the National Register of Historic Places.

70.     There is no dispute that the defendants have proceeded with the demolition of the exterior of the Premises without first having obtained the requisite certificate of appropriateness from the City of Newburgh ARC.

71.     Therefore the defendants are in violation of City of Newburgh Code §300-26(A).

72.     Section 300-26(E) and (F) state in relevant part:

E. Prior to the commencement of any work requiring a certificate of appropriateness the owner shall file an application for such a certificate with the Commission.

F. No building permit shall be issued for such proposed work until a certificate of appropriateness has first been issued by the Commission. *The certificate of appropriateness required by this section shall be in addition to and not in lieu of any building permit that may be required by any other ordinance of the City of Newburgh.*

City of Newburgh Code §300-26(E),(F)[General Code, 2007](emphasis supplied). Exhibit "A".

73.     It is equally clear that the defendants failed to file an application for a certificate of appropriateness prior to the commencement of work and that the certificate of appropriateness is in addition to, not in lieu of any building permit required under other ordinances of the City. Thus, the defendants may not argue that they were entitled to proceed based upon the March 2006 permit issued by Inspector Cummings.

74.     Section 300-28(A) of the City of Newburgh Code states:

Enforcement. All work performed pursuant to a certificate of appropriateness issued under this article shall conform to any

requirements included therein. It shall be the duty of the Building
Inspector to inspect periodically any such work to assure
compliance. In the event work is found that is not being performed
in accordance with a certificate of appropriateness, the Building
Inspector shall issue a stop-work order and all work shall
immediately cease. *No further work shall be undertaken on the
project as long as a stop-work order is in effect.*

City of Newburgh Code §300-28(A)[General Code, 2007](emphasis supplied).

75.     Section 300-28(A) clearly authorized the stop work orders issued by Inspector

Cummings. Those stop work orders remain in effect. Moreover, the threat by DOLLINGER to

begin work on the Premises on June 21st, 2007 is in direct contravention to the prohibition of

section 300-28(A) that no work shall be undertaken unless and until a certificate of

appropriateness is obtained from the ARC and until the stop work order is lifted by the Building

Inspector.

76.     The defendants have not yet obtained such certificate of appropriateness, nor has

the stop work order been lifted. Therefore the threat to begin work on June 21st is illegal and this

Court must restrain defendants from executing the threatened violation of law.

## AS AND FOR A SECOND CAUSE OF ACTION

### Defendants Must Be Compelled to Immediately Secure and Protect the Premises And to Restore the Exterior of the Premises to Status Quo Ante

77.     Plaintiff repeats, realleges and reiterates allegations 1-76 as though fully set forth

at length herein.

78.     The defendants must, as a matter of law, be compelled to secure and protect the

Premises without delay.

79.     Section 300-28(B) of the City of Newburgh Code states in part:

Maintenance required. Nothing in this article shall be construed to
prevent the ordinary maintenance and repair of any exterior

architectural feature of a landmark or property within a historic district which does not involve a change in the design, material, color, or outward appearance. *No owner or person with an interest in a designated property shall permit the property to fall into a serious state of disrepair so as to result in the deterioration of any exterior architectural or historic feature which would, in the judgment of the Commission, produce a detrimental effect upon the character of a historic or architectural district as a whole or the life and character of a landmark.* Examples of such deterioration include:

(1)   Deterioration of exterior walls or other vertical supports;

(2)   Deterioration of roofs and other horizontal members;

(3)   Deterioration of exterior chimneys;

(4)   Deterioration or crumbling of exterior stucco or mortar;

(5)   Ineffective waterproofing of exterior walls, roofs, or foundations, including broken windows or doors; and

(6) Deterioration of any features so as to create a hazardous condition which could lead to a claim that demolition is necessary for the public safety.

City of Newburgh Code §300-28(B)[General Code, 2007](emphasis supplied).

80.    The ARC determined at its May 2007 meeting that the Premises being unsecured, unprotected and open to the elements amounted to such a serious state of disrepair that immediate steps were required to protect the Premises voting that "the City take the necessary steps to secure and protect 96 Broadway and to hold the owner's of 96 Broadway accountable in full." *See*, Exhibit "U".

81.    Additionally, code compliance officers with the City of Newburgh have determined that the Premises are indeed in a state of disrepair as contemplated by the City Code.

82.    Section 300-28(C) of the City of Newburgh Code states in part:

> Any person who demolishes, alters, constructs or permits a designated property to fall into a serious state of disrepair in violation of this article shall be required to restore the property and its site to its appearance prior to the violation. An action to enforce this subsection may be brought by the City in any court of competent jurisdiction. This civil remedy shall be in addition to and not in lieu of any criminal prosecution and penalty.

City of Newburgh Code §300-28(C)(2)[General Code, 2007](emphasis supplied). Exhibit "A".

83.    Thus, City of Newburgh Code §300-28(C)(2) provides for the authority to direct the defendants to immediately secure and protect the Premises as well as to direct defendants to restore the Premises to *status quo ante*. Based upon the undisputed violations of City Code by the defendants, the Court has it well within its discretion to grant the requested relief.

**WHEREFORE**, plaintiff CITY OF NEWBURGH prays this Court order and adjudge that:

1)    Defendants, in accord with Article V of the City of Newburgh Code, immediately protect and secure the subject premises located at 96 Broadway, City of Newburgh, State of New York by weather sealing the premises and securing all windows, doors and other openings in the premises against the elements and weather in a good and workman like manner; and

2)    Defendants, in accord with Article V, §300-28(C)(2) of the City of Newburgh Code, restore the condition and appearance of the subject premises and its site to *status quo ante*; and

3)    Defendants strictly comply with Article V of the City of Newburgh Code; and

4)      Pending the issuance of final relief herein, defendants be restrained from performing any further work of any kind on the subject premises aside from protecting and securing the premises in conformity with the stop work order issued by plaintiff; and

5)      Plaintiff have such other and further relief as to this Court may seem just, proper, and equitable including reasonable attorney fees, disbursements and court costs incurred in this action.

Dated:   Newburgh, New York
         June 21, 2007

                              Yours, etc.,
                              TARSHIS, CATANIA, LIBERTH,
                              MAHON & MILIGRAM, PLLC

                    By: _____
                              Steven I. Milligram, Esq.
                              Attorneys for Plaintiff
                              One Corwin Court
                              P.O. Box 1479
                              Newburgh, New York 12550
                              Tel. No. (845) 565-1100



STATE OF NEW YORK COUNTY OF ORANGE
SUPREME COURT
================================================X
THE CITY OF NEWBURGH,

                          Plaintiff,

    -against-


96 BROADWAY, LLC, and                        Index Number:
DOUGLAS R. DOLLINGER

                     Defendants,
================================================X


## VERIFICATION

STATE OF NEW YORK        )
                        )ss.:
COUNTY OF ORANGE        )


    Michelle Kelson, Esq., being duly sworn, deposes and says:


    1.      I am assistant corporation counsel for the City of Newburgh, the plaintiff in the

within proceeding.

    2.      I have read the annexed complaint, I am familiar with the contents thereof, the

same are true to my knowledge, except those matters therein which are stated to be alleged upon

information and belief, and as to those matters I believe them to be true.

                                        Michelle Kelson, Esq.

Sworn to before me on the _21$^{57}$_

Day of ____June____, 2007.


_Donna M. Rickey_
NOTARY PUBLIC


FIRST DRAFT


DONNA M. RICKEY
Notary Public, State of New York
No. 01RI4705930
Residing in Orange County
Commission Expires April 30, 20__11__

**EXHIBIT "33"**



# CITY OF NEWBURGH

## OFFICE OF THE CITY MANAGER
City Hall - 83 Broadway, Newburgh, New York 12550
www.cityofnewburgh-ny.gov

jmcgrane@cityofnewburgh-ny.gov
Phone: (845) 569-7301
Fax: (845) 569-7370

Jean-Ann McGrane, Esq., M.S.
City Manager

June 29, 2007

Peter King
Three Central Avenue
Newburgh, NY 12550

Dear Mr. King:

I am pleased to re-appoint you to the City of Newburgh Architectural Review Commission. Your appointment is retroactive from January 1, 2007, and will end December 31, 2011. Please contact the City Clerk's Office at 569-7311 to schedule a time to be sworn in.

Thank you for your willingness to serve the people of the City of Newburgh with this important work.

Sincerely,

Jean-Ann McGrane
City Manager

*I am so glad you are willing to continue with the Commission.*

JAM/ee

Cc:    Mayor Nicholas Valentine
       Councilwoman Regina Angelo
       Councilman George Bowles, Jr.
       Councilman Salvatore Cracolici
       Councilwoman Mary Ann Leo-Dickinson
       Mary Crabb, ARC Chairwoman
       Lorene Vitek, City Clerk
       Steve Hunter, Code Compliance Supervisor
       Michelle Kelson, Assistant Corporation Counsel

**EXHIBIT "34"**



# City of Newburgh
## Office of the City Manager

Jean-Ann McGrane, Esq., M.S.
City Manager

Courtney Kain
Special Projects Coordinator

City Hall – 83 Broadway
Newburgh, New York 12550
Tel. (845) 569-7301
Fax (845) 569-7370

Elizabeth Evans
Executive Assistant

Ann Kuzmik
Administrative Assistant

Eileen C. Simonelli
Confidential Secretary

April 30, 2007

Mr. Michael Gabor
297 Grand St.
Newburgh, NY 12550

Dear Mr. Gabor:

I am pleased to notify you of your appointment to the City of Newburgh's Arts and Cultural Commission. Your appointment is effective immediately and will continue until February 14, 2008. Please contact the City Clerk's Office at 569-7311 to schedule a time to be sworn in.

The Arts and Cultural Commission meets regularly on the second Wednesday of every month, 7:00 p.m. at Newburgh Performing Arts Academy, 62 Grand Street. For more information regarding the commission's current activity please visit: http://cityofnewburgh-ny.gov/arts/acc-goals.htm

Also, we would like to formerly recognize you on May 14th, 7pm at our regularly scheduled council meeting. Thank you for your willingness to serve the people of the City of Newburgh in this important work.

Sincerely,

JEAN-ANN MCGRANE
City Manager

Cc: Mayor Nicholas Valentine
    Councilwoman Regina Angelo
    Councilman George Bowles
    √ Councilman Salvatore Cracolici
    Councilwoman Mary Ann Leo Dickinson
    Lorene Vitek, City Clerk
    Geoffrey Chanin,  Corporation Counsel
    Kevin White, Chairperson
    Doris Perez, Secretary

## PROOF OF SERVICE

STATE OF NEW YORK   )

COUNTY OF NEW YORK)

    I maintain my offices in the City of Newburgh, County of Orange, State of New York. I am over the age of 18 and not a party to these proceedings.   My business address is 96 Broadway, City of Newburgh, Newburgh, New York 12550.

    On October 19, 2007, I served the forgoing documents: MOTION FOR DISMISAL OF PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(B) (6) * MEMORANDUM TO DISMISS PLAINTIFF'S PURSUANT TO FRCP 12(b)(6) * MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND * DOLLINGER's AFFIDAVIT and EXHIBITS.

### *** PLEASE SEE ATTACHED SERVICE LIST***

**X  VIA OVERNIGHT MAIL:**

    By delivering such documents to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express courier addressed to the person(s) on whom it is to be served.

_____ **VIA U.S. MAIL:**

    By depositing a sealed envelope containing the above-cited document with the U.S. Postal Service on _____ with postage thereon fully paid at the local post office in Newburgh, New York.

_____ **VIA PERSONAL DELIVERY:**

    By personally delivering such sealed envelope by hand to the offices of the addressee pursuant to the applicable law

**VIA FACSIMILE:**

    By facsimile transmission where a report was generated indicating that the transmission was completed to the number indicated on the report without error.

    I declare under penalty of perjury under the laws of the United States of America that the above is true ad correct and I declare that I did so at the direction of the member of the bar of this Court at whose direction the service was made.

    Executed this 19th day of October 2007, City of Newburgh, County of Orange, State of New York.

                        EDWARD McCARTHY

Subscribed and sworn to before me
this 19th day of Oct. 2007
_____
Notary Public

SIXTO SANJUAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SA6158573
Qualified in Dutchess County
My Commission Expires January 02, 2011

1
2

<u>SERVICE LIST</u>

3

<u>96 Broadway etal., Case No.: 07cv 7419 (SCR) (MLF)</u>

4
5

TARSHIS, CATANIA, LIBERTH, MAHON & MILIGRAM, PLLC
Attorneys for Plaintiffs

6

One Corwin Court
P.O. Box 1479

7

Newburgh, New York 12550
Tel. No. 845.565.1100

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(845) 562-9601

(888) CIVIL Law

FAX
(845) 562-9602

CATHY BRENNAN
ADMINISTRATIVE ASSIS

*Counselor at Law*

*Admitted to Both
State & Federal Practice*

*96 Broadway
City of Newburgh
Newburgh, New York 12550
www.ddollingerlaw.com*

October 19, 2007

Honorable Stephen C. Robinson
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601
Attn.: Mr. Andrew Krause

Re:

City of Newburgh vs. 96 Broadway, et al.
Case No.: 07 cv 6419(SCR) (MLF)

Dear Mr. Krause:

Pursuant to the case management schedule agreed to before the Court on September 7, 2007, enclosed are courtesy copies of the following pleadings:

(1)    Motion For Dismissal of Plaintiff's Complaint Pursuant to FRCP 12(b)(6).
(2)    Memorandum to Dismiss Plaintiff's Pursuant to FRPC 12(b)(6).
(3)    Memorandum in Opposition to Plaintiff's Motion for Remand.
(4)    Dollinger's Affidavit and Exhibits in support and opposition of the Motions.

Thank you for your attention to this matter.

Truly yours,

Douglas R. Dollinger

DRD/dn
Encls.
Cc Tarshis, Catania, Liberth, Mahon & Milligram, PLLC