**EXHIBIT "E"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

96 BROADWAY LLC, its members, DOUGLAS R. DOLLINGER, MICHAEL MOLUS and CAROL MOLUS,    DOUGLAS R. DOLLINGER, and THE LAW OFFICES OF DOUGLAS R. DOLLINGER, individually and others so similarly situated,

                              Plaintiffs,

          vs.

THE CITY OF NEWBURGH, NICHOLAS VALENTINE, in his capacity as Mayor of the CITY OF NEWBURGH, THE NEWBURGH CITY COUNCIL its Council persons, REGINA ANGELO, GEORGE BOWLES, SALVATORE CRACOLICI, MARYANN DICKINSON in their capacity as members of THE NEWBURGH CITY COUNCIL, SALVATORE CARCOLICI individually , JEANNE McGRANE as NEWBURGH CITY MANAGER and individually, THE NEWBURGH CITY BUILDING DEPARTMENT,   WILLIAM CUMMINGS as former Building Inspector for the CITY OF NEWBURGH and individually, THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, MARY CRABB as in her capacity as Chairperson, and individually, PETER KING in his capacity as a  as a member of THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, and individually, CORPORATION COUNSEL FOR THE CITY OF NEWBURGH, MICHELLE KELSON in her capacity as Assistant CORPORATON Counsel and individually, MICHAEL GABOR, JOHN DOEs 1-10 and JANE ROEs 1-10,  and NEWBURGHER's for ACCOUNTABILITY     in     GOVERNMENT, Defendants.

SUMMONS IN A CIVIL ACTION
Case No.:07CV

**07 CIV. 6689**

Copies for
Mayor Valentine
Mary Ann Dickenson
Peter King


RECEIVED
SEP 19 2007
CITY CLERK

The City Of Newburgh, The Newburgh City Council, Nicholas Valentine, Regina Angelo, George Bowles, Salvatore Cracolici, Maryann Dickinson. The Newburgh City Counsel, Salvatore Carcolici Individually , Jeanne Mcgrane individually, The Newburgh City Building Department, · William Cummins individually, The Newburgh City Architectural Review Commission, Mary Crabb, individually, Peter King individually, The Newburgh City Architectural Review Commission, And Individually, Corporation Counsel For The City Of Newburgh, Michelle Kelson individually: 83 Broadway Newburgh, New York 12550

Michael Gabor, John Does 1-10 And Jane Roes 1-10, and Newburgher's For Accountability In Government: 297 Grand Street, Newburgh, New York 12550.

YOU ARE HEREBY SUMMONED and required to serve on PLAINITFFS" ATTORNEY DOUGLAS R. DOLLINGER, ESQ., 113 Liberty Street, City of Newburgh, Newburgh, New York 125550 Tele.845. 562.9601- Fasc. 845.562.9602

an answer to the complaint which is served on you with this summons within 20 days after service of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of the Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

(By) DEPUTY CLERK

DATE

· 5 2007

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

07 CIV. 6689

Case No.:07CV

JUL 2 5 2007

USDC WP SDNY

## COPY

| | |
|---|---|
| 96 BROADWAY LLC, its members, DOUGLAS R. DOLLINGER, MICHAEL MOLUS and CAROL MOLUS, DOUGLAS R. DOLLINGER, and THE LAW OFFICES OF DOUGLAS R. DOLLINGER, individually and others so similarly situated, <br><br>                     Plaintiffs, <br><br>        vs. <br><br> THE CITY OF NEWBURGH, NICHOLAS VALENTINE, in his capacity as Mayor of the CITY OF NEWBURGH, THE NEWBURGH CITY COUNCIL its Council persons, REGINA ANGELO, GEORGE BOWLES, SALVATORE CRACOLICI, MARYANN DICKINSON in their capacity as members of THE NEWBURGH CITY COUNCIL, SALVATORE CARCOLICI individually , JEANNE McGRANE as NEWBURGH CITY MANAGER and individually, THE NEWBURGH CITY BUILDING DEPARTMENT, WILLIAM CUMMINGS as former Building Inspector for the CITY OF NEWBURGH and individually, THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, MARY CRABB as in her capacity as Chairperson, and individually, PETER KING in his capacity as a as a member of THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, and individually, CORPORATION COUNSEL FOR THE CITY OF NEWBURGH, MICHELLE KELSON in her capacity as Assistant CORPORATON Counsel and individually, MICHAEL GABOR, JOHN DOEs 1-10 and JANE ROEs 1-10, and NEWBURGHER's for ACCOUNTABILITY in GOVERNMENT, <br><br>                     Defendants. | COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTIVE RELIEF PLAINTIFFS' CIVIL RIGHTS COMPLAINT FOR VIOLATIONS OF PLAINTFFS' FOURTH, FIFTH and FOURTEENTH AMENDMENT RIGHTS UNDER U.S. TITLE 42 §§1983, 1985 (1)&(3) GUARANTEED TO PLAINTIFFS UNDER THE NEW YORK STATE CONSTITUTION <br><br> **TRIAL BY JURY DEMANDED** |

## PRELIMINARY STATEMENT

1.     This action seeks: (1) a temporary order from this Court restraining, enjoining and otherwise prohibiting Defendants, their agents, servants, employees or any others from illegally interfering with Plaintiffs vested rights and allowing Plaintiffs to complete the approved roof line of their building; (2) an order granting permanent injunction directing that a certain Building Permit issued to Plaintiffs by Defendants be reinstated; (3) that the accompanying "stop work orders" be vacated and that Plaintiff be allowed to complete the restoration of their building pursuant to their filed and approved building plans upon a finding from this Court that the actions of THE CITY OF NEWBURGH, NICHOLAS VALENTINE, in his capacity as Mayor of the CITY OF NEWBURGH, THE NEWBURGH CITY COUNSEL its Counsel persons, REGINA ANGELO, GEORGE BOWLES, SALVATORE CRACOLICI, MARYANN DICKINSON in their capacity as members of THE NEWBURGH CITY COUNSEL, SALVATORE CRACOLICI individually, JEANNE Mc GRANE as NEWBURGH CITY MANAGER, and individually, THE NEWBURGH CITY BUILDING DEPARTMENT , WILLIAM CUMMINGS as former Building Inspector for the CITY OF NEWBURGH, and individually, THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, MARY CRABB in her capacity as Chairperson, and individually, PETER KING in his capacity as a member of THE NEWBURGH CITY

ARCHITECTURAL REVIEW COMMISSION, and individually, CORPORATION COUNSEL FOR THE CITY OF NEWBURGH, MICHELLE KELSON in her capacity as Assistant Corporation Counsel and individually, MICHAEL GABOR, JOHN DOEs 1-10 and JANE ROEs 1-10, NEWBURGHER's for ACCOUNTABILITY in GOVERNMENT as direct policy makers or co-conspirators, under the color of law; (4) an award in monetary damages to Plaintiffs for having violated Plaintiffs' federal and state constitutional rights, by taking Plaintiffs' vested property interest in their building and the building permit issued for the premises located at 96 Broadway, City of Newburgh, County of Orange, State of New York and for other wrongful acts.

2.     Plaintiffs claim that Defendants have collectively engaged in invidious-unlawful conduct, or otherwise illegally conspired among themselves and acted to deny Plaintiffs the equal protection of the law in application of their due process rights because after implementing a policy-practice-custom and/or procedure wherein the CITY Building Department lawfully issued a building permit to Plaintiffs, the CITY Building Department, without a lawful purpose, reason or legal justification, but instead for entirely political pressures, and other illegitimate-improper reasons, under the color of law unlawfully revoked said building permit, wherein the CITY is requiring the Plaintiffs to restore the building-property to its former appearance so as to satisfy those asserting the political pressures-fears.

## JURISDICTION AND VENUE

3.    This Court has "federal question" jurisdiction in this case under 28 U.S.C. § 1331, as Plaintiffs have asserted claims arising under the laws of the United States and the U.S. Constitution.    Specifically, **(1)** a temporary restraining order and a permanent injunction **(2)** cause of action involves federal questions related to Plaintiffs' rights under the 4th , 5th  and 14th Amendments to the US Constitution, and violations of Plaintiffs' civil rights under Part II: 42 U.S.C. sec. 1983 (due process and equal protection clauses), **(3)** violations of Part III: 42 U.S.C. sec. 1985 (1) & (3) (conspiracy).

4.    Because Plaintiffs have asserted various claims arising under state law that form part of the same "case or controversy" as claims arising under federal law, this Court also has "supplemental jurisdiction" pursuant to 28 U.S.C. § 1367 involving **(4)** fraud by omission and nondisclosure, **(5)** common law conspiracy, **(6)** negligent infliction of emotional distress, and **(7)** intentional infliction of emotional distress, **(8)** abuse of process, **(9)** defamation, libel and slander.

5.    Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Defendants reside in this judicial district, and all events giving rise to this cause of action occurred in this judicial district.

## PARTIES

6.    Plaintiff 96 BROADWAY, LLC (hereafter from time-to-time "96 BROADWAY" or Plaintiffs) is a limited liability company incorporated in the State of New York.

7.    Plaintiff 96 BROADWAY, is a landowner and taxpayer in the City of Newburgh, County of Orange, State of New York.

8.    Plaintiff 96 BROADWAY's principle members are MICHAEL MOLUS, CAROL MOLUS and DOUGLAS R. DOLLINGER (hereafter from time-to-time collectively "Plaintiffs" or by their individual identities "DOLLINGER", "M. MOLUS" and "C. MOLUS").

9.    In particular, 96 BROADWAY owns the real property located at 96 Broadway, City of Newburgh, Orange County, New York and other properties located within the City, wherein said tax assessment, both individually and collectively, are well in excess of $1000.

10.    Plaintiff DOLLINGER is an attorney licensed to practice law before all of the Court of New York State and principle of the LAW FIRM DOUGLAS R. DOLLINGER & ASSOCIATES (hereafter from time-to-time the "FIRM").

11.    The FIRM is a Professional Corporation, incorporated in the State of New York with its principle offices presently located at 113 Liberty Street, Newburgh, Orange County, New York.

12.    Plaintiff DOLLINGER, individually as Principle and on behalf of the FIRM has a "special and vested interest" in the building and permits issued because the building was and is the proposed local Law Office of the FIRM, DOUGLAS R. DOLLINGER and ASSOCIATES, and because the FIRM and DOLLINGER are and have been directly impacted by the illegal actions of the Defendants, particularly by the loss of income in his, and the FIRM's, ability to maintain a law practice at 96 Broadway, Newburgh, New York and at any other location in the City of Newburgh, or other locations in Orange County, New York based on false allegation related to criminal conduct associated with the subject building permit issued in this matter.

13.    The CITY OF NEWBURGH (hereafter the "CITY" and from time-to-time the MUNICIPAL Defendant(s)") is a municipal corporation established pursuant to the provisions of § 20 of the General City Law and is the governmental body, that has been and is being used as a vehicle  for an illegal Enterprise and which has as a governmental body by and through it members known of the conspiracy with the CITY policy makers and other defendants herein, and acting under the color of law has illegally taken Plaintiffs' vested property rights in violation of Plaintiffs' 4th, 5th  and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

14.    The NEWBURGH CITY COMMON COUNCIL (hereafter the "CITY COUNCIL" and from time-to-time the "MUNICIPAL Defendant(s)") is the governing legislative body and has the powers and duties set forth in the General City Law and the Municipal Home Rule Law and is a governmental body that has been used as a vehicle for an illegal Enterprise and which has by its elected members conspired with the CITY policy makers to illegally take Plaintiffs' vested property rights under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process in the application of the law and has otherwise violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

15.    THE NEWBURGH CITY BUILDING DEPARTMENT (hereafter the "BUILDING DEPARTMENT" and from time-to-time the "MUNICIPAL Defendant(s)") is an arm of the CITY governing body and has the powers and duties set forth in the New York State building codes and other local code enforcement statutes and is a governmental body that has been used as a vehicle for an illegal Enterprise and which has by its members conspired with the CITY policy makers to illegally take Plaintiffs' vested property rights under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process in the application of the law and has otherwise violated Plaintiffs' civil

rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

16.  NICHOLAS VALENTINE (the "MAYOR" and from time-to-time a/the "MUNICIPAL Defendant(s)") is the duly elected Mayor of the City of Newburgh and is sued in his official capacity as Mayor of the CITY because as an elected official he has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required by Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

17.  REGINA  ANGELO,  ("ANGELO" and  from  time-to-time  a/the "MUNICIPAL Defendant(s)" ) is a member of the "CITY COUNCIL", and a policy maker and is sued in her official capacity as counsel person because as an elected official she has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

18.    GEORGE BOWLES, ("BOWLES" and from time-to-time a/the "MUNICIPAL Defendant") is a member of the CITY COUNCIL, and a policy maker and is sued in his official capacity as counsel person because as an elected official he has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

19.    SALVATORE CRACOLICI ("CRACOLICI" and from time-to-time a/the "MUNICIPAL Defendant(s)" and/or a "co-conspirator" and member of an illegal "Enterprise") is a member of the CITY COUNCIL, and a policy maker and is sued in his official capacity as counsel person CITY and individually as a co-conspirator and Enterprise member because he has acted individually, and in furtherance of an illegal Enterprise and as an elected official he has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

20.    MARYANN DICKINSON ("DICKINSON" and from time-to-time a/the "MUNICIPAL Defendant") is a member of the CITY COUNCIL, and a policy maker and is sued in her official capacity as counsel person CITY because as an elected official she has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

21.    JEANNE McGRANE is an attorney and is the NEWBURGH CITY MANAGER ("CITY MANANGER" or "McGRANE" and from time-to-time a/the "MUNICIPAL Defendant(s)" and "co-conspirator" and a member of an illegal "Enterprise"), and a policy maker sued in her official capacity as CITY MANAGER and individually as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

22.    WILLIAM CUMMINGS ("CUMMINGS" and from time-to-time the "MUNICIPAL Defendant(s) a "co-conspirator" and member of an illegal "Enterprise") is the former Building Inspector ("BUILDING INSPECTOR") for the CITY and a former policy maker sued in his official capacity as BUILDING INSEPCTOR and individually and as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

23.    THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, (hereafter the "ARC") is the governmental advisory commission to the CITY that has been used as a vehicle for the illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

24.    MARY CRABB ("CRABB" and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") is the Chairperson of the ARC and a policy maker sued in her official capacity as Chairperson and individually, and as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

25.    PETER KING ("KING" and from time-to-time a/the "MUNICIPAL Defendant(s)" a co-conspirator and member of an illegal "Enterprise") was from-time-to-time a member of the ARC and a policy maker sued in his official capacity as ARC member and individually, as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

26.     CORPORATION  COUNSEL  FOR  THE  CITY  OF  NEWBURGH (hereafter "CORPORATON COUNSEL" and from time-to-time a/the "MUNICIPAL Defendant(s)" and a "co-conspirator") is arm of the CITY government and the legal representative-advisor-prosecutor of its polices-practices-procedures and customs for the CITY of NEWBURGH that has been used by its appointed members as a vehicle to conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property under the color of law in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their due of the process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant under  Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

27.     MICHELLE  KELSON  ("KELSON  and  from  time-to-time  a/the "MUNICIPAL  Defendant(s)"  a  "co-conspirator"  and  member  of  an  illegal "Enterprise") is an attorney Assistant Corporation Counsel and is the legal representative-advisor, prosecutor for the CITY of NEWBURGH who has intentionally failed to prosecute-enforce  policies, practices and procedures instituted by the CITY, acted illegally with the knowledge consent of the CITY-CITY's policy maker McGRANE and other named defendants herein, and is sued in her official capacity as Assistant Corporation Counsel and individually, as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants

herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th , 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

28.     MICHAEL GABOR, individually ("GABOR" and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") was and is a resident of the City of Newburgh and a co-conspirator-member of an illegal Enterprise sued in his official capacity as concealed-clandestine ARC member and individually, as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th , 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;   Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

29.     JOHN DOEs 1-10, ("DOE and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") whose real names and identities are unknown to Plaintiffs at this time were and are residents of the City of Newburgh and are co-conspirators-members of an illegal Enterprise

individually, and as a co-conspirators of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

30.     JANE ROEs 1-10, ("ROEs and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") whose real names and identities are unknown to Plaintiffs at this time were and are residents of the City of Newburgh and are co-conspirators-members of an illegal Enterprise individually, and as a co-conspirators of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4[th], 5th and 14[th] Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

31.     The NEWBURGHER's for ACCOUNTABILITY in GOVERNEMENT (hereafter the "NAG's and from time-to-time a/the "MUNICIPAL Defendant(s)" a

"co-conspirator" and member of an illegal "Enterprise") is an association-in-fact that has been used as a vehicle for an illegal Enterprise and which has by governmental fiat by and through it members conspired with the CITY policy makers and other defendants herein to illegally take Plaintiffs' vested property rights under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

## FACTUAL BACKGROUND

32.    At all times material hereto, on or about June 15, 2005, Plaintiff, 96 BROADWAY purchased a 4800 sq. ft. three (3) story abandoned brick building located on the northeast corner of Broadway and Liberty Street, City of Newburgh, Orange County, New York.

33.    At all times material hereto, between June 2005 and January 2006, extensive research into the history of the building site was conducted.

34.    At all times material hereto, it was determined that the building was actually three (3) separate buildings erected at three different (3) points in time,

approximately between 1850-90, and as such the oldest portion of the building is in excess of 150 years old.

35. At all times material hereto, the property runs 21 feet east to west in length along Broadway. The property also abuts Liberty Street and runs north from the Broadway building line 81 feet along the northwest side of Liberty Street. The designated addresses are 96 Broadway and 139-141 Liberty Street and are within the City of Newburgh's principle economic redevelopment corridor/historical district.

36. At all times material hereto, at some point, which appears to be about 1880-90, a single flat tin roof, pitched to each side from the center of the three (3) buildings, was added over the top of the three (3) existing roofs. The tin roof ran from the center of the structure slopping downward north and south at a pitch of 1/10.

37. At all times material hereto, Plaintiffs' also own the parking lot behind 96 Broadway as designated 142-154 Liberty Street. The lot is sufficient for off-street parking of 27 vehicles.

38. At all times material hereto, prior to Plaintiffs' purchase of the building, Plaintiffs are informed and believe, that the building had remained vacant for approximately 30 years , when the CITY, in or about 1999, allowed the prior owners to proceed with restoration for both the interior and exterior of the building.

39. At all times material hereto, Plaintiffs are informed and believe, that without the advice of engineers or any other inspections the interior of the building and

its entire infrastructure were completely stripped away and removed leaving the building as nothing more than an unstable shell.

40.    At all times material hereto, the building's tin roof was completely deteriorated and had become unsafe. The same was true for the entire top cornice and the four feet of brick veneer behind it.

41.    At all times material hereto, the cornice which was made of tin and sheet metal, and which weighed in excess of 300lbs per 25-30 foot length, was improperly repaired with fiberglass mess, apparently put in place during the 1999, repairs.

42.    At all times material hereto, it was apparent that no one understood that they were covering over many years of neglect and that the metal straps used to secure the cornice to the top of the building were rotted and decayed to the point where they had failed throughout the entire span.

43.    At all times material hereto, the cornice was lifting away from the building facade and was a danger to the public which could not be left unattended.

44.    At all times material hereto, the basement, by virtue of the open roof had over six (6) feet of pooling water which appeared by inspection and watermarks to be the tipping point for overflow into the CITY's sewer system.

45.    At all times material hereto, visually, the interior was littered with general debris and the reaming interior roofs were falling in and on themselves. This created a dangerous condition and uneven stress loads against the exterior walls.

46.    At all times material hereto, in or about August 2005, the CITY's Building Inspector, CUMMINGS was advised of the situation, demolition permits and dumpster permits were obtained.  Plaintiffs were allowed to commence preliminary clean-up and removal of the interior roofs to relieve the undue stress on the exterior walls.

47.    At all times material hereto, it was also determined, in conference with the CUMMINGS that in order to justify the expense of rehabilitating and bringing the building up to code, rather than requesting a grandfathering or even exemption under Appendix K, of the New York State Building Code, the building plans would be drawn to City Code and to fit the historic era for the original construction of the buildings to reflect the Second Empire era of 1850-1880's.

48.    At all times material hereto, a duly licensed architect was hired by Plaintiffs and a plans were drawn for a fourth floor and Mansard roof to reflect this era.

49.    At all times material hereto, a sprinkler system, elevator and handicapped access were also configured for the building and added to the plans.

50.    At all times material hereto, in or about January 2006, an application for a building permit and proposed plans were submitted to the CITY's Building Department.

51.    At all times material hereto, the rehabilitation required a two phase approach for which the CITY was consulted.

52.    At all times material hereto the first stage was necessary because the

building represented a serious hazard and danger to the public.

53.    At all times material hereto, an initial request was made for shoring and bracing of the building and for permission to repair the roof and cornice.

54.    At all times material hereto, the second phase related to the architectural changes to the building. **See, Exhibit "2".**

*    *    *

55.    At all times material hereto, Plaintiffs were advised by CUMMINGS that approval of their application and plans would be delayed for at least four (4) months because the application and building plans needed to be presented the ARC for approval and that the ARC was without a sitting architect to review the Plaintiffs' building plans.

56.    At all times material hereto, DOLLINGER advised CUMMINGS of the hazards and potential liabilities to the Plaintiffs' as well as the CITY's potential for liability unless immediate repairs could be undertaken.

57.    At all times material hereto, CUMMINGS advised DOLLINGER that he would speak with the CITY Manager McGRANE to see if he could "speed things along" and use an outside architect to review the plans on behalf of the CITY for Plaintiffs' proposed shoring and bracing request, roof repair, as well as for the architectural restoration and review of the building plans.

58.    At all times material hereto, McGRANE as policy maker for the CITY had actual authority to adopt policy-practice procedure and/or custom to have the

building department use outside consultants and issue building permits for the safety reasons and for economic reasons in her capacity as CITY Manager inclusive of by-passing approval of various CITY advisory commissions, the ARC.

59.    At all times material hereto, Plaintiffs were advised by CUMMINGS that after discussing the matter with the CITY Manager McGRANE, McGRANE approved the use of an outside architect and that Plaintiffs would be required to pay the fee for the CITY's architectural review of their plans.

60.    At all times material hereto, in or about January 2006, Plaintiffs agreed to the payment of a fee for the CITY's outside review of the repair plans and architectural review of the restoration plans.

61.    At all times material hereto, in or about January 2006, the CITY hired Mr. Whelton B. Abt, an architect to provide a review for the requested shoring, bracing and repair plans, as well as an architectural reviewed of the restoration plans.

62.    At all times material hereto, on or about February 3, 2006, in response to the restoration plans Mr. Abt requested a meeting with the Plaintiffs' representatives.

63.    At all times material hereto, on or about February 3, 2006, a permit was issued by the CITY's Building Department for repair of the roof to the building.

64.    At all times material hereto, on or about February 14, 2006, Plaintiffs' representative met with the CITY's representatives, including Abt for architectural review of the project and to determine whether the historic restrictions would apply to the project under Appendix "K" of the New York State Building Code as related to historic buildings.

65.    At all times material hereto, on or about March 22, 2006, Abt approved the architectural review of the restoration plans exempting the building from Appendix "K" or otherwise requiring a historical report and determined that the alterations to the building did not impact on the historic character of the building, wherein a building permit "could" be issued by CUMMINGS to Plaintiffs.

66.    At all times material hereto, Plaintiff are informed and believe CUMMINGS notified McGRANE of the approval by Abt, wherein McGRANE authorized CUMMINGS to issue a building permit for the Plaintiffs' building plans as submitted without the need for prior ARC approval.

67.    At all times material hereto, on or about March 23, 2006, the CITY lawfully issued Plaintiffs a building permit to perform the work Abt approved including the architectural restoration of the building, whereupon Plaintiffs commenced restoration of their building.

\* \* \*

68.    At all times material hereto, the ARC is an advisory commission to the CITY, established for the review of certain restoration projects including those within the City of Newburgh's Economic Redevelopment Corridor/Historic District wherein said commission is required to issue a "Certificate of Appropriateness" for building alterations that met established statutory criteria .

69.    At all times material hereto, McGRANE with the CITY COUNCIL's approval appoints the members to the ARC.

70.    At all times material hereto, the CITY-CITY Manger retains the power to by-pass the ARC concerning whether or not to issue a certificate of appropriateness and building permits or otherwise veto a decision of the ARC concerning applications coming before for it, and in the past has issued building permits without prior ARC approval for among other reasons, the  safety of the public or for economic reason including the benefit-burden to/on the CITY, wherein unless otherwise approved the CITY could face liability and would lose potential economic gain/growth for its citizens if an investment in the CITY were no made.

\* \* \*

71.    At all times material hereto, Plaintiffs are informed and believe, that GABOR, CRABB, KING, and KELSON, are and/or were in the past members or

23

represented that they were members of the ARC and/or CORPORATON COUNSEL, who were acting for ands under the authority of the CITY in matter coming before the ARC.

72.    At all time material hereto, Plaintiffs are informed and believe, Defendants DOEs 1-10 and ROE's 1-10 are members of the community and claimed members of NAG living and residing in the CITY who from time-to-time at the direction of CRABB and/or GABOR, who are also NAG members appear before the ARC.

73.    At all time material hereto, Plaintiffs are informed and believe, GABOR, CRABB, KING, KELSON and Defendants DOEs 1-10 and ROE's 1-10 (hereafter collectively the "ARC-NAG Enterprise") have formed an illegal union, an association-in-fact engaged in illegal conduct designed to deny the citizens appearing before the ARC, inclusive of Plaintiffs',their 4th , 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and have otherwise willfully violated other citizens and Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

74.    At all times material hereto, Plaintiffs are informed and believe, that the CITY COUNCIL was and is actually aware of the ARC-NAG Enterprise and attempted to eliminate their illegal activity by allowing McGRANE to institute a by-pass policy and by not reappointing GABOR and/or appoint others to the ARC during the period

between January 2006 and June 29, 2007.

75.    At all times material hereto,  Plaintiffs are informed and believe, the ARC-NAG Enterprise members knew and were actually aware that the CITY Manager had authorized CUMMINGS to by-pass ARC approval of Plaintiffs' project and issue the Plaintiffs their building permit without prior ARC approval based on having an outside architectural review of their plans by Abt and render his approval to issue a building permit to Plaintiffs.

76.    At all times material hereto, Plaintiffs are informed and believe, the ARC-NAG Enterprise members were angry and embarrassed by the CITY COUNCIL's refusal to reappoint GABOR and others to the ARC and the CITY's policy-practice adopted by McGRANE and CUMMINGS relative to using the retained authority of the CITY to by-pass the ARC and grant approval of the Plaintiffs' project in the historic district and economic corridor of Broadway without prior ARC approval, including Plaintiffs' project.

77.    At all times material hereto, Plaintiffs are informed and believe, that ARC-NAG Enterprise members met subversively in person, and over the internet, for the purpose of illegally conspiring to force McGRANE to unlawfully revoke the building permit issued by the CITY's Building Department to Plaintiffs  notwithstanding the fact that they knew the permit had been lawfully issued to Plaintiffs by CUMMINGS; to illegally force Plaintiffs to submit an application to the ARC; to illegally force

Plaintiffs to appear before the ARC; and to deny the application for political reasons through any means necessary including the violation of Plaintiffs' Constitutional and civil rights; wherein, as illegally agreed among ARC-NAG Enterprise members, to "crush" the project so as to "run plaintiffs out of town".

\*   \*   \*

78.    At all times material hereto, thereafter, Plaintiffs are informed and believe, CRABB under the color of law and in the name of the ARC, together with GABOR, KING and the DOEs 1-10 and ROEs 1-10 Defendants coordinating and intending to illegally and systematically deny Plaintiffs the equal protection of the law as well as to illegally deny Plaintiffs their due process right engaged their plan to take the Plaintiffs' vested property interest, its building permit, and otherwise injure Plaintiffs, in or about February 2006, proceeded with their illegal plan/goal.

79.    At all time material hereto, Plaintiffs are informed and believe, that notwithstanding his failure to be reappointed to the ARC by the CITY COUNSEL, GABOR, in furtherance of the illegal agreement with the other ARC-NAG Enterprise members, continued to make decisions so as to accomplish the illegal goals set of the conspiracy including an agreement that he, GABOR would file a false complaint with the CITY's Building Department; and an agreement to disseminate willfully-false information via the newspapers and internet about Plaintiffs, 96 BROADWAY-

DOLLINGER so as to illegally sway public opinion; to force McGRANE to illegally "crush" the project; to force Plaintiffs to appear before the ARC; and to intentionally deny Plaintiff approval of their plans to "crush: the project and run Plaintiffs "out of town".

80.    At all times material hereto, Plaintiffs are informed and believe that, thereafter on or about April 28, 2006, with the knowledge consent of CRABB, KING, DOEs 1-10 and ROEs 1-10, in furtherance of their illegal plan, GABOR filed a complaint against 96 BROADWAY with the CITY Building Department falsely alleging that work performed at 96 BROADWAY was being performed on the building without permits or prior ARC approval.

81.    At all times material hereto, Plaintiffs are informed and believe that, thereafter with the knowledge consent of GABOR, KING, DOEs 1-10 and ROEs 1-10, in furtherance of their illegal plan, CRABB, illegally and under the color-authority of the ARC, Illegally demanded that CITY issue a stop work order on Plaintiffs' building and submit a application to the ARC.

\*    \*    \*

82.    At all times material hereto, in or about May 2006, CUMMINGS contacted DOLLINGER advising him that they, CUMMINGS and McGRANE were having problems with the ARC, specifically, GABOR CRABB, and "others in the

27

community" because they "sidestepped" the ARC when they hired Mr. Abt for his architectural review and issued the building permit to Plaintiffs without prior ARC approval wherein CUMMING's advised DOLLINGER that CRABB was demanding that the CITY issue a stop work order on Plaintiffs' building and that McGRANE directed the project be "stop" and sent to the ARC.

83.    At all times material hereto, CUMMINGS, upon DOLLINGER's inquires, stated to DOLLINGER, "what you have to understand is this is not New York City" there were "a lot of hurt feelings" people were "embarrassed" by not being consulted on the project.

84.    At all times material hereto, CUMMINGS asked DOLLINGER to "kind-a-lay-low" until he and Mc GRANGE could work things out "internally".

85.    At all times material hereto, DOLLINGER advised CUMMINGS that he could not simply stop the project because the project had certain deadlines which could not be changed, there were "cost factors" related to "investors' money" and plans. Plaintiffs had already spent in excess of Five Hundred Thousand ($500,000.00) Dollars on the project and any delay would be a burden on the project.

86.    At all times material hereto, Plaintiffs are informed and believe, that because DOLLINGER refused to stop the project, CUMMINGS at the direction of CRABB-McGRANE, so as to control or otherwise stop the project and appease the political and public pressure being asserted by GABOR, CRABB, and the other ARC-

NAG Enterprise members, and for no lawful reason, under the color of law, on or about May 2, 2006, illegally issued a stop work order at the direction of McGRANE in agreement with CRABB for the benefit of the ARC-NAG Enterprise, and by the CITY's Deputy Code Enforcement Officer Bruce Tewilliger in the name of the CITY falsely claiming a violation of Section 300-26A of the City Code.

87.    At all times material hereto, the order falsely alleges that the reason for issuing the stop work order is that a condition existed that was dangerous to the "Public Safety".

88.    At all times material hereto, Section 300-26A of the CITY Code relates to obtaining a **Certificate of Appropriateness"** from the ARC and has nothing to do with public safety, but was issued due entirely to political and public pressure exerted by CRABB-GABOR on behalf of the ARC-NAG Enterprise members.

89.    At all times material hereto, Plaintiff possessed a valid certificate of appropriateness as issued by the CITY's architect Abt on March 22, 2006.

90.    At all times hereto mentioned, at the time the stop work order was issued Plaintiffs had spent in excess of Five Hundred Thousand ($500,000.00) Dollars in improvements in the property and had a vested property interest in the building and building permit.

91.    At all times hereto mentioned, the action was an illegal taking of Plaintiff's property in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights, an

abuse of process, an illegal taking and a denial of the equal protection of the law and a violation of Plaintiffs civil rights.

92.    At all times material hereto, Plaintiffs are informed and believe, that simultaneous with the issuance of the forgoing order, again, in response to said political and public pressure, and for no lawful reason, under the color of law, at the direction of CRABB-McGRANE-CUMMINGS, in an agreement with CRABB-GABOR, for the benefit of the ARC-NAG Enterprise an additional stop work order was illegally issued pursuant to Section 122.12 of the City Code.

93.    At all times material hereto, the order also falsely alleges that the reason for issuing the stop work order was that a condition existed that was dangerous to the "Public Safety" but was issued due entirely due to political and public pressure created by the ARC-Enterprise.

94.    At all times material hereto, Section 122.12 of the City Code relates to obtaining a permit for exterior changes and has nothing to do with public safety.

95.    At all times material hereto, Plaintiff possessed a valid and lawfully issued building permit for the work being performed.

96.    At all times hereto mentioned, at the time the stop work order was issued Plaintiffs had spent in excess of Five Hundred Thousand ($500,000.00) Dollars in improvements in the property and had a vested property interest in the building and building permit.

97. At all times hereto mentioned, the action was an illegal taking of Plaintiff's property in violation of Plaintiffs 4th, 5th and 14th Amendment rights, an abuse of process, a illegal taking, and a denial of the equal protection of the law and a violation of Plaintiffs civil rights.

\* \* \*

98. At all times material hereto, DOLLINGER advised CUMMINGS that the CITY was facing a "serious fight" and that unless the stop work orders were lifted Plaintiff would seek immediate judicial resolution to the problem and damages.

99. At all times material hereto, on or about May 8, 2006, CUMMINGS lifted the stop work orders previously issued by the CITY Building Department on May 2, 2006.

\* \* \*

100. At all times material hereto, Plaintiffs are informed and believe, that in furtherance of the Enterprise on or about May 27, 2006, DOLLINGER was contacted by a reporter for The Times Herald Record in relation to how a building permit was issued for 96 Broadway without first getting ARC approval.

101. At all times material hereto, on or about June 2, 2006, DOLLINGER contacted CUMMINGS, wherein CUMMINGS was advised by DOLLINGER that a reporter for the Times Herald Record had requested an interview relative to the project and the issuance of obtaining the building permit without prior ARC approval.

102.   At all times material hereto, on or about June 2, 2006, CUMMINGS spoke with DOLLINGER wherein, CUMMINGS advised DOLLINGER that he and McGRANE were again receiving "pressure" to "shut the job down" from the ARC-CRABB-GABOR and other "community agitators" and that after discussions with McGRANE it would be "helpful" to the situation "at least for show", if an application were presented to the ARC by Plaintiff, 96 BROADWAY.

103.   At all times material hereto, DOLLINGER advised CUMMINGS that he would consider the request.

104.   At all times material hereto, CUMMINGS advised DOLLINGER that McGRANE had already "worked it out" with the ARC.  The ARC was to "rubber stamp" the application and the matter would be "behind us".

105.   At all times hereinafter mentioned, DOLLINGER demanded of CUMMINGS more information about "what exactly" was "going on" reminding CUMMINGS that the plans had already been reviewed and approved by McGRANE and the CITY's architect, Abt and that Abt determined that the alterations to the building did not need further review because Appendix K of the New York State Building Code did not apply, nor, as discussed in February 2006, did any other historical restriction apply and that Abt agreed that the permit could be issued.

106.   At all times material hereto, on or about June 2, 2006, in response to the foregoing, CUMMINGS advised DOLLINGER that he and McGRANE had things

"under control" the problem related to the "politics" and community pressure with the ARC-CRABB-GABOR and others who were falsely and intentionally alleging misconduct, including bribe taking between Plaintiff-DOLLINGER and CUMMINGS because they had in fact used an outside consultant for architectural review so as to issue the building permit.

*   *   *

107.   At all times material hereto, on or about June 3, 2006, in furtherance of the ARC-NAG Enterprise's goal to discredit Plaintiffs and illegally sway public opinion against Plaintiffs a newspaper article appeared in the Times Herald Record, wherein GABOR falsely alleged that there was criminal wrongdoing in obtaining the building permit for 96 Broadway, including the fact that a bribe was given by Plaintiff-DOLLINGER to CUMMINGS for the building permit.

108.   At all times material hereto, in furtherance of the ARC-NAG Enterprise GABOR knowingly and falsely publicly stated that:

> "What's going on here is very, very wrong.  And, it is so secretive. <u>We have people talking about there must be favoritism or payoffs.</u> That's how shady it is."
> **[Emphasis added.]**

109.   At all times material hereto, on or about June 5, 2006, Plaintiffs-DOLLINGER commenced a state court slander-libel and defamation action against GABOR, and Defendants JOHN DOE 1-10 and JANE DOE 1-10, wherein, Plaintiffs

claimed that the "people talking" were members of the ARC-NAG Enterprise who had by said publications caused Plaintiffs to become the object of hatred, contempt, ridicule and obloquy, because the ARC-NAG Enterprise falsely published claims in the media insinuating that Plaintiffs via DOLLINGER, who the ARC-NAG Enterprise members knew was an attorney, were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit when they knew that said statements were entirely untrue and intended to illegally sway public opinion against Plaintiffs.

110.    At all times material hereto, on or about June 6, 2006, after the article appeared in the newspaper in response to said political and public pressures, and for no lawful reason, under the color of law at the direction of McGRANE and CRABB and CUMMINGS a stop work order was illegally issued by the CITY claiming a violation of Section 122.20(A) of the City Code.

111.    At all times material hereto, the order alleges that the reason for issuing the stop work order is that a condition existed that was dangerous to the "Public Safety".

112.    At all times material hereto, the stop work order has nothing to do with public safety, but was issued due entirely to political and public pressure falsely and viciously created by the ARC-NAG Enterprise members so as to illegally sway public opinion on the project.

113.   At all times material hereto, Section 122.20(A) of the City Code relates to conforming the work permitted at the site to the "APPLICABLE BUILDING PERMIT" and claims that the "CORRECTIVE ACTION NEEDED:" was to "STOP WORK! EXISITNG CONSTRUCTON DOES NOT REFLECT APPROVED DRAWINGS".

114.   At all times material hereto, the Order admits that there were approved drawings on file with the CITY.

115.   At all times material hereto, the building plans and drawings conformed to the plans and drawings submitted to the CITY and approved by McGRANE, CUMMINGS and Mr. Abt, the CITY's architect, and otherwise conformed to all of the laws of the State of New York and the ARC criteria.

116.   At all times hereto mentioned, at the time the stop work order was issued Plaintiffs had spent in excess of Five Hundred Thousand ($500,000.00) Dollars in improvements in the property and had a vested property interest in the building and building permit.

117.   At all times hereto mentioned, the action was an illegal taking of Plaintiffs' property in violation of Plaintiffs' 4th , 5th   and 14th Amendment rights, an abuse of process, an illegal taking and a denial of the equal protection of the law and Plaintiffs' civil rights.

\* \* \*

118.  At all times material hereto, based on the representations of CUMMINGS that the matter was purely "for show" and his statement that McGRANE told CUMMINGS that the application would be "rubber stamped", Plaintiffs agreed to submit an application to the ARC.

119.  At all times material hereto, following the newspaper article of June 3, 2006, the ARC-NAG Enterprise members, in furtherance of their goals began to publish their **continuing manifesto** over the internet as designed to falsely discredit and otherwise illegally sway-injure Plaintiffs' in their application before the ARC.

120.  At all times material hereto, the ARC-NAG Enterprise members were able to cast a cloud of suspicion over the Plaintiffs having them become the object of hatred, contempt, ridicule and obloquy because the ARC-NAG Enterprise falsely published claims over the internet alleging that Plaintiffs were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit.

121.  At all times material hereto, GABOR admits to being "CRANKIN" and "MG" and in furtherance of the ARC-NAG Enterprise plans to discredit Plaintiffs published or caused to be published by other ARC-NAG Enterprise members the following manifesto and false-libelous statements over the internet:

From: Crankin
Date:   29 Oct 2003
Time :09:15:43
Remote Name: 204:210.148.240

36

"We are on a jugernaught **my fellow NAGS**. We have to keep up the pressure. The control of this city is now within our reach. **We have to take it over by any means necessary.** That means get on all the boards; go to all council meetings and NAG, NAG, NAG! **Do whatever it takes. Our group is the only one who can so let's do it** [Emphasis added.]"
Posted:  Saturday, June / 7 / 2:5 / :pm
Author:  John Doe (Undercover)
Subject: Re: Savoy
In reply to: Goobie 's message, 'Re: Savoy" On *Thursday*, June *02:2 7pm*

The 96 broadway land baron Dollinger gets his suits altered at Nickys B'Way Tailors. The under cover question of the day is. **Why do you Mr. Dollinger pay for alterations to the Mayor of our city an envelope full of $100.00 dollar bills. Yes your Mayor was dumb enough to open it with people in the store, More information on that to come. This is way beyond shady. I guess he pays CUMMINGS liquor bills and motel bills .Oh** yes i'm proud too, as one of the 50 hero's of Newburgh. **We the John and Jane Does of Newburgh pledge to stick together!** [Emphasis added.]

*Date Posted: 10:01:20 06/12/06 Mon*
Author:      Michael C.
Subject:     Dunbo Dollinger

This Dumbo and his lawsuit is going nowhere. Remember Rudy and Taylor's lawsuit? That went in the toilet as did the one against Fred Ernden. **WE as a group are protected by the Constitution, and freedom of speech.** This **cash Felon Dollinger** has no idea. Some one should tell him we don't back down. **We will run him out of Newburgh. This is our city and we don't want criminals bribing our officials, he can take CUMMINGS with him and give him a job.** [Emphasis added.] See, Exhibit "23-3".

*Date Posted: 08:23:41 06/13/06 Tue*
Author:  "We The People"
Subject: Scumbag Dollinger!

Read the Constitution. ASSHOLE! FREEDOM OF SPEECH, THE FIRST AMENDMENT!! !! You will not silence us, **you are our prime target now! You're history, you will never have any peace.**  You haven total and collossal nerve to

37

send someone to a public protected space to serve us with papers. Was that the idea of that fat stinkin' piece of' shit McCarthy? Think him and you, and Rudy and the rest of the criminal element all of you are associated with... You Suck what are you going to do about it.. WE got your number Dollinger...START <u>PACKING... and take CUMMINGS with you... we have someone in his office and she lets us know about the corruption going on...YOU ARE OUTED</u>!!![Emphasis added.]

*Date Posted: 07:3 7:45 06/14/06 Wed*
Author:      BJ
Subject:     <u>Dollinger=Crime</u>
It is a sad day we have <u>criminals like</u> this trying to lake over Newburgh.

*Date Posted: Saturday , June 17, /2:07:pm*
Author:  BJ
Subject:Re: Savoy

In reply to: Confuscious's message, "<u>Sav'oy</u>'' on *Friday, June16, 05:00:pm*
My most exalted and learned Confuscious. **To answer your question, when we rid Newburgh of Regina, Bowles, McGrane, and Little Nicky for starters.** <u>That will stop Criminals like Dollinger from bribing our building inspector in order to get permits.</u> Our Friends on The ARC have stopped him dead! in his tracks. Mr. "Doll"inger paid a handsome sum to Rudy for 96 Broadway, along with some "Cash under the table for Rudly". Stay tuned readers of this site, all of the corruption will come out at the lawsuit trial. Mr. Dollinger do you really want to be exposed? [Emphasis added.]

**Date Posted:** *Tuesday June 20, 01:28pm*
Author:    John and Jane does
Subject:    Re: Newburgh Advocate
In reply to: Michael G.'s message *"Re: Newburgh Advocate"* on Wednesday, June14,1:53:pm

We as a group are the "Watchdogs of City Government" and **illegal activities** in our city. **We support Michael Gabor Barbara Smith and Brian Flannery** in their pursuit of justice. Mr. Dollinger you cannot win against the truth. Others have tried and failed. Thanks to the efforts of Jane Johnson and many others. The Advocate will breath down your neck and any others who get in the way of our fair city. <u>Its legal growth is what matters to us, not bad officials who take bribes from you. Mr. Dollinger perhaps in California you got away with</u>   your shady way of business, but that will

38

not stand in Newburgh. <u>You will. not be permitted to continue, one way or another.</u> [Emphasis added.]


*Date Posted: .10:44:33 06/22/06 Thu*
Author:  Michael G.
Subject:  City Criminals

Let's get this investigation going...call the inspectors in Albany have them come down hard on Dollinger. <u>We have to crush the project ASAP</u>. That building was in excellent condition and he destroyed it. <u>He bribed our city building inspector that needs to be investigated. Our Mayor according to our witness was bribed too! Now start- the machine and bring down the all weight of</u> our government on the <u>DOLLINGER CRIME SPREE!</u> [Emphasis added.]

*Last Changed October 29, 2003*
*Date Posted: 10:08:48 06/12/06 k/on*
Author:     Darthy V
Subject:  Dumbo. Dirtbag, Degenerate,=Dollinger


Michael oh la la ,you have such a way with words. Maybe the Orange County Bar Association should be alerted to the mis—adventures of this corrupt attorney? Did you not hear Michael of the ASBESTOS REMOVAL performed without a permit at 96 Broadway? <u>Brian F</u>. did and he will spread the alarm. 96 Broadway is only 2 blocks from the new school opening <u>Hmmm use you imagination.</u> Record may be interested in such a story. [Emphasis added.]


    122.  At all times material hereto, in an attempt to sway public opinion, despite

the clear constitutional violations of the law, GABOR and the ARC-Enterprise

members actually advocate the taking over of the City <u>**"by any means necessary"**</u> and

by doing <u>**"whatever it takes."**</u>

    123.  Apparently, based on their conduct they were and are serious including

violating Plaintiffs' Constitutional and civil rights, including the intended taking of Plaintiffs' property.

*  *  *

124.  At all times material hereto, on or about June 13, 2006, based on the representations of CUMMINGS, DOLLINGER on behalf of 96 BROADWAY appeared before the ARC.

125.  At all times material hereto, CRABB Chaired the meeting during the ARC's review of the Plaintiffs' application, wherein, in addition to CRABB, present on the Commission were ARC-NAG Enterprise member KING, together with ASSITANT CORPRORATON COUNSEL, KELSON, and under the color of law, unbeknownst to Plaintiffs at the time, acting as governmental officials, non-members DOE-1 and DOE-2.

126.  At all times material hereto, the ARC must have appointed members with credentials consisting of at least one (1) architect and (1) historian who have sufficient background and experience in the field of architectural restoration and historic preservation to render a decision based on the criteria set forth in the CITY's Codes and who have been sworn under oath to undertake their duties and discharge them in a lawful manner.

127.  At all times material hereto, during the ARC's review of the Plaintiffs' application, Plaintiffs are informed and believe, as confirmed by CORPRORATON

COUNSEL's Chief Attorney, the Commission did not have present the required members and were otherwise proceeding illegally and in violation of Plaintiffs' 4th, 5th and 14th Amendment rights, engaged in an abuse of process, an illegal taking, a denial of the equal protection and due process of the law and Plaintiffs' civil rights.

128.  At all times material hereto, despite the representations of McGRANE and CUMMINGS, that the project was already approved, it became apparent that the ARC-NAG Enterprise members, under the color of law, and the guise of the ARC's powers in this matter, that the ARC-NAG Enterprise members were more interested in investigating the claims of wrongdoing [bribery]in relation to receiving the building permit and had no intention on approving the permit on the merits of the buildings economic or historical contribution to the community-CITY.

129.  At all times material hereto, DOLLINGER refused to engage in the query and repeatedly requested that the ARC ask questions related to the ARC approval criteria for the building.

130.  At all times material hereto, the ARC actually knew and was aware that the Plaintiffs had spent in excess of Five Hundred Thousand ($500,000.00) on the project and that through its members was acting collectively to deny Plaintiffs their vested property rights.

131.  At all times material hereto, ARC proceeded illegally and in violation of Plaintiffs' 4th, 5th and 14th Amendment rights, an abuse of process, an illegal taking